FILED
DEC 2 0 2005
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **MAJOR WILMA P. WEBSTER, MC, USAF RETIRED,** | § | |
| ***Plaintiff,*** | § | |
| **vs.** | § | **No. ____________** |
| **UNITED STATES,** | § | |
| ***Defendant.*** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Major Wilma P. Webster, MC, USAF Retired, Plaintiff, and files her Original Complaint against USAF Board for Correction of Military Record and the United States, Defendants, and as grounds for same would show the Court:

## PARTIES

1. Plaintiff is a resident of Los Angeles, California.

2. Defendant is an agency of the United States Government who may be served by serving the Attorney General of the United States.

## ADMINISTRATIVE HISTORY

3. Plaintiff was medically retired from the USAF on December 1, 2000. On or about April 25, 2002, less than 3 years following her medical retirement from the USAF, Plaintiff filed her Application for Correction of Military Records with Plaintiff seeking the following:

a. Void a finding and recommendation of a Medical Practice Review Board ("MPRB") convened by the 24th Medical Group at Howard AFB, Panama, on 17-18 February 1999 which restricted Plaintiff from practicing Emergency Room Medicine;

b. Void a determination by the Commander, 24th Medical Group, Howard AFB, Panama on March 24, 1999, which restricted Plaintiff from practicing Emergency Room Medicine and which further restricted Plaintiff from practicing medicine in Family Practice/Primary Care/Aerospace Medicine clinics without 100 per cent supervision for six months;

c. Direct the Office of the Surgeon General of the Air Force to rescind or correct its correspondence to the National Practitioner Data Bank to reverse the adverse information previously furnished by them to the National Practitioner Data Bank;

d. Grant or pay benefits, including monetary and other benefits, for the termination of various physician's incentive payments to Plaintiff from on or about July 1, 1998 to 1 December 2000; and

e. Direct Air Force Officials to remove and/or correct information from Plaintiff's official Air Force personnel files and records to comply with the decision of the AFBCMR on this application.

4. Defendant docketed this case as Docket Number: 02-01487, styled "In the Matter of Wilma P. Webster, 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.

5. On or about August 16, 2002 and September 25, 2002, Defendant forwarded to Plaintiff the Air Force Advisory Opinions for review and response and on November 7, 2002, Plaintiff filed her Responses to the Advisory Opinions of the Air Force.

6. On or about February 4, 2003, Defendant Board issued its findings in this case as follows:

a. The applicant (Plaintiff) has exhausted all remedies provided by existing law or regulations.

b. The application was timely filed.

c. Insufficient relevant evidence has been presented to demonstrate the existence of error or injustice that would warrant full relief of the Applicant's (Plaintiff's) requests. We note that the credentials hearing committee, after deliberation on all the facts of her case, recommended that she should not practice in an ER setting and that she should be allowed clinical privileges with 100 percent chart review and reevaluation after a period of time. Her commander concurred with that recommendation. The MPRB reviewed the facts of her case and made their recommendation to the AF/SG. After review of all the facts of her case and consideration of her appeal, the AF/SG subsequently concurred with the recommendation of the MPRB. The Applicant (Plaintiff) contends that the actions taken to revoke her ER privileges and limit her to clinical privileges were arbitrary, capricious, and were in violation of laws and policy; and requests that those findings and determinations be removed from her records. After a thorough review of the evidence of record, it is our opinion that the actions taken to affect revocation of her ER privileges and restrict her to clinical practice were taken appropriately and in accordance with established

directives. Evidence has not been presented which would lead us to believe that her commander abused his discretionary authority in this matter or that the actions taken against the Applicant (Plaintiff) were based on anything other than her own performance. Upon her application for ER clinical privileges, she was reevaluated in an ER setting and it was in an ER department and it was recommended that she should be limited to duties in a clinical setting. We note the Applicant's (Plaintiff's) request that the adverse correspondence provided to the National Practitioner Data Bank (NPDB) be rescinded, or in the alternative amended. However, we carefully reviewed the data contained in the Adverse Action Report provided to the NPDB and are not persuaded that the data therein is factually incorrect or that the report was improperly submitted. Therefore, we agree with the Air Force officers of primary responsibility regarding these matters, and adopt their rationale as basis for our conclusion that she has not been the victim of error or injustice.

d. Sufficient relevant evidence has been presented warranting approval of Applicant's (Plaintiff's) request to receive Additional Special Pay ("ASP") for the years 1998 and 1999. A review of her pay records reflects that she remained eligible for, and continued to receive payments on her Incentive Special Pay, Multi-year Special Pay, Board Certification Pay, and Variable Special Pay contracts. Based on our review of the evidence of record, it is our opinion that although her ER privileges were revoked, the MPRB had determined that she was qualified to perform in a clinical setting. While we believe that it was at her commander's discretion to relegate her to other duties, we note that based on the findings of the MPRB, the applicant could have practiced in a clinical setting and therefore was entitled to the Additional Special Pay. Accordingly, we recommend that her records be corrected to the extent indicated below; and

e. The applicant's case is adequately documented and it has not been shown that a personal appearance with or without counsel will materially add to our understanding of the issues involved. Therefore, the request for a hearing is not favorably considered.

7. The Defendant, despite the above findings, rejected Plaintiff's other requests. See Defendant's decision attached hereto as Exhibit "A" and incorporated by reference the same as if fully copied herein verbatim.

8. On or about August 19, 2004 Plaintiff submitted a Request to Reconsider Decision issued on February 4, 2003 by the AFBCMR and for clarification. Specifically, Plaintiff requested:

a. The findings and recommendation of a Medical Practice Review Board (MRPB) restricting Plaintiff from practicing Emergency Room (ER) medicine be removed from records. COMMENT: AFBCMR did not grant this request.

b. The determination of the 24th Medical Group commander restricting Plaintiff from practicing medicine in the Family Practice/Primary Care/Aerospace Medicine clinics with 100 percent supervision for 6 months should be removed from her records. COMMENT: It appears the AFBCMR granted this relief but Major Webster requests clarification of the Board's decision in this regard to assure that her privileges regarding Family Practice/Primary Care/Aerospace Medicine are totally unrestricted.

c. The adverse correspondence provided to the National Practitioner Data Bank (NPDP) by the Office of the Surgeon General of the Air Force (AF/SG) should be rescinded, or in the alternative, the restriction should be reduced to supervised practice in the ER only. COMMENT: It appears the Board granted this request as to clinical settings but did not grant this request regarding ER practice. Major Webster requests clarification of the Board's decision to assure her clinical privileges are totally unrestricted.

d. Plaintiff should be granted physician's incentive pay and other benefits from January 1, 1999 through December 1, 2000. COMMENT: the Board granted this request approving Additional Special Pay, effective July 28, 1998, for one year, and effective July 28, 1999, for one year.

9. The Plaintiff also asked for the following clarifications:

a. Clarify specifically that it was the Board's decision that Dr. Webster's medical clinical privileges either were never restricted in any way, or if they had been restricted, the Board's decision clearly removed all such restrictions on her ability to practice in a medical clinical setting.

b. Remove all restrictions preventing her from practicing Emergency Room (ER) medicine. In support of this request, attached hereto for your consideration are three statements from civilian emergency room physicians …supporting the restoration of emergency room (ER) privileges… Please see the letter of James L. Stanton, Counsel for the Applicant at the time, dated August 19, 2004 and the attachments thereto which is attached hereto as Exhibit "B" and incorporated by reference the same as if fully copied herein verbatim.

10. On or about December 28, 2004, two of the three members of the AFBCMR rejected the Plaintiff's request for reconsideration of their earlier ruling and merely restated the one area, specialty pay, which they granted in part. The other member wrote a minority report justifying why she would have granted Plaintiff's requests. See Defendant's decision attached hereto as Exhibit "C" and incorporated by reference the same as if fully copied herein verbatim.

## JURISDICTION

11. Plaintiff has now exhausted all his administrative remedies and Defendant Board has made a final ruling. This Court has jurisdiction of this claim pursuant to 5 U.S.C. 704.

## ITEMS NOT APPEALED

12. Plaintiff does not wish to appeal the portion of the AFBCMR initial decision approving Additional Special Pay, effective July 28, 1998, for one year, and effective July 28, 1999, for one year.

## CONTENTIONS OF PLAINTIFF

13. Plaintiff contends that:

a. The findings of the MPRB upon which the AFBCMR's decision was based is against the great weight and preponderance of the evidence produced at the MPRB and thus the MPRB's decision as well as the AFBCMR's decision are arbitrary and capricious with no basis in fact or law.

b. The Board Chairman was biased in favor of Major Burke and this bias denied Plaintiff the right to a fair and impartial hearing as guaranteed by AFI 44-119 and thus the MPRB decision and the AFBCMR's decision is arbitrary and capricious and against the great weight and preponderance of the evidence produced at the MPRB Hearing and at the AFBCMR.

c. The decision of the USAF FORMAL PEB composed of the proper agency for making such decisions found that Plaintiff was not suffering from MS and was fit for duty. The decision of the MPRB contradicts this finding and violated USAF Regulations. Hence their decision and that of the AFBCMR's decision based upon the MPRB's decision was arbitrary and capricious and against the great weight and preponderance of the evidence produced at the MPRB Hearing.

d. The decision of the MPRB was based on evidence produced at the hearing and not given to Major Webster prior the hearing in contradiction of AFI 44-119. Hence the decision of the MPRB violated USAF regulations and thus is arbitrary and capricious and violative of the USAF's own regulations.

e. A key part of the MPRB's decision was based upon Major Webster's alleged performance during a "Code Blue." The decision was based upon the testimony and memorandum of Dr. Burke and the testimony of Col. O'Neal, the Hospital Commander. It was not based upon the record of the "Code Blue" as it was represented to the MPRB that the record had been lost. In truth and in fact, the record of the "Code Blue," was locked in the Command Section. This record contradicts both the testimony of Col. O'Neal and Dr. Burke. The failure to produce this evidence or to reconvene the Board once it was "found" violated Major Webster's right to due process and thus produced a decision that was arbitrary and capricious. Col. O'Neal, who in acting upon the recommendations of the MPRB, had the "Code Blue" record and chose to disregard it and thus his decision and that of the MPRB was arbitrary and capricious and the failure to produce this evidence violated USAF Regulations and Major Webster's right to effectively confront her accusers.

f. At least one of the witnesses was subject to "Command Influence" notto testify in favor of Major Webster. While this witness did ultimately testify in Major Webster's favor, other witnesses were reluctant and refused to testify. The use of command influence violated USAF Regulations and tainted the entire process. The AFBCMR disregarded this evidence or found that as the witness ultimately testified for Major Webster, there was no harm. This finding fails to recognize that the exercise of such "Command Influence" tainted the entire impartiality of the hearing and thus their decision was arbitrary and capricious.

g. One of the MPRB members, against the advice of the JAG officer, conducted an investigation of the validity of one document in evidence as he doubted its credibility. The AFBCMR dismissed this conduct because the Board Member found out nothing. However, the hearing transcript contradicts this finding as the member specifically stated that the document that stated that the "Code Blue" had been reviewed and found nothing wrong was wrong and that the "Code Blue," contrary to the evidence produced by the Government, was not reviewed. Hence the AFBCMR finding was incorrect and further was arbitrary and capricious as it ignored the evidence in the transcript of the hearing.

h. The unbiased medical evidence produced in this case established that Major Webster did not suffer from MS, was not forgetful and was not disorganized. As such the contrary finding by the MPRB and the AFBCMR was arbitrary and capricious and against the great weight of the evidence adjudged at the MPRB hearing.

i. The MPRB and the USAF advisory opinions to the AFBCMR counseled that the AFBCMR should disregard the favorable testimony of the witnesses for Major Webster as none of these witnesses were her peers in the Emergency. However, the clear and uncontradicted evidence shows that several of Major Webster's witnesses were her peers in the Emergency Room. Hence a decision based upon the opposite conclusion is arbitrary and capricious and against the great weight and preponderance of the evidence.

j. Major Webster was denied the right to investigate the patient complaints used at the MPRB due to the vast amount of documents produced and given the time between the MPRB and the actual complaints. However, two of the complaints which the MPRB and the AFBCMR relied upon were contradicted in the evidence produced during the MPRB hearing and by subsequent evidence produced to the AFBCMR. Hence, the great weight and preponderance of the evidence show that she acted in accordance with standard practice of medicine. The decision of the MPRB and subsequent decision of the AFBCMR based upon the MPRB's decision was against the great weight and preponderance of the evidence and hence was arbitrary and capricious.

k. The finding of the MPRB that Major Webster was forgetful and disorganized was unsupported by any of the evidence produced at the MPRB and the decision of the AFBCMR supporting this decision was without basis in law or fact and thus was arbitrary and capricious.

l. The finding of the MPRB that Major Webster had cognitive difficulties was not supported by the great weight and preponderance of the evidence. There was no evidence that showed that Major Webster displayed any cognitive difficulties in treating her patients, but rather the evidence was totally to the contrary. Hence the decision of the MPRB and the subsequent decision of the AFBCMR based upon the MPRB's findings was arbitrary and capricious.

m. Title 37, Chapter 5 of the United States Code states that an officer is not eligible for incentive special pay unless the Secretary concerned has determined that such officer is qualified in the medical

profession. AFI 41-9109, Special Pay for Health Professionals, states that a Medical Corp Officer is entitled to incentive pay if the individual is fully qualified in a medical specialty and practicing in that specialty. The AFBCMR concluded that Major Webster was qualified to receive Additional Special Pay (ASP) for the years 1998 and 1999 as "a review of her pay records reflected that she remained eligible for, and continued to receive payments on her Incentive Special Pay, Multi-Year Special Pay, Board Certification Pay, and Variable Special Pay contracts. Based on our review of the evidence of record, it is our opinion that although her ER privileges were revoked, the MPRB had determined that she was qualified to perform in a clinical setting. While we believe that it was at her commander's discretion to relegate her to other duties, we note that based on the findings of the MPRB, the Applicant (Plaintiff) could have practiced in a clinical setting and therefore was entitled to the Additional Specialty Pay." This decision of the AFBCMR contradicts their earlier decisions rejecting the other requests of Major Webster, especially their decision not to remove the unfavorable comments regarding her clinical practice filed with the National Practitioner Data Bank, and thus their other decisions are arbitrary and capricious.

n. The AFBCMR chose not to give Major Webster her ASP from July 2000 to December 2000 when she was retired from the USAF. The AFBCMR explained why it was granting ASP from July1998 through July 2000 but not explain why it was not granting ASP from July 2000 until she was retired despite the fact that the same justification existed for granting ASP from July 2000 until she was retired. As such the decision of the AFBCMR in not granting this additional ASP is arbitrary and capricious and Plaintiff contends that she is entitled to this additional ASP.

o. Plaintiff, as a result of the information filed with the NPDB, has been denied of her livelihood as a practicing physician. This taking of a valuable property was accomplished without Plaintiff being granted due process of law as is required by the U.S. Constitution. Consequently the decision of the AFBCMR was arbitrary and capricious and should be rescinded.

WHEREFORE PREMISES CONSIDERED, Plaintiff requests that Defendant be cited to appear and that upon final hearing the Court order:

1. The findings and recommendations of a Medical Practice Review Board restricting Plaintiff from practicing Emergency Medicine should be removed from Plaintiff's records.

2. The determination of the 24th Medical Group commander restricting Plaintiff from practicing medicine in the Family Practice/Primary Care/Aerospace Medicine clinics without 100 percent supervision for six months should be removed from Plaintiff's records.

3. The adverse correspondence provided to the National Practitioner Data Bank by the Office of the Surgeon General (AF/SG) shall be rescinded, or in the alternative, shall be limited to only a restriction that the Plaintiff shall be limited to practicing Emergency Medicine under the supervision of another physician; and

4. Plaintiff should be granted Additional Specialty Pay from July 2000 to December 2000 when Plaintiff was retired from the USAF. The failure of the AFBCMR to grant this request was arbitrary and capricious and contradicts the AFBMCR's earlier decision to give Plaintiff ASP from July 1, 1998 for one year and from July 1, 1999.

Respectfully submitted,

TERRENCE J. MARTIN, P.C.
Colonnade One
9901 IH 10 West, Suite 760
San Antonio, Texas 78230
(210) 697-3400 (Telephone)
(210) 697-6386 (FAX)

By: ______________________
Terrence J. Martin
State Bar No. 13106750
Attorney for Plaintiff