IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MAJOR WILMA P. WEBSTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-1333C |
| | ) | (Judge Christine O.C. Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

---

DEFENDANT'S MOTION TO DISMISS

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

FRANKLIN E. WHITE, JR.
Assistant Director

DOUGLAS K. MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., N.W.
Washington, D.C. 20530
Tele: (202) 307-0383
Fax: (202) 353-7988

OF COUNSEL:

LT COL RITA RUSSELL
Air Force Legal Services Agency
1501 Wilson Boulevard
Arlington, Virginia 22209

April 7, 2006

# TABLE OF CONTENTS

PAGE

DEFENDANTS' MOTION TO DISMISS ..... 1

STATEMENT OF THE ISSUES ..... 2

STATEMENT OF THE CASE ..... 3

I. Nature Of The Case ..... 3

II. Statement Of The Facts ..... 4

ARGUMENT ..... 11

I. This Court's Standard Of Review For Motions To Dismiss For Lack Of Jurisdiction And Failure To State A Claim ..... 11

II. The Court Lacks Jurisdiction To Entertain Major Webster's Complaint ..... 13

A. The Administrative Procedures Act Does Not Provide A Basis For This Court To Entertain Major Webster's Complaint Seeking Additional Special Pay ..... 13

B. Major Webster's Claim For Additional Special Pay Must Be Dismissed Because She Can Point To No Statute Or Regulation That Mandates Such Pay For The Facts Alleged In Her Complaint ..... 13

III. Major Webster's Complaint Fails To State A Claim Upon Which This Court May Grant Relief ..... 14

A. The Are No Statutes Or Regulations That Authorize A Physician To Receive Additional Special Pay For A Period That Is Less Than 12 Months ..... 14

B. Major Webster's Claim For Additional Special Pay Also Fails To State A Claim Because The Decision Whether Someone Is Entitled To Additional Spacial Pay Is Nonreviewable ..... 15

IV. Major Webster's Non-Monetary Claims Are Not An Incident Of And Collateral To Her Money Claim ..... 16

CONCLUSION ..... 17

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Bender v. Williamsport Area School Dist.,
475 U.S. 534 (1986) ........................................ 11

Bobula v. Department of Justice,
970 F.2d 854 (Fed. Cir. 1992) ........................................ 17

Fisher v. United States,
402 F.3d 1167 (Fed. Cir. 2005) (en banc) ........................................ 12, 14

James v. Caldera,
159 F.3d 573 (Fed. Cir. 1998) ........................................ 16

Katz v. Cisneros,
16 F.3d 1204 (Fed. Cir. 1994) ........................................ 16

Kokkonen v. Guardian Life Ins. Co. of America,
511 U.S. 375 (1994) ........................................ 11

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992) ........................................ 11

M. Snower & Co. v. United States,
140 F.2d 367 (7th Cir. 1944) ........................................ 4

Martinez v. United States,
333 F.3d 1295 (Fed. Cir. 2003) ........................................ 13

McNabb v. United States,
54 Fed. Cl. 759 (2002) ........................................ 13

Moyer v. United States,
190 F.3d 1314 (Fed. Cir. 1998) ........................................ 2

New York Life Ins. Co. v. United States,
118 F.3d 1553 (Fed. Cir. 1997) ........................................ 12

Perez v. United States,
156 F.3d 1366 (Fed Cir. 1998) ........................................ 13

Reynolds v. Army and Air Force Exchange Serv.,
846 F.2d 746 (Fed. Cir. 1988) .......... 2

Todd v. United States,
386 F.3d 1091 (Fed. Cir. 2004) .......... 12

United States v. Mitchell,
445 U.S. 535 (1980) .......... 11

United States v. Testan,
424 U.S. 392 (1976) .......... 11

Voge v. United States,
844 F. 2d 776 (1988) .......... 1, 15, 16

**STATUTES**

5 U.S.C. 704 .......... 4, 13

28 U.S.C. § 1491 .......... 11, 12

37 U.S.C. § 302 .......... 14, 15

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **MAJOR WILMA P. WEBSTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 05-1333C** |
| | ) | **(Judge Christine O.C. Miller)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss Major Wilma P. Webster's complaint for lack of subject matter jurisdiction and because it fails to state a claim upon which relief can be granted. In her complaint, Major Webster has failed to allege a valid statutory waiver of sovereign immunity upon which an action can proceed in the Court of Federal Claims. In addition, Major Webster has failed to allege the existence of a money-mandating statute that could support her claim for Additional Special Pay ("ASP"). Importantly, even were Major Webster permitted to amend her complaint to specifically allege a statutory waiver of sovereign immunity and a money-mandating statute, Major Webster's money claim would still fail, as she challenges the substantive merits of the Air Force's decision to deny her ASP, an issue that the United States Court of Appeals for the Federal Circuit has held, in Voge v. United States, 844 F. 2d 776 (Fed. Cir. 1988), to be nonjusticicable. Finally, because the non-monetary relief requested in her complaint is not "incident of and collateral to" her claim for ASP, this Court should dismiss Major Webster's non-monetary claims for lack of jurisdiction regardless of whether Major Webster's claim is also dismissed.

In support of this motion, we rely upon Ms. Webster's complaint, the following brief, and the administrative record of this case filed under separate cover.[1]

**STATEMENT OF THE ISSUES**

1. Whether Major Webster's complaint should be dismissed for lack of subject matter jurisdiction because she has (1) failed to allege a statutory waiver of sovereign immunity that could permit the United States to be sued in the Court of Federal Claims and (2) failed to allege a statute that could be fairly inferred to be money-mandating.

2. Assuming that the Court possesses jurisdiction to entertain Major Webster's money claim for additional ASP, whether Major Webster's complaint should be dismissed for failure to state a claim upon which relief may be granted because (1) the undisputed facts demonstrate that Major Webster's claim for additional six months of ASP does not satisfy the statutory conditions for entitlement to ASP and (2) because the Air Force's decision to deny her ASP raises a non-justiciable issue.

3. Assuming that Major Webster's money claim for additional ASP is not subject to dismissal for lack of jurisdiction or for failure to state a claim, whether the Court should dismiss Major Webster's claims for non-monetary relief because those claims are not "incident of and collateral to" her money claim.

---

[1] Citations to "AR" refer to the administrative record of the Air Force Board For Correction Of Military Records ("AFBCMR"); "Compl." refers to plaintiff's complaint in this case. The Court may consider the evidence set forth in the administrative record in determining whether it lacks jurisdiction to entertain Major Webster's complaint because it contains relevant evidence concerning jurisdictional facts. Reynolds v. Army and Air Force Exchange Serv., 846 F.2d 746, 747 (Fed. Cir. 1988); Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1998).

## STATEMENT OF THE CASE

### I. Nature Of The Case

Plaintiff, Major Wilma Webster, is a former physician in the United States Air Force, who was medically retired on December 1, 2000. Compl. p. 1 ¶ 3. Major Webster filed an application with the AFBCMR in April 2002 seeking to void certain documents in her military records, to include: (1) a finding and recommendation of a Medical Practice Review Board ("MPRB") which restricted Major Webster from practicing emergency room medicine, and (2) a determination by her commander restricting Major Webster from practicing emergency room medicine and limiting her practice to certain clinics and with 100% supervision. Compl. ¶ 3. Major Webster's AFBCMR application also requested the board to: (1) direct the Air Force's Surgeon General to modify information the Air Force had previously furnished to the National Practitioner Data Bank; (2) correct Major Webster's military record's to comply with the board's ultimate decision; and (3) grant and pay Major Webster "physician's incentive payments" from July 1, 1998 to December 1, 2000. Id.

As a result of Major Webster's application to the AFBCMR, Major Webster was granted two years of Additional Special Pay, "effective July 28, 1998 for one year, and effective July 28, 1999, for one year." Compl. ¶ 8d.[2] In her complaint before this Court, Major Webster now seeks Additional Special Pay for the six month period she served upon active duty prior to her medical retirement, i.e., July 2000 to December 2000. Compl. ¶¶ 4, 13n. In addition to this monetary claim, Major Webster also requests the Court to: (1) void a finding and recommendation of a MPRB that restricted Major Webster from practicing emergency room

[2] See also, Compl. ¶ 12, Items Not Appealed

medicine; (2) void a determination by her commander that restricted Major Webster from practicing emergency room medicine and limited her practice to certain clinics and only when she was being supervised; and (3) direct the Air Force's Surgeon General to rescind or modify information the Air Force had previously furnished to the National Practitioner Data Bank. Compl. pp. 8-9 (Prayer for Relief).

Major Webster's complaint asserts 5 U.S.C. § 704 as the sole basis for this Court's jurisdiction to entertain her complaint. Compl. ¶ 11.

## II. Statement Of The Facts[3]

On June 20, 1992, Major Webster was ordered to extended active duty as a physician in the Air Force's Medical Corps. AR 6. Several years into her service, allegations were raised questioning Major Webster's fitness to practice medicine. AR 243-250. A Credential's Function Committee[4] convened on November 18, 1998 to review these allegations, and subsequently made a unanimous recommendation to Major Webster's commander at the 24th Medical Group that Major Webster's medical privileges be revoked. AR 755-756; 764-765.

---

[3] For purposes of this motion, the United States will assume that all of the facts in Major Webster's complaint are true. However, should the Court deny our motion, the United States reserves the right to challenge any of the facts alleged by Major Webster in her complaint. E.g., M. Snower & Co. v. United States, 140 F.2d 367, 370 (7th Cir. 1944).

[4] The role of the Credential Function Committee is to examine information obtained from an inquiry or other materials and to make recommendations to the Medical Group Commander ("MDG/CC") and Chief of the Medical Staff regarding the provider's clinical privileges. Air Force Instruction ("AFI") 44-119, Clinical Performance Improvement, Chap. 7, Section 7c ¶ 7.16.

Shortly thereafter, on December 1, 1998, a Medical Evaluation Board[5] ("MEB") was convened to consider Major Webster's fitness for continued service. AR 92-95. The MEB referred Major Webster's case to an Informal Physical Evaluation Board[6] ("IPEB"), noting that the MEB found that Dr. Webster possessed the following medical conditions that could be unfitting: Gullian-Barre syndrome, Multiple Sclerosis ("MS"), anti-social, histrionic, and narcissistic personality traits, cognitive disorder, and glaucoma. AR 92. On January 28, 1999, the IPEB recommended that Major Webster be returned to duty. AR 93.

While Major Webster was being processed through the Air Force's disability channels, a letter was issued to Major Webster notifying her of the Credential's Function Committee's recommendation. AR 770-771. Major Webster acknowledged receipt of the notice and requested a formal hearing. AR 772. On January 7, 1999, Major Webster was notified that her formal Credential's hearing was to be conducted on February 17-18, 1999. AR 34-38.

On February 17-18, 1999, the 24th Medical Group at Howard AFB, Panama, held a formal Credential's Hearing to address matters that pertained to Major Webster's clinical proficiency, professional conduct, as well as matters affecting her mental and physical well-being. AR 39-46; AR 383-727. The Credential's Hearing addressed patient complaints,

---

[5] The Medical Evaluation Board ("MEB") is the first step in the Air Force disability evaluation process to determine who is not worldwide qualified. AFI 44-157, <u>Medical Evaluation Boards (MEB) and Continued Military Service</u>, Chap. 1, ¶ 1.1.

[6] A Physical Evaluation Board ("PEB") is a fact-finding body that investigates the nature, origin, degree of impairment, and probable permanence of the physical or mental defect or condition of any member whose case it evaluates. AFI 36-3212, <u>Physical Evaluation for Retention, Retirement, and Separation</u>, Chap. 3, Section A. The Informal Physical Evaluation Board ("IPEB") reviews appropriate medical and personnel records, and related documentation to determine an airman's fitness for duty. AFI 36-3212, <u>Physical Evaluation for Retention, Retirement, and Separation</u>, Chap. 3, Section 3C.

mental/physical limitations mounting to an unacceptable impairment, forgetfulness/disorganization in the clinical setting, inappropriate actions, and allegations of substandard care in the ER setting. AR 39.

Major Webster was represented by counsel at the Credential's Hearing. AR 387. At the conclusion of the hearing, the hearing committee unanimously concluded that: (1) Major Webster did not adequately manage task-saturated events; (2) Major Webster's family practice, primary care, and aerospace medicine privileges should be allowed, with the caveat that Major Webster should be monitored with 100 percent chart review for no less than 3 months; and (3) at the conclusion of the three month period, Major Webster's privileges should be reevaluated. AR 45-46.

On April 6, 1999, Major Webster, through her attorney, appealed to the Air Force Surgeon General ("AF/SG") the Credential Functioning Committee's decision, alleging that: (1) the Government failed to produce crucial medical records at the hearing; (2) the Government introduced records not provided to the applicant prior to the hearing; (3) the Government asserted command influence upon at lest one witness; (4) the Government failed to assure impartiality of the Hearing Committee; and (5) the Government went outside the hearing record to investigate a review of the adverse action and Major Webster's appeal. AR 52.

The Air Force Medical Practice Review Board[7] ("MPRB") reviewed Major Webster's appeal and found the action taken by the Credential's Functioning Committee at Howard Air

---

[7] The MPRB reviews clinical and legal aspects of the case and makes a final recommendation to the Commander, Air Force Medical Operations Agency ("AFMOA/CC"). For cases that require National Practitioner Data Base ("NPDB") reporting, the case is forwarded to the Air Force Surgeon General ("HQ USAF/SG") for final action. AFI 44-119, Clinical Performance Improvement, Chap. 7, Section 7E, ¶7.37.

Force Base to be appropriate. AR 84. After reviewing all of the facts of Major Webster's case, and the items Major Webster raised in her appeal, the AF/SG concurred with the position of the MPRB and informed the Major Webster that he intended to report the results of the hearing to the NPDB.[8] AR 84.

In December 1999, Major Webster was sent to Keesler Air Force Base in Mississippi for reevaluation. AR 97. During December 1999 and January 2000, six physicians provided direct evaluation of Major Webster's emergency room practice. AR 97. These physicians recommended that it would not be prudent to leave Major Webster alone in charge of an emergency department, and that Major Webster was not a competent emergency physician. Most of these physicians also believed that Dr. Webster could perform in a satisfactory manner in a controlled, slower clinical setting. AR 97; AR 102-123. The evaluating physicians concluded that Major Webster possesses good clinical knowledge in most settings, but all agreed that she could not handle the multi-tasking needed in the emergency medicine specialty. AR 97;102-123.

On July 12, 2000, a second MEB was convened to consider Major Webster's fitness for continued service. AR 139-140. Once again, the MEB referred Major Webster's case to an IPEB. AR 139. The IPEB determined that Major Webster was unfit for continued service because she possessed MS, associated with secondary cognitive deficit, and recommended that Major Webster be permanently retired with a compensable percentage of 30 percent.

---

[8] The National Practitioner's Data Bank or "NPDB" is the organization developed to receive and provide data on professional competence and conduct of physicians, dentists, and other licensed healthcare providers. Department of Defense Directive ("DODD") 6025.14, Department of Defense Participation in the National Practitioner Data Bank (NPDB), 01 November 1990, ¶3.3; Public Law 99-660, Title IV, "The Health Care Quality Improvement Act of 1986," November 1986 (42 U.S.C. §§ 11131-11152).

AR 139-140. Major Webster initially disagreed with the IPEB's findings and requested a formal PEB. AR 141.

On September 20, 2000, Major Webster elected to waive the formal PEB she had previously requested and indicated that she concurred with the findings and recommendations of the IPEB. AR 141. On October 17, 2000, the Office of the Secretary of the Air Force directed that Major Webster be retired in the grade of major with a compensable rating of 30 percent. Major Webster was retired effective December 1, 2000. AR 142.

On May 1, 2002, Major Webster filed an application for correction of her military records with the AFBCMR. AR 15. Major Webster alleged that Air Force officials acted in an arbitrary and capricious manner and in violation of existing law and regulations by limiting Major Webster's medical credentials, by removing her from any practice in emergency room medical care, and in limiting her clinical care credentials by requiring 100 percent monitoring of her clinical practice. AR 15. Major Webster also alleged that the Air Force acted in an arbitrary and capricious manner, contrary to law and regulation, when it limited her practice of medicine to the Family Practice, Primary Care, and Aerospace medicine clinics. AR 15-16. Finally, Major Webster alleged that the Air Force erred when it failed to pay her ASP. AR 15, 31-32. Major Webster alleged the Air Force “stopped” paying her ASP “in late 1998 or early 1999.” AR 31.

The AFBCMR concluded that insufficient relevant evidence had been presented to demonstrate the existence of an error or injustice that would warrant full relief of Major Webster’s requests. AR 10. The AFBCMR noted that the Credential's Hearing Committee, after deliberating upon all the facts of her case, recommended that Major Webster should not practice in an emergency room setting, but that Major Webster should be allowed clinical privileges and

another reevaluation after a period of time. AR 10. Major Webster's commander concurred with that recommendation. AR 48.

The AFBCMR found that the actions taken to effect revocation of her emergency room privileges and restrict her to clinical practices were appropriately taken and done in accordance with established directives. AR 10-11, ¶3. The board specifically found that evidence had not been presented to show that Major Webster's commander abused his discretionary authority or that the actions he took against Major Webster were taken for anything other than her own performance. AR 11¶3.

The board also addressed Major Webster's application and the information she provided regarding the reevaluation of her emergency medicine practice that was accomplished at Keesler Air Force Base, and found that it was further confirmed that Major Webster should be limited to performing duties in a clinical setting. AR 11 ¶3.

The AFBCMR carefully reviewed the data contained in the Adverse Action Report provided to the NPDB and was not persuaded that the data was factually incorrect or that the report was improperly submitted. AR 11 ¶3. The AFBCMR agreed with the Air Force Office of Primary Responsibility ("OPR") and adopted OPR's rationale as a basis for the board's conclusion that Major Webster had not been a victim of an error or injustice warranting correction. AR 11 ¶3.

Notwithstanding these findings, the board found that Major Webster presented sufficient relevant evidence warranting approval of Major Webster's request to receive Additional Special Pay for July 1998 to July 2000. AR 11 ¶4. The board found that Major Webster's pay records reflected that Major Webster remained eligible for Additional Special Pay for certain periods that it was denied her. AR 11 ¶ 4. While the AFBCMR believed that Major Webster's

commander possessed discretion to relegate her to other duties, it found that, based upon the findings of the MPRB, Major Webster could have practiced in a clinical setting and therefore was entitled to the Additional Special Pay. AR 11 ¶ 4. Thus, the AFBCMR recommended that Major Webster's military records be corrected to show that:

> a. on July 27, 1998, Major Webster had executed, and competent authority approved, a one-year Additional Special Pay Contract, effective July 28, 1998 (AR 12 ¶ 5a); and,
>
> b. on July 27, 1999, Major Webster had executed, and competent authority approved, a one-year additional Special Pay Contract, effective July 28, 1999. AR 12 ¶ 5b.

On August 19, 2004, Major Webster asked the AFBCMR to reconsider its decision of February 4, 2003. AR 1475-1500. Major Webster's reconsideration request also asked the AFBCMR to clarify its previous decision to reflect that the board's initial decision removed all such restrictions the Air Force placed upon Major Webster's ability to practice in a medical clinical setting and in the emergency room. AR 1476.

The AFBCMR did not adopt Major Webster's interpretation of its initial decision. On December 28, 2004, the board rejected Major Webster's request for reconsideration and restated that the board had partially granted Major Webster's Additional Special Pay request. AR 1503-1505.

On December 20, 2005, Major Webster filed suit in this Court, alleging that the MPRB and AFBCMR decisions are arbitrary and capricious for a number of reasons. See Compl. ¶13.

## ARGUMENT

### I. This Court's Standard Of Review For Motions To Dismiss For Lack Of Jurisdiction And Failure To State A Claim

The first and fundamental question presented by every case brought to the Federal courts is whether the Court possess jurisdiction to hear it. Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986). Federal courts are courts of limited jurisdiction which may exercise only those powers authorized by Constitution and statute. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). Like all Federal courts, this Court's jurisdiction to entertain claims and to grant relief depends upon, and is circumscribed by, the extent to which the United States has waived its sovereign immunity. United States v. Testan, 424 U.S. 392, 399 (1976). The burden of establishing the court's subject matter jurisdiction rests with Major Webster. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

The United States Court of Federal Claims has been authorized by Congress to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).[9] In United States v. Mitchell, 445 U.S. 535, 538 (1980), however, the United States Supreme Court held that the Tucker Act does not create any

---

[9] 28 U.S.C. § 1491(a)(2) provides:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States.

substantive right for monetary damages. Therefore, Major Webster must identify and plead an independent contractual relationship, constitutional provision, Federal statute, and/or executive agency regulation that provides a substantive right to money damages in order for the Court to possess jurisdiction. See Todd v. United States, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act."); see also Fisher v. United States, 402 F.3d 1167, 1173-74 (Fed. Cir. 2005) (en banc). Merely requesting money damages, however, does not satisfy the money-mandating criterion, as there must be a statute, regulation, or contract that specifically allows the monetary relief plaintiff requests. See New York Life Ins. Co. v. United States, 118 F.3d 1553, 1556 (Fed. Cir. 1997), cert. denied, 523 U.S. 1094 (1998).

As the Federal Circuit noted in Fisher, “the neat division between jurisdiction and merits has not proved to be so neat.” Fisher v. United States, 402 F.3d at 1171-72. However, once the Court has taken jurisdiction to entertain the complaint as a result of its initial determination that “plaintiff's cause rests on a money-mandating source, the consequence of a ruling by the court on the merits, that plaintiff's case does not fit within the scope of the source, is simply this: plaintiff loses on the merits for failing to state a claim on which relief can be granted.” Fisher v. United States, 402 F.3d at 1175-76 (citing Palmer v. United States, 168 F.3d 1310, 1313 (Fed. Cir.1999)).

RCFC 12(b)(6) governs dismissal for "failure to state a claim upon which relief can be granted." RCFC 12(b)(6). When deciding a motion to dismiss based on failure to state a claim pursuant to RCFC 12(b)(6), this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. Perez v.

United States, 156 F.3d 1366, 1370 (Fed Cir. 1998). "A motion to dismiss for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not under the law entitle him to a remedy." Id.

## II. The Court Lacks Jurisdiction To Entertain Major Webster's Complaint

### A. The Administrative Procedures Act Does Not Provide A Basis For This Court To Entertain Major Webster's Complaint Seeking Additional Special Pay

Major Webster's complaint does not plead a statutory waiver of sovereign immunity that permits the United States to be sued in this Court. Major Webster cites to one section of the Administrative Procedure Act ("APA"), 5 U.S.C. § 704,[10] as the sole basis for jurisdiction in this case. Compl. ¶ 11. However, this Court does not possess jurisdiction to review an agency decision pursuant to the APA. Martinez v. United States, 333 F.3d 1295, 1313 (Fed. Cir. 2003) (holding that the United States Court of Federal Claims lacks APA jurisdiction); see also McNabb v. United States, 54 Fed. Cl. 759, 767 (2002) (holding "APA reviews are conducted in federal district court rather than the [United States] Court of Federal Claims, since the APA addresses 'relief other than money damages.'"). As a result, this Court lacks jurisdiction to consider Major Webster's complaint, and it should be dismissed.

### B. Major Webster's Claim For Additional Special Pay Must Be Dismissed Because She Can Point To No Statute Or Regulation That Mandates Such Pay For The Facts Alleged In Her Complaint

As we explained above, Major Webster's complaint fails to allege a statutory waiver of sovereign immunity for this Court to possess jurisdiction to entertain her complaint.

[10] Major Webster cites 5 U.S.C. § 704, which states: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. . . ."

Major Webster's complaint also fails to identify a separate statute or regulation that creates a substantive right to the money damages she now seeks. Fisher v. United States, 402 F.3d at 1173-74. At most, Major Webster's complaint simply makes a request for more Additional Special Pay, and includes a vague reference to "Title 37, Chapter 5" and "AFI 41-9109." Accordingly, since Major Webster has failed to identify a separate statute or regulation that creates a present substantive right to money damages, this Court does not possess the ability to review Major Webster's claims, and pursuant to RCFC 12(b)(1), her complaint must be dismissed.

## III. Major Webster's Complaint Fails To State A Claim Upon Which This Court May Grant Relief

### A. The Are No Statutes Or Regulations That Authorize A Physician To Receive Additional Special Pay For A Period That Is Less Than 12 Months

Major Webster has not alleged a money-mandating statute in her complaint, and even if the Court assumes that Major Webster's complaint can be construed (or amended) to assert 37 U.S.C. § 302 – the only possible applicable statute that discusses Additional Special Pay for military members – Major Webster's complaint still fails because she is not eligible for Additional Special Pay.

Pursuant to the applicable statute, 37 U.S.C. § 302(c)(1) mandates that an officer is not entitled to "be paid additional special pay . . . for any twelve-month period unless the officer first executes a written agreement under which the officer agrees to remain on active duty for a period of not less than one year beginning on the date the officer accepts the award of such pay." Major Webster was medically retired effective December 1, 2000. However, in her complaint, Major Webster is now seeking compensation for only the last 6 months she served upon active duty prior to her retirement, i.e., from July 2000 to December 2000. Compl. ¶¶ 4, 13n.

Major Webster's request for Additional Special Pay fails because she did not have the requisite retainability to sign and execute an agreement to remain upon active duty for one year from the time she would have begun to receive compensation. 37 U.S.C. § 302(c). Accordingly, because there is no statutory basis for the Additional Special Pay Major Webster now seeks, her complaint should also be dismissed for failing to state a claim upon which this Court could grant relief.

### B. Major Webster's Claim For Additional Special Pay Also Fails To State A Claim Because The Decision Whether Someone Is Entitled To Additional Spacial Pay Is Nonreviewable

It is also well-settled that absent a violation of statute or regulation, the Air Force's decision to grant or deny Additional Special Pay pursuant to 37 U.S.C. § 302 is discretionary and not reviewable by this Court. Voge v. United States, 844 F. 2d 776 (Fed. Cir. 1988). In Voge, the Federal Circuit held that while this Court possessed the authority to review Additional Special Pay requests for violations of statute or procedural defects, the underlying decision of the Service Secretary was discretionary and not reviewable. The court of appeals also found that "[t]he regularity of [Voge's] military records and the actions of her superiors in evaluating her performance as a doctor and officer is entirely unrelated to [the issue of additional special pay]." Voge, 844 F.2d at 781. Here, Major Webster's attempts to tie the decisions of the medical review boards and the credentials hearings to her claim for Additional Special Pay equally fails. Major Webster has not alleged any regulatory or statutory violations with regard to the Air Force's decision to deny her request for Additional Special Pay. See generally Compl. pp. 1-9. Accordingly, because the Air Force's decision to deny Major Webster Additional Special Pay is not reviewable, and because no violation of statute or regulation has been alleged with regard to

the Air Force's decision to deny Major Webster's request for six months of Additional Special Pay, Major Webster's complaint should also be dismissed for this alternative reason.

## IV. Major Webster's Non-Monetary Claims Are Not An Incident Of And Collateral To Her Money Claim

Major Webster has also sought non-monetary relief from the Court in addition to her claim for additional ASP. Major Webster requests that the Court: (1) void a finding and recommendation of a MPRB that restricted Major Webster from practicing emergency room medicine; (2) void a determination by her commander that restricted Major Webster from practicing emergency room medicine and limited her practice to certain clinics and only when she was being supervised; and (3) direct the Air Force's Surgeon General to rescind or modify information the Air Force had previously furnished to the National Practitioner Data Bank. Compl. pp. 8-9 (Prayer for Relief).

The Court of Federal Claims possesses limited jurisdiction to grant non-monetary relief. To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing . . . correction of applicable records." 28 U.S.C. § 1491(a)(2). However, this provision gives the Court "power to order the correction of military records only 'incident of and collateral to' its award of a money judgment." Voge v. United States, 844 F.2d at 781. "Stated another way, the Court of Federal Claims has no power 'to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.'" James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998)(quoting Austin v. United States, 206 Ct. Cl. 719, 723 (1975)); Katz v. Cisneros, 16 F.3d 1204, 1208 (Fed. Cir. 1994). As demonstrated above, Major Webster's money claim for additional ASP fails because this Court cannot review the Air Force's substantive decision to deny ASP and because Major

Webster's ASP claim is inconsistent with the plain language of the applicable money-mandating statute (which she does not cite). Because this Court must dismiss Major Webster's money claim, it must also dismiss her non-monetary claims.

Additionally, even if the Court were not required to dismiss Major Webster's claim for Additional Special Pay, the non-monetary relief Major Webster requests would not be "tied and subordinate to" a money judgment for ASP. Thus, the Court would lack jurisdiction to consider these claims in any event. Indeed, to provide Major Webster with the Additional Special Pay she now seeks, the Court would simply have to correct records that directly impact the award of this back pay. However, voiding a finding and recommendation of the MPRB that restricted Major Webster from practicing emergency room medicine is not "incident of and collateral to" an award of Additional Special Pay. Moreover, voiding a determination by Major Webster's commander that restricted Major Webster's practicing emergency room medicine and limited her practice to certain clinics and only when she was being supervised is not "incident of and collateral to" an award of Additional Special Pay. Finally, directing the Air Force's Surgeon General to rescind or modify information the Air Force had furnished to the National Practitioner Data Bank is not "incident of and collateral to" an award of Additional Special Pay. These are separate and distinct claims for equitable relief which the Court may not grant. See Bobula v. Department of Justice, 970 F.2d 854, 859 (Fed. Cir. 1992).

## CONCLUSION

For the reasons stated above, we respectfully request that the Court dismiss the complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). In the alternative, we request the Court dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/Douglas K. Mickle
DOUGLAS K. MICKLE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., N.W.
Washington, D.C. 20530
Tele: (202) 307-0383
Fax: (202) 353-7988

Attorneys for Defendant

OF COUNSEL:

LT COL RITA RUSSELL
Air Force Legal Services Agency
1501 Wilson Boulevard
Arlington, VA 22209

April 7, 2005

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 7th day of April 2006, a copy of the foregoing "**DEFENDANT'S MOTION TO DISMISS**," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Douglas Mickle
Douglas K. Mickle