RATORY ARREST REPORT (Continued)




ORMATION

# CARDIOPULMONARY ARREST WORKSHEET

DATE / TIME OF ARREST: 2130

CPR INITIATED AT / BY: 2130

CODE BLUE ANNOUNCED @: 2130

TEAM MEMBERS RESPONDING

Director: Webster
Physicians: Webster, Oneil, Burkett
Technicians: Bolton, Brook, Cesar
Nurses: Lester, Addison
Lab: Metzger
X-Ray: yes
Other: ECG. Elat Ambulance

IV Fluids Started (Type/Time, Flow rate, Site/Catheter size):
#1: 2130 Right ARM 20g open wide
#2: 2146 Left ARM 20g open wide
#3:

Airway Management

Time: 2132 By: Brook
Bag Mask: Brook - 02 15L
Intubation: 2143 Dr Burkett
Bilateral Breath Sounds Verified by: Dr Burkett

| Vital Signs | Time 2132 | Time 2133 | Time 2135 | Time 2142 | Time 2151 | Time | Time | Time | Time |
|---|---|---|---|---|---|---|---|---|---|
| B/P | | | | | | | | | |
| Pulse | | No | No | NO | NO | | | | |
| Resp. | Sparse | NO | NO | NO | NO | | | | |
| Defib. | ? v fib | yes | yes | yes | | | | | |
| Rhythm | ? v fib | ? v fib. | | | flat line | | | | |
| Energy | | | | | | | | | |

| Medications | Route | Time 2133 | Time 2138 | Time 2140 | Time 2143 | Time 2148 | Time 2149 | Time 2151 | Time 2155 |
|---|---|---|---|---|---|---|---|---|---|
| Epinephrine | | 1ml | | 1ml | 1ml | 1ml | | 1ml | |
| Lidocaine | | | 75 | | | | | | |
| Bretylium | | | | | | | | | |
| Atropine | | | | | | | | | |
| Other | | | | | | | Mag 1gm | | 2ml |

Other Treatment:

Foley Catheter @ ______ By: ______
X-Ray @ ______ of: ______
Other: NG Tube @ 2155 By: Dr Burkett

CODE TERMINATED AT: 2159 - 57
BY: Webster
REASON:

Transport to GACH @:
Attendants: SSgt [illegible], MSgt [illegible]

WILMA R WEBSTER, MAJ
EMERGENCY PHYSICIAN 44MDG
24 MDOS, HAFB, NEVADA

Signature of Recorder — 2 Jan 98

Signature of Director — Date 25 Jan 98

Remarks — see reverse side of form.

HAFB FORM 0-100 May 91

76

# CARDIOPULMONARY ARREST WORKSHEET

DATE / TIME OF ARREST: ____________ CPR INITIATED AT / BY: ____________

CODE BLUE ANNOUNCED @: ____________

TEAM MEMBERS RESPONDING

Director: ____________ Nurses: ____________

Physicians: ____________

Technicians: ____________

Lab: ____________

X-Ray: ____________

Other: ____________

IV Fluids Started (Type/Time, Flow rate, Site/Catheter size):

#1: ____________

#2: ____________

#3: ____________

Airway Management

Time: ____________ By: ____________

Bag Mask: ____________

Intubation: ____________

Bilateral Breath Sounds Verified by: ____________

| Vital Signs | Time | Time | Time | Time | Time | Time | Time | Time | Time |
|---|---|---|---|---|---|---|---|---|---|
| B/P | | | | | | | | | |
| Pulse | | | | | | | | | |
| Resp. | | | | | | | | | |
| Defib. | | | | | | | | | |
| Rhythm | | | | | | | | | |
| Energy | | | | | | | | | |

| Medications | Route 2157 | Time 2158 | Time 2159 | Time | Time | Time | Time | Time | Time |
|---|---|---|---|---|---|---|---|---|---|
| Epinephrine | IM I | r | | | | | | | |
| Lidocaine | | | | | | | | | |
| Bretylium | | 500 | | | | | | | |
| Atropine | | | | | | | | | |
| Other | | | [illegible] VF in 850 | | | | | | |

Other Treatment:

Foley Catheter @ ____________ By: ____________

X-Ray @ ____________ Of: ____________

Other: ____________ @ ____________ By: ____________

CODE TERMINATED AT: ____________

BY: ____________

REASON: ____________

Transport to GACH @: ____________

Attendants: ____________

WILMA P. WEBSTER, MAJ
EMERGENCY PHYSICIAN 4483
34 MDOS, HAFB, PANAMA

[signature] 21 Jan 98 [signature] 23 Jan 98

Signature of Recorder — Date — Director — Date

Remarks: Use reverse side of form

HAFB FORM [illegible]

77

Place: Inpatient Unit
Diagnosis: Right pleural effusion
21:30 BCLS initiated sith 20 gauge IV
21:33 Defib 300J
21:35 Defib 360J epinephrine 1 mg IVP
21:38 Lidocaine 75 mgs IVP
21:40 epi 1 mg IVP
21:42 Defib 360J
21:43 Epi 1 mg IVP
21:45 Epi 1 mg IVP
21:46 20 gauge IV put into left arm
21:47 Intubated by Dr. Burkett
21:49 Mag 1 gm IVP
21:51 Aystole Epi 1 mg IVP
21:55 Atropine 2 mgs IVP ng tube by Burkett
21:57 Eppinephrine 1 mg IVP
21:58 Bretylium 500 mgs IVP
21:59 Code Terminated

Hill, Wm. John Time CPR stopped: 21:59

Date: 24 JAN 98
Type of Arrest: Cardiac
Time of arrest: 21:30
BCLS started 21:30
ACLS started 21:33
Time intubated 21:47

Names of Physicians responding
Dr. Webster
Dr. O'Neil
Dr. Burkett

Vital Signs

| | BP | P | Resp |
|---|---|---|---|
| 21:32 | 0 | 0 | 0 |
| | 0 | 0 | 0 |
| | 0 | 0 | 0 |
| | 0 | 0 | 0 |

21:30

S. Code called on ward at approx 21:30 after patient fell back in bed apparently unconscious with "heavy breathing." When I arrived on scene patient was already received CPR. I put my hand on his right groin to feel the pulses. I thought I felt faint pulses in addition to the CPR induced pulses. At that point Amn Brook pointed out that the patient was breathing on his own. At that point we stopped CPR and observed the patient's respirations even while the monitor seemed to indicate V fib. However the breathing decreased and he became cyanotic so CPR was renewed and I ordered defibrillation x 3 escalating doses , epi 1 mg q 3 ' and 1 gram of mg sulfate. I attempted but was unable to intubate. Pt. Was intubated by Dr. Burkett. Bretylium 500 mgs was given IVP. 2 mgs atropine given after pt became st. line. Pt was declared deceased at 21:59. A post mortem CXR was taken and showed probable cardiomegaly & intubation of the right mainstem bronchus.

Wilma P. Webster, MAJ

Dx Cardiopulmonary Arrest
Hill, William
20/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 Male 30 y/o

Place: Inpatient Unit
Diagnosis: Right pleural effusion
21:30 BCLS initiated sith 20 gauge IV
21:33 Defib 300J
21:35 Defib 360J epinephrine 1 mg IVP
21:38 Lidocaine 75 mgs IVP
21:40 epi 1 mg IVP
21:42 Defib 360J
21:43 Epi 1 mg IVP
21:45 Epi 1 mg IVP
21:46 20 gauge IV put into left arm
21:47 Intubated by Dr. Burkett
21:49 Mag 1 gm IVP
21:51 Aystole Epi 1 mg IVP
21:55 Atropine 2 mgs IVP ng tube by Burkett
21:57 Eppinephrine 1 mg IVP
21:58 Bretylium 500 mgs IVP
21:59 Code Terminated

Hill, Wm. John Time CPR stopped: 21:59

Date: 24 JAN 98
Type of Arrest: Cardiac
Time of arrest: 21:30
BCLS started 21:30
ACLS started 21:33
Time intubated 21:47

Names of Physicians responding
Dr. Webster
Dr. O'Neil
Dr. Burkett

Vital Signs

| | BP | P | Resp |
|---|---|---|---|
| 21:32 | 0 | 0 | 0 |
| | 0 | 0 | 0 |
| | 0 | 0 | 0 |
| | 0 | 0 | 0 |

8

TOTAL P.02

02 APR 1999

MEMORANDUM FOR WHOM IT MAY CONCERN

FROM: GUSTAVO A. HERRERA, MD

SUBJECT: Estrogen deficiency as probable origin of test results

1. In response to a request by Maj. Wilma Webster, I have started her on hormone replacement therapy with Premarin (estrogen).

2. She is aware of the danger of taking unopposed estrogen but maintains that she has a small, stable meningioma and has read that progesterone is known to serve as a growth factor for meningiomas.

3. I agree with her conclusion that the minor cognitive changes present on recent testing were probably related to estrogen deficiency. She went through menopause 7 years ago and has never taken hormonal replacement therapy.

GUSTAVO A. HERRERA, M.D.
Gyncologist, 24th Medical Group
Howard Air Force Base, Panama

C 81

**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS 24TH MEDICAL GROUP (ACC)**
**HOWARD AFB, PANAMA**

DATE: 6 April, 1999

MEMORANDUM FOR : To whom it may concern

FROM: Dr. Gustavo Herrera

SUBJECT: Obstetrical management.

In general, a pregnant patient at term, not in active labor, stable, with normal fetal heart tones, not bleeding, with ruptured membranes and clear liquid can be safely advised to go to the maternity with her husband in a private vehicle.

GUSTAVO A. HERRERA, MD. FACOG.
OB/GYN CLINIC
HOWARD AFB, PN

Global Power For America

82

22:15 S. I'd spoken to Dr. Olmos earlier & she'd requested I check fetal heart tones on this patient. Alert and oriented, complains of intermittent abdominal pain, much liquid from 'water broke'.
O. Alert & oriented, PERRL, conjunctivae pink, tongue moist, neck suppple, heart RRR, lungs clear. + left CVA tenderness, abdomen with enlarged uterus with intermittent contractions, bringing towel with fluid on it. No special smell. Non fetid. Ext with no cyanosis. FHT: 140 Discussed with Dr. Olmos. Send to Paitilla Hospital in POV.
A. Term pregancy in labor
P. Transport to Paitilla
P. After birth: regular exercise, increase fruits & veges

Instructions to patient: go directly to Paitilla Hospital, meet Dr. Olmos there.

---

Note from other hospital:

Admitted 25 APR 98 Delivery: 26 APR 98 Hospital: Paitilla

History of Present Illness: 28 YO patient, G1, 39 weeks pregnant, with history of spontaneous rupture of membranes 25 april 1998, approximately 11:00 p.m. PATIENT WITH HISTORY OF POSITIVE G.B.S., SENSIBLE TO KEFLIN. ADMITTED FOR IV ANTIBIOTICS AND MONITORING OF LABOR.

Past History and System Review: NEGATIVE Prenatal Course: NORMAL

Physical Exam: WHEN EVALUATED, WITH IRREGULAR UTERINE ACTIVITY, CERVIX DILATED 5-6 CM, EFFACEMENT 70%, VERTEX PRESENTATION, STATION 2-3, PASSAGE OF CLEAR AMNIOTIC FLUID. FETAL MONITORING WITHOUT ABNORMALITIES.

Initial Diagnosis: TERM IUP
SPONTANEOUS RUPTURE OF MEMBRANES.
INITIAL LABOR

Laboratory: CBC, URINALYSIS NORMAL

Hospital course: GOOD UTERINE ACTIVITY. THE PATIENT REQUESTED AN EPIDURAL BLOCKAGE THAT WAS GIVEN AT 6CM. ANTIBIOTIC THERAPY WAS STARTED AT ADMISSION WITH KEFLIN 1 GR IV Q6H. THE FETAL PRESENTATION STOOD AT -2-3 ALL THE TIME, AND IT DEVELOPED A CAPPUT. THE PATIENT REACHED 10 CM AND REMAINED WITH A FETAL PRESENTATION IN A STATION –2-3, 60 MINUTES AFTERWARDS. THE PATIENT WAS TAKEN TO THE OPERATING ROOM FOR A CESAREAN SECTION.

Type of delivery with indications: LOW SEGMENT TRANSVERSE CESAREAN SECTION. CLEAR AMNIOTIC FLUID, NORMAL ADNEXA, NORMAL PLACENTA, SHORT UMBILICAL CORD.

If C-Sec. Was done: Describe actions prior C-Section: FAILURE TO PROGRESS. PT WAS GIVEN IV PITOCIN AND HAD GOOD UTERINE ACTIVITY.

Final Diagnosis:
PUERPERIUM
TERM IUP
CORD DISTOCIA (SHORT UMBILICAL CORD)

Disposition:

RELEASED WITHOUT LIMITATIONS
EXCEPT FOR WEIGHT LIFTING.
INSTRUCTED ON HOW TO TAKE CARE OF

Medications: MOTRIN 800 MG PO TID.
KEFLEX 500 MG PO TID.

Follow Up:
1MAY 1998 FOR SUTURE REMOVAL

**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS UNITED STATES AIR FORCE**

19 January 2000

AFMOA/SGOC
110 Luke Avenue, Room 405
Bolling AFB, DC 20332-7050

Major Wilma Webster, USAF, MC
1703 Scarborough Drive, Apt 2G
Bellevue, NE 68123

Dear Major Webster

This office has completed a review of your adverse action appeal regarding a revocation of Emergency Medicine privileges and restriction of Primary Care privileges taken at Howard AFB, Panama. The AF Medical Practice Review Board reviewed your appeal along with the case file and found that the action taken by Howard AFB was appropriate. The AF Surgeon General concurred and has directed that this adverse privilege action be reported to the National Practitioner Data Bank, and your state(s) of known licensure. This is the final action in your case. I urge you to retain this document for your records.

My point of contact is Lt Col Lewis who can be reached at the address above.

Sincerely

Paula A Lewis, Lt Col for
MOLLY J. HALL, Col, USAF, MC
Chief, Clinical Quality Management Division
Air Force Medical Operations Agency
Office of the Surgeon General

Attachment:
Adverse Action Report

cc:
55th MDG/CC
HQ ACC/SG

ATCH 7 84

LAW OFFICES OF
TERRENCE J. MARTIN, P.C.
COLONNADE I
9901 IH 10 WEST, SUITE 430
SAN ANTONIO, TEXAS 78230
(210) 697-3400

TERRENCE J. MARTIN

TELECOPIER NO.
(210) 697-6386

January 27, 2000

National Practitioner Data Bank
Healthcare Integrity and Protection Data Bank
P. O. Box 10832
Chantilly, VA 20153-0832

C.M.R.R.R. Z 390 755 762

Re: Dr. Wilma Webster, Report # 5500000015888312

Dear Sir or Madame:

Please be advised that I represent Dr. Wilma Webster regarding the above referenced matter. She has asked me to respond to the above referenced report by the Air Force.

**Dr. Webster vehemently contests the actions of the Air Force in both revoking her emergency room privileges and in placing a requirement of 100% supervision over her privileges in family practice medicine.** The report that Dr. Webster suffers with a cognitive disorder that impairs her ability to manage multiple complex tasks simultaneously is simply not true. The USAF Physical Evaluation Board rejected this contention when they found her fit for active duty and returned her to duty. The three physicians who sat on Dr. Webster's Credential's Board ignored that finding, and despite having not even a scintilla of evidence to document poor care, used the same evidence presented to the USAF Physical Evaluation Board to reach the exact opposite conclusion.

In a Credential's Hearing that lasted two days, involved the testimony of 21 witnesses and 64 exhibits, and consumed 339 pages of transcript, the Air Force failed to produce one patient chart that documented that Dr. Webster had practiced medicine below the standard of care. In fact, there was unanimous agreement among the physicians who observed her practice and reviewed her records that she practiced good medicine and was a competent practitioner. Dr. Webster produced sixteen witnesses, consisting of **all of her fellow emergency room physicians**, physician assistants, medical technicians and patients, through live testimony (10) and by affidavit (6) that attested to her skills as an emergency room physician.

ATCH 8 85

Further, to bias this process, the Air Force withheld vital information in the form of Code Blue Records and stacked the Board with at least one physician who was biased in favor of Dr. Webster's chief accuser. Another member of the Board ignored the instructions of the legal advisor and conducted his own investigation of evidence outside the hearing of the Board, thus denying Dr. Webster's right to address such evidence.

The findings of the Air Force in this instance and their report to the National Practitioner Date Bank is so against the great weight and preponderance of the evidence, that Dr. Webster is appealing the Air Force's decision to the Court of Claims. She is confident that once the evidence is reviewed in a forum free from command influence and free from the politics of the Air Force, the findings of the Credential's Board will be reversed and her credentials will be reinstated.

In the interim, enclosed with this letter is her appeal which was rejected by the Air Force and which will form the basis of our appeal to the Court of Claims. Also enclosed is the **SUBJECT INSTRUCTIONS FOR STATEMENTS AND DISPUTES** upon which Dr. Webster has indicated her dispute of the report made by the Air Force and upon which she has referenced this letter and her appeal as her statement in support of her position that the report of the Air Force is erroneous. Needless to say, neither this letter nor her appeal to Air Force can be condensed enough to fit into the space provided on the form.

If you have any questions concerning Dr. Webster's response to the report by the Air Force, please contact me at your earliest convenience.

Sincerely,

TERRENCE J. MARTIN, P.C.

BY: ______________________
TERRENCE J. MARTIN

TJM/nlp

Enclosures

National Practitioner Data Bank
Healthcare Integrity and Protection Data Bank
P.O. Box 10832
Chantilly, VA 20153-0832

www.npdb-hipdb.com

DCN# 5500000015888312
Process Date: 01/14/2000, 16:46
Page: 1 of 1

# SUBJECT INSTRUCTIONS FOR STATEMENTS AND DISPUTES

If you wish to add a statement to the report, or change your previous statement found in Section D (Subject Statement) of the report, please TYPE your statement below, sign and date this document, and mail it to:

National Practitioner Data Bank
Healthcare Integrity and Protection Data Bank
P.O. Box 10832
Chantilly, VA 20153-0832

You may place the report in dispute status by checking the box below, signing and dating the document, and returning to the address above. If you believe that any of the information contained in the enclosed report is inaccurate, you must contact the Reporting entity identified in the Section A of the report. INFORMATION IN THE NATIONAL PRACTITIONER DATA BANK(NPDB) MAY BE ALTERED ONLY BY THE REPORTING ENTITY WHO SUBMITTED THE REPORT OR THE SECRETARY OF THE U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES FOLLOWING APPROPRIATE REVIEW.

Please type your statement in the box below, and sign and date this document.

Report #: 5500000015888312

See my attorney's letter dated January 27, 2000 and my appeal of the Air Force's findings dated April 6, 1999.

Please note that your statement WILL NOT BE EDITED by the NPDB. It will be distributed to querying entities as you have submitted it. The number of Characters is limited by 2000, including punctuation and spaces. If your statement exceeds character limits, it will be truncated. Illegible statements will not be accepted.

☑ Check here and sign and date below to dispute the information in this report as being factually incorrect. You must contact the Reporting Entity identified in Section A of the report to resolve this discrepency. The report will remain unchanged until the Reporting Entity or the Secretary of the U.S. Department of Health and Human Services changes or voids it.

Signature Date

A



**

**

87

MAJOR WEBSTER'S APPEAL, DATED 6 APRIL 1999, IS AT ATTACHMENT 6.

To: MPRB

15 Jun 99

From [redacted]

Subject: Privilege Action Appeal of Major Norma Webster

1. I have reviewed the privileging action and appeal from Maj (Dr.) Norma Webster, 24 MDG, Howard AFB, Panama. This review included the file used in the Credentials Hearing, all attachments, the verbatim transcript, MTF Commander's decision, and subsequent appeal from Maj Webster's attorney dated 6 Apr 99. Dr. Webster is board certified in Internal Medicine, has passed the written boards in Emergency Medicine but failed the oral boards twice. She was originally assigned to the ER at Howard, but was removed from that area initially and reassigned to Family Practice. She was subsequently returned to the ER for a very short period, and was then reassigned to the Health and Wellness Center. Her Emergency Medicine privileges have been revoked, and her Family Practice/Primary Care Privileges limited to supervised in this privileging action.

2. This is a very complex case, and the MTF has done a very thorough job of documenting the thought processes of the parties involved, especially Col O'Neil, MTF/CC. I further commend the Credentials Hearing Committee for their thorough approach to the case and clearly expressed deliberations.

3. Dr. Webster's complicating issues are covered very well in the deliberations of the Hearing Committee (Attch 1). They are:

   a. Cognitive disorder NOS, possibly due to multiple sclerosis. It is the opinion of several neuropsychologists, including one hired by Dr. Webster, that while she is of superior intelligence, this cognitive disorder makes it very difficult for her to handle multiple complex inputs in an effective and rapid fashion. This was considered an essential skill to practice as an emergency physician. Dr. Webster has had two Medical Evaluation Boards which were unable to give her a diagnosis of MS, and returned her to duty. She also carries the diagnosis of Guillain-Barre disease.

   b. Difficult personality with narcissistic and histrionic aspects, and poor organizational skills. While these are fairly common traits in physicians, most physicians demonstrate better impulse control than Dr. Webster in social settings. Her inappropriate behavior is amply demonstrated in the hearing and attachments. It has led to several letters of counseling for suboptimal patient-staff and staff-staff interactions, a referral OPR, command directed mental health evaluation, and patient complaints. This is a long-standing problem for her, and is reflected in AF 1562 peer reviews from her last three assignments. There are unsubstantiated allegations that patients would leave the ER if they saw she was on duty, but there are also several letters of recommendation submitted on her behalf from patients and hospital staff.

   c. Poor duty performance is accused in several instances. In one case, she was unable to intubate a patient during a Code Blue, and the patient died of a

29

Exhibit A page 10 of 13
Att 9

pulmonary embolism. Nobody believes that the intubation affected the ultimate outcome. This case was reviewed for SOC at the 1 MDG at the request of ACC/SG, and they concurred SOC was met. Other concerns raised at the code were her poor airway control, questions regarding her use of medications, and inability to direct the code team while serving as code leader. Unfortunately, the documentation regarding this code was not available to the Credentials Hearing, but was subsequently discovered. In my review of these documents, ACLS protocols were generally followed. During the Credentials Hearing, Dr. Webster did not represent herself well when given a mock code scenario by an ACLS instructor serving on the board.

4. The final complicating factor is that nobody can point to a bad outcome attributable to Dr. Webster's medical practice. Even some of her critics provide comments that she is a good clinician. The Credentials Hearing Committee, Credentials Committee, and MTF/CC believed that she should be removed from patient care as a proactive measure, primarily based on her diagnosed cognitive deficit. Prior to receiving this diagnosis, she had been removed from patient care for administrative concerns but no privileging action was initiated. Dr. Webster has not been given an outside review of her care, nor was she provided with the opportunity to have her skills evaluated in another MTF.

5. The basis of Dr. Webster's appeal, and my opinions are:

a. *The government failed to produce the Code Blue documentation at the Hearing.* This could not be found during the hearing, but was subsequently supplied to her. Although the impression of the committee was unfavorable to Dr. Webster on this issue, I believe that this is mostly neutralized by my review of the code documentation. There are no accusations that the information was deliberately withheld, but that it could not be found. It had been sequestered in the MDOS/CC office, and they underwent a change of command during this process.

b. *Records were introduced at the hearing without being provided to Dr. Webster beforehand.* There were no clinical records presented, and no new allegations raised at the hearing. Although not strictly in compliance with due process IAW AFI 44-119, I do not believe this had any impact on the deliberations of the committee or the commander. There are no accusations that the information was deliberately withheld, but that it was newly produced immediately prior to the hearing.

c. *Exerted command influence upon at least one of the witnesses.* One witness, Capt Li, stated that she felt pressured not to testify for Dr. Webster by Dr. Burkett/SGH. Dr. Li did testify on behalf of Dr. Webster, and I do not believe this had any impact.

d. *Failed to assure the impartiality of the Hearing Committee.* This is based on one statement by the Hearing Chairperson regarding the Code Blue, stating that he had confidence that Dr. Burkett had performed well during the Code. Dr. Burkett's performance was not in question, and was irrelevant to the case. Dr.

Webster's attorney felt that it was a demonstration of prejudgment against his client. Review of the entire proceedings supports my impression that this was an impartial panel.

e. *Went outside the hearing record to investigate the Code Blue without advising Dr. Webster.* One of the committee members called Langley to find out about the Code Blue review, and was unable to find out any information. This had no impact.

6. The appeal also states that Maj Webster's disorganization and cognitive deficit should be attributed to her not taking estrogen when she became menopausal. She has now started estrogen, and supplies a letter from a local gynecologist in support. There are no references cited, and no evidence submitted that her behavior or work habits have changed.

7. In summary, I do not support any of Dr. Webster's appeal as being sufficient to overturn the commander's decision. I firmly believe that Dr. Webster's cognitive deficits and personality are the essential problem. This physician does not belong in an Emergency Room where complex multi-taskings are a continuous risk. However, it is difficult to translate that information directly into a privilege revocation as outlined in AFI 44-119, para 4.5, describing "gross provider misconduct, professional incompetence, or negligence that is self-evident and poses a significant threat to patient safety or well-being." She has never been involved in a malpractice claim, and does not have any documented poor clinical outcomes. I also do not believe her deficits are remediable, as she has been in clinical practice for 14 years, demonstrates denial that she has any deficits affecting her practice, and is not an easy person to work with. Retraining will not be effective. This is not a unique case, and I have had providers similar to Dr. Webster in my supervision. I have always handled these cases administratively, although privileging action was discussed. That is the mechanism I would have preferred for this case, and the 24 MDG has also taken action in that direction. The MPRB's corporate memory will be very helpful in clarifying this case, and field guidance on this type of case should also be clarified in the revision of AFI 44-119.

[redacted]

Attch 1:
Findings and Recommendations of the Clinical Privileges Hearing

# MEDICAL BOARD REPORT

*(This form is subject to the Privacy Act of 1974 - Use Blanket PAS - DD Form 2005)*

| | |
|---|---|
| 1. INSTALLATION AT WHICH CONVENED | Wilford Hall Medical Center |
| 2. DATE CONVENED | 1 Dec 98 |
| 3. NAME (Last, First, Middle Initial) | WEBSTER, WILMA P. |
| 4. GRADE | 0-4 |
| 5. SSN | 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 |
| 6. COMPONENT | Reg AF |
| 7. DEPT OR SERVICE | USAF |
| 8. ORGANIZATION | 24TH Med Grp, Howard AFB |
| 9. SEX | F |
| 10. DATE OF BIRTH (Yr, Mo, day) | 41 07 06 |
| 11. AGE | 57 |
| 12. ORIGINAL RETIREMENT DATE | |
| 13. HOSPITAL INITIALLY ADMITTED | N/A |
| 14. TRANSFERRED FROM | N/A |
| 15. HOME ADDRESS | 3031 Ontario Court<br>Rosamond CA 93560 |

16. MILITARY OCCUPATIONAL SPECIALTIES

| TITLE | CODE | 17. TOTAL YEARS MILITARY SERVICE — ACTIVE | INACTIVE |
|---|---|---|---|
| Emergency Physician | 44E3A | 6 | None |

18. DATE ENTERED AD CURRENT TOUR: 25 Jul 92

19. AERO RATING: N/A

20. ON FLYING STATUS ON ADMISSION: ☐ YES ☒ NO

21. DATE RELIEVED FROM FLYING STATUS:

22. BY DIRECTION OF THE APPOINTING AUTHORITY, THE BOARD CONVENED TO CONSIDER THE CASE OF THE ABOVE NAMED MEMBER.

A. UNDER PROVISIONS OF THE FOLLOWING DIRECTIVES:
- ☒ AFI 44-113 AND AR 123
- ☐ MANUAL FOR COURTS-MARTIAL
- ☒ OTHER (Specify) AFI 36-3212

B. FOR THE PURPOSE OF:
- ☒ CONTINUED ACTIVE DUTY
- ☐ EPTS DEFECTS
- ☐ SEPARATION/RETIREMENT
- ☐ OTHER (Specify)

23. DIAGNOSIS AND FINDINGS

| A. AFTER CONSIDERATION OF CLINICAL RECORDS, LABORATORY FINDINGS, AND PHYSICAL EXAMINATION, THE BOARD ESTABLISHES THE FOLLOWING DIAGNOSIS: *(List all diagnoses, in accordance with applicable directives, which contribute or may contribute to make the qualifications of the individual for worldwide duty questionable. Include any competency determinations. (DFAS-DE MANUAL 177-173).* | B. APPROXIMATE DATE OF ORIGIN | INCURRED WHILE ENTITLED TO BASIC PAY — YES C | NO D | EXISTED PRIOR TO SERVICE — YES E | NO F | PERMANENTLY AGGRAVATED BY SERVICE — YES G | NO H |
|---|---|---|---|---|---|---|---|
| 1. Guillain Barre' Syndrome (AIDP) with rapid recovery. | Oct 1998 | X | | | X | | |
| 2. Multiple Sclerosis, laboratory supported & clinically definite. | 1993 | X | | | X | | |
| 3. DSM IV, Axis I: | 1993 | X | | | X | | |
| - 294 Cognitive Disorder N.O.S. | | | | | | | |
| - 310.1 Personality change due to M..S., combined type. | | | | | | | |
| MI: marked S & I: Severe | | | | | | | |
| Axis II: V71.09 Antisocial, histrionic and narcissistic personality traits. | | | | | | | |
| 4. Glaucoma, O.U., well controlled with TIMOPTIC 1/4%. S/P ALT, O.D. 1996. VF WNL VA. 20/20 with corrections. | 1993 | X | | | X | | |
| Member did ~~not~~ served in the Gulf War Theatre of Operations. | | | | | | | |

24. SANITY DETERMINATION *(To be completed for sanity board cases only.) (Manual for Courts-Martial)* — YES / NO

A. IS THE ACCUSED SUFFERING FROM A MENTAL DISEASE OR DEFECT? (AS DISTINGUISHED FROM A CHARACTER DEFECT?)

B. DID THE ACCUSED, AT THE TIME OF THE ALLEGED OFFENSE AND AS A RESULT OF MENTAL DISEASE OR DEFECT, LACK SUBSTANTIAL CAPACITY TO APPRECIATE THE CRIMINALITY OF THIS CONDUCT?

C. DID THE ACCUSED, AT THE TIME OF THE ALLEGED OFFENSE AND AS A RESULT OF MENTAL DISEASE OR DEFECT, LACK SUBSTANTIAL CAPACITY TO CONFORM HIS/HER CONDUCT TO THE REQUIREMENTS OF THE LAW?

D. DID THE ACCUSED HAVE THE MENTAL CAPACITY TO FORM THE SPECIFIC INTENT OR REQUIRED STATE OF MIND?

25. ACTION RECOMMENDED BY BOARD *(or directed by higher authority)*

REFER TO IPEB

26. BOARD MEMBERS

| | TYPED NAME, GRADE, ARM OF SERVICE | SIGNATURE (Place check after signature of psychiatrist) |
|---|---|---|
| | STEPHEN J. CINA, MAJ, USAF, MC | [signature] |
| PRESIDENT | WILLIAM BUTLER, COL, USAF, MC | [signature] |
| MEMBER | SARA VAN SCOY, MAJ, USAF, MC | [signature] ☒ |
| MEMBER | MARK A. JEFFRIES, LTC, USAF, MC | [signature] |

27. MINORITY REPORT ON REVERSE: ☐ YES ☒ NO

28. HOSPITAL COMMANDER OR DESIGNEE

| A. DATE REVIEWED | B. BOARD RECOMMENDATION [1] | C. TYPED NAME, GRADE, SERVICE | D. SIGNATURE |
|---|---|---|---|
| 1 Dec 98 | ☒ APPROVED<br>☐ DISAPPROVED | THOMAS J. LOFTUS<br>Colonel, USAF, MC, CFS<br>Vice Commander | [signature] |

29. I HAVE BEEN INFORMED OF THE FINDINGS AND RECOMMENDATIONS OF THE MEDICAL BOARD.

| A. DATE | B. SIGNATURE OF SERVICE MEMBER | C. LETTER OF EXCEPTION ATTACHED |
|---|---|---|
| | | ☐ YES ☐ NO ☐ N/A |

[1] If disapproved, indicate reason for disapproval on reverse.

AF FORM 618, OCT 95 (EF-V1) (PerFORM PRO) PREVIOUS EDITION IS OBSOLETE.

pivo

017

MCH 10

| | INFORMAL | FINDINGS AND RECOMMENDED DISPOSITION OF USAF PHYSICAL EVALUATION BOARD | DATE |
|---|---|---|---|
| X | FORMAL | | 28 JAN 99 |

1. THE BOARD CONVENED AT Lackland AFB TX 78236-5607

2. A QUORUM WAS PRESENT AS INDICATED ON EXHIBIT A PER ATTACHED ORDERS (*EXHIBIT A*)

3. EXHIBITS ATTACHED: A - C, G - I

| 4. MEMBER'S NAME (Last, First, Middle Initial) | 5. GRADE | 6. SSN | 7. YEARS OF SERVICE UNDER 10 USC 1208 | 8. COMPONENT |
|---|---|---|---|---|
| WEBSTER, WILMA P. | MAJ | 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 | 06 | REG AF: ; USAFR: X ; ANG: |

9. FINDINGS CONCERNING INDIVIDUAL DEFECTS OR CONDITIONS

COLUMN A - Include degree of severity.

COLUMN C - Enter "YES" for in line of duty, "M" for intentional misconduct, "N" for willful neglect, "A" for incurred during a period of unauthorized absence, or "NA".

COLUMNS B and D - Enter "YES", "NO", or "NA".

COLUMNS E and F - Self-explanatory.

| A. DIAGNOSIS | B. INCURRED WHILE ENTITLED TO RECEIVE BASIC PAY | C. LINE OF DUTY (Applies Only if Item 9B is YES) | D. PROXIMATE RESULT OF PERFORMING MILITARY DUTY (Non-EAD USAFR and ANG only) | E. DISABILITY RATING (Percent) | F. VA DIAGNOSTIC CODE |
|---|---|---|---|---|---|
| **CATEGORY I - UNFITTING CONDITIONS WHICH ARE COMPENSABLE AND RATABLE:** NONE. | | | | | |
| **CATEGORY II - CONDITIONS THAT CAN BE UNFITTING BUT ARE NOT CURRENTLY COMPENSABLE OR RATABLE:** | | | | | |
| 1. GUILLAIN-BARRE SYNDROME/MILLER FISCHER VARIANT, RECURRENT, EPTS WITHOUT SERVICE AGGRAVATION WITHOUT RESIDUALS. | | | | | 8199-8105 |
| 2. POSSIBLE GLAUCOMA, CONTROLLED WITH TIMOPTIC OPHTHALMIC DROPS. | | | | | 6099-6013 |
| **CATEGORY III - CONDITIONS THAT ARE NOT SEPARATELY UNFITTING AND NOT COMPENSABLE OR RATABLE:** ANTISOCIAL, HISTRIONIC, AND NARCISSISTIC PERSONALITY TRAITS. | | | | | |

| 10. ADDITIONAL FINDINGS | YES | NO | NA |
|---|---|---|---|
| A. MEMBER IS UNFIT BECAUSE OF PHYSICAL DISABILITY | | X | |
| B. DISABILITY WAS INCURRED IN LINE OF DUTY IN TIME OF WAR OR NATIONAL EMERGENCY OR AFTER 14 SEPTEMBER 1978 | | | |
| C. DISABILITY WAS THE DIRECT RESULT OF ARMED CONFLICT OR WAS CAUSED BY AN INSTRUMENTALITY OF WAR AND INCURRED IN LINE OF DUTY DURING A PERIOD OF WAR | | | |
| D. DISABILITY WAS THE DIRECT RESULT OF A COMBAT RELATED INJURY | | | |
| E. DEGREE OF IMPAIRMENT ___ IS ___ MAY BE PERMANENT | | | |

11. COMPENSABLE PERCENTAGE: N/A

12. RECOMMENDED DISPOSITION: RETURN TO DUTY

13. OVERCOMES PRESUMPTION OF FITNESS: YES ___ NO ___ X NA

SEPARATION/RETIREMENT DATE:

14. SIGNATURE OF PEB PRESIDENT OR PEB REPRESENTATIVE

CHARLES J. MANGANELLO, COLONEL, USAF

**REMARKS CONTINUED ON ATTACHED SHEET**

93

FINDINGS AND RECOMMENDED DISPOSITION OF USAF PHYSICAL EVALUATION BOARD, dated 28 JAN 99, pertaining to WEBSTER, WILMA P., MAJOR, 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

Continuation of Item 9, Findings concerning individual defects or conditions:

| A. DIAGNOSIS | B. | C. | D. | E. | F. |
| --- | --- | --- | --- | --- | --- |
| None. | | | | | |

Continuation of Item 15, REMARKS: Testimony and medical evidence, including a substantial package containing an opinion from one of the world's foremost experts on multiple sclerosis (Dr. Poser), indicates that the member does not have multiple sclerosis but rather recurrent GBS/Miller Fischer Variant. Member experienced various symptoms to include dizziness, diplopia, intermittent facial paralysis, vertigo, sensory loss (EPTS 1973-1991 and 1992 at MIMSO training resulting in an MEB/RTD), and, most recently, complete short-term quadriplegia (1998). It appears the member has had complete resolution of her recent flare, she exercises vigorously (runs about 8 miles/week, does 80 push-ups/sit-ups weekly, cycles up to 20 miles per week, rides stairmaster 4-5 times per week), she takes no medications, and she requires no follow-up. Member's counsel made a very compelling case, through the use of various charts, which graphically portrays the member's performance in the ER as comparable with other assigned providers. The FPEB argues that the member has no unfitting residuals of her GBS, finds her fit, and recommends Return To Duty without limitation. It should be noted that member's Axis II **non-compensable** diagnoses (Histrionic, Antisocial, and Narcissistic Personality Traits) are well-documented in the medical record, to include member's own exhibit H which suggests she was prone to disorganization and unusual behaviors extending back to childhood. These diagnoses, while not unfitting or compensable under the provisions of the Disability Evaluation System (DES), certainly might be judged "unsuitable" warranting administrative separation in the future. Finally, member's GBS, characterized by infrequent exacerbations, is clearly EPTS, it has not been permanently aggravated by her brief military service but rather represents the normal course of the disease, and is not believed to be either compensable or ratable even if found to be unfitting in the future. [initials]

Continuation of AF Form 356, OCT 95 PREVIOUS EDITION IS OBSOLETE