*cares for her patients and renders care well within the standard of care of an Emergency Room Physician.*

*6. __Neuropsychological Disorder:__ The Board, in their Findings and Recommendations, found that Major Webster had "some form of cognitive deficit" and further concluded that "this deficit impaired her ability to make effective and rapid decisions, which are essential for an ER setting." The problem with this conclusion is that there is no evidence as detailed above that shows that Major Webster's "cognitive deficit" ever impaired her ability to make effective and rapid decisions in the ER.*

*The testimony and statements of her co-workers and even the Government's Witness were that she was a fine physician who rendered good care to her patients. Not one medical record was introduced by the Government to show inadequate care by Major Webster to any of her patients. Dr. Tall, Dr. Li, Dr. Copp, Dr. Efthimiadis, Dr. Luff, Dr. Ngo, Dr. McCrary, PA Marine, and Captain Shercliffe all either worked with Major Webster in the Emergency Room or reviewed charts of patients seen by Major Webster, and* ***not one*** *had any criticisms of her medical care of patients.*

*Major Burkett in his testimony beginning at page 255 of the Hearing Transcript admits that no decredentialling action of any kind was taken against Major Webster when she was removed from the ER and placed in the Health and Wellness Center in late May 1998. Hence, apparently at that point, the Hospital Commander and Major Webster's Supervisors had concluded that all the evidence used against her now in this hearing from October 1997 to May 1998 did not justify the conclusion that Major Webster was unfit to be a credentialled provider in any area of the hospital. This evidence only became a justification for decredentialling Major Webster after she was found to possibly have Multiple Sclerosis and to have "cognitive deficit." Major Burkett as much as admitted this when during an exchange between Major Matthews, Major Steffens and himself at pages 262-263 of the Hearing Transcript, he testified that the decredentialling was done because Major Webster had a health problem which was hindering her cognitive abilities.*

*Turning to Major Webster's cognitive deficit, it is important to appreciate that psychiatry and psychology are not exact scientific fields. Much of their conclusions are based on subjective analysis of testing and speaking with the patient. Their findings and conclusions must always be substantiated by concrete examples of the patient's actual behavior and performance. With this in mind, it is important to realize that none of the psychologists that examined Major Webster ever observed her practice of medicine in any setting, much less the Emergency Room. They were not privileged to hear the testimony of Major Webster's co-workers and others, who based on their observation of her treatment of her patients, the records of her treatment of her patients, the laboratory work she ordered on her patients, the prescriptions she ordered for her patients and the favorable results she obtained for her patients, concluded that Major Webster was a fine physician. If they had, the "relative cognitive deficit" described by Dr. O'Connor and the*

*"cognitive deficit" found by the Government's psychologists may well have been found to be of no significance in her practice of medicine in any setting.*

*Further, each of the Government Examiners to an extent were predisposed to find something wrong with Major Webster as Major Webster was referred to them as a result of a Command Directed Mental Evaluation. Each Government Pyschologist was also provided with letters from her commander which made wide sweeping allegations against her. However, when such allegations were put to the test under cross-examination in the Hearing, the overwhelming weight of the evidence proved that Dr. Webster's practice of medicine was equal to her other providers in the Emergency Room with the exception that she was a little slower seeing patients due to her approach, i.e., her training as an internist.*

*At the time of the Hearing, the PEB had already met and found that Major Webster had no medical problems and was fit for worldwide duty. Because of this, it was the position of Major Webster throughout the hearing that the Board was not permitted to reexamine the medical narratives on Major Webster to, in effect, reopen the PEB. It was and remains our legal position that the findings of the PEB were "res judicata" on the Board with regards to her medical and psychological fitness to practice medicine, and the Board's inquiry was limited to determining if Major Webster's medical practice was deficient as shown by the treatment she rendered to her patients. By taking the position that the Board could reexamine Major Webster's mental and physical competency to practice medicine, they again violated Major Webster's right to due process. In fact, their Findings and Recommendations are not based upon examples of Major Webster's poor medical practice, but rather are based on her cognitive deficit.*

*Because of these beliefs and legal positions, Major Webster was not prepared to defend herself further on these issues. However, since the Hearing, Major Webster has consulted with Gustavo A. Herrera, M.D., Gynecologist, Howard AFB, Panama on the possible effects on her cognitive abilities of not taking hormonal replacement therapy. It was his opinion that the cognitive deficits noted by the psychologists who examined Major Webster were probably related to her estrogen deficiency. Please see Exhibit "D" which is attached hereto and incorporated by reference the same as if fully copied herein verbatim. Therefore, even if the Board was correct in finding that Major Webster had "cognitive deficits", a problem which did not result in improper care to Major Webster's patients, this problem apparently is easily resolved with the hormone replacement therapy, a treatment option not even considered by the psychologist who examined Major Webster or by the members of the Board.*

*7. __**Conclusions:**__ AFI 44-119, paragraph 4.18, states: " Privileges review is a function of professional peers. Personnel participating in the review* ***must be able to impartially review the case."*** *AFI 44-119, paragraph 4.20 states: "Additional information, not used in the original credentials function deliberations on the case, may be presented at the hearing.* ***However, the provider must be informed of additional information prior to the hearing and must be afforded***

216

*reasonable time to review the information as well as access records upon which the additional information is based so that he/she may prepare to refute it."*

*The Air Force violated both of these provisions in the Hearing afforded Major Webster. The Air Force allowed, over the objection of Major Webster's counsel, the new Leaving Without Being Seen Statistics, and Major Matthews, contrary to the direction of the Board's Legal Advisor, conducted his own investigation of the Code Review without such information being provided to Major Webster. The Air Force also failed to provide Major Webster with an impartial hearing as the Chairperson was biased in favor of Major Burkett, the Government's chief accuser.*

*Besides the above, the Board itself was tainted by unlawful command influence upon witnesses and possibly potential witnesses in favor of Major Webster (Dr. Li). In addition, the Government withheld key records on the Code in question and, in fact, represented to the Board that such records were not available and could not be found when, in fact, such records were locked in the Command Section.*

*The above actions of the Government tainted the proceedings and violated Major Webster's right to due process. The impact of same on the Board's Findings and Recommendations can only be speculated upon here but may provide the reason why the Board reached findings and recommendations which were not supported by the evidence in this case.*

*What the evidence did show in this case, without any contrary evidence from the Government, was that Major Webster was a competent Emergency Room Physician. The evidence further showed that if she had cognitive deficit, Major Webster's cognitive deficit did not affect, in any way, the proper treatment of her patients.*

*The Board, itself, found that with regards to "patient complaints", the only theme in the few which were attributed to Major Webster was "to waiting times." With regards to medication errors, one of which Major Webster contends was not an error, the Board found that two medication errors was "an acceptable medication error rate." Further, the Board found that Major Webster's knowledge of pharmacology was impressive. Finally the Board admitted that Major Webster had " the requisite knowledge to be a physician" and had superior traits as a physician, i.e.," thoroughness, dedication to patients, medical knowledge, etc."*

*However, despite these findings, they still revoked her credentials to practice Emergency Room Medicine and limited her privileges to practice in Family Practice/Primary Care/Aerospace Medicine Clinic. These findings and recommendations were based: (1) upon her alleged forgetfulness and disorganization which is not documented in the evidence and is, in fact, contradicted by the evidence in this case; (2) her "cognitive deficit" without any examples of how this "cognitive deficit" ever manifested itself in the treatment of Major Webster's patients; (3) upon analysis of the Code Case (Exhibit "B"), Pregnancy Case (Exhibit "C") and the Cat Bite*

*Case which were flawed and contradicted by not only the evidence presented at the Hearing but by the records of the Code and the Pregnancy Case; and (4) upon her inappropriate statements made under the stress of the threat of having her privileges revoked and having her professional career destroyed. The Board's decision was arbitrary and capricious, and their flawed reasoning should not be allowed to stand in the face of the overwhelming evidence in favor of Major Webster retaining all of her privileges without any limitations.*

*Major Webster respectfully requests that the Appellate Authority reverse the findings of the Board and reinstate Major Webster's full credentials including her privileges to practice Emergency Medicine. In the alternative, Major Webster respectfully requests that the Appellate Authority rejects the Board's Findings and Recommendations and reconvene another Hearing as the initial Hearing violated both Air Force Regulations and Major Webster's right to due process.*

*Respectively Submitted,*

*TERRENCE J. MARTIN, P.C.*

*BY:* ______________________
*TERRENCE J. MARTIN*

*TJM/nlp*

*Enclosures: (Exhibits A, B, C and D)*

*cc:* *Major Wilma P. Webster, USAF, MC w/enclosures*
*cc:* *Col. Terrence J. O'Neil, USAF, MC w/enclosures*

218

EXHIBIT "A"

01 APR 99

MEMORANDUM FOR WHOM IT MAY CONCERN

FROM: ROBERT GRANVILLE, LTC MC USA, Chief, Orthopaedics

SUBJECT: CARE GIVEN TO MICHELLE SCHRODER

1. By request of Maj. Wilma Webster, I have evaluated the care that she documented was given to Michelle Schroder on 02 MAY 1998.

2. Mrs. Schroder had a degenerative tear of her right lateral meniscus, a non-emergent orthopaedic condition. Maj. Webster's documented treatment met the standard of care for this condition.

ROBERT GRANVILLE, LTC, MC, USA
Chief, Orthopaedic Surgery

EXHIBIT "B"

24 MED GP HOWARD AFB PR | LOG NUMBER: 980124-00

Date/Time: 24 Jan 199802130 | 3rd Party Payer: NO
to Hospital: OTHER | Time Seen: 2130
ory Obtained From: OTHER RELATION | Category: EMERGENCY

Addr: PSC 4 BOX 613 APO, AA 34004 | Phone: 280-6414
Chief Complaint: CARDIAC/RESPIRATORY ARREST | Sex: MALE Age: 30

| VITAL SIGNS | | | |
|---|---|---|---|
| Time | | | |
| BP-SY | | | |
| BP-DI | | | |
| Pulse | | | |
| Resp | | | |
| Temp | | | |
| WT-Ped | | | |

Medications

Tetanus:
Allergies:
NO ALLERGIES DOCUMEN

| Orders | Inits | Time |
|---|---|---|
| | | |

2130

S. 'Code' called in ward at approx 2150 after a patient fell back in bed apparently unconscious with heavy breathing. When I arrived on scene patient was already receiving CPR. I put my hand in his right groin to feel the pulse thought I felt faint pulses in addition to the CPR induced pulses. At that point Ann Brook pointed out that the patient [illegible] breathing on his own. At that point we stopped CPR and observed the patient's respirations even while the monitor seemed to indicate V fib. However [illegible] decreased and he became cyanotic and CPR was resumed and I ordered defibrillation x 3 at escalating doses epi 1mg & 3 and 1 gram of Mg Sulfate. I attempted but was unable to intubate. pt was intubated by Dr. Burkett. Pavulon [illegible] mg was given IVP. 2 mg atropine given after pt became straight line. pt was declared deceased at 21:57. a post mortem CXR was taken and showed notable cardiomegaly and intubation of the R mainstem bronchus.

ASSESSMENT/DIAGNOSIS
Cardiopulmonary Arrest

DISPOSITION
__Home __Full Duty
__Quarters
__24hrs __48hrs __72hrs

Modified Duty Until:
Day:____ Mon:____ Yr:____

Referred to: NA

__Emergency __Today
__72 hours __Routine

Admitted to:

Others:

Condition Upon Release:
__Improved __Unchanged
✓ Deteriorated
Release Time:

Signature of Provider/Stamp: [signature] MD

Instructions to Patient:

I HAVE RECEIVED AND UNDERSTAND MY DISCHARGE INSTRUCTIONS ____________

20/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 HILL,WILLIAM A11
26 Apr 1967 MALE W:285-4617 H:280-6414

022

Pers[illegible]l Data - Privacy Act o[illegible]

CARE & TREATMENT - 24 MED GP HOWARD AFB PM | LOG NUMBER: 980124-0004-

[illegible] Date/Time: 24 Jan 19980̸2130
[illegible] to Hospital: OTHER
[illegible]ory Obtained From: OTHER RELATION

3rd Party Payer: NO
Time Seen: 2130
Category: EMERGENCY

[illegible]ddr: PSC 4 BOX 613 APO, AA 34004
Chief Complaint: CARDIAC/RESPIRATORY ARREST

Phone: 280-6414
Sex: MALE Age: 30

VITAL SIGNS

| | | | |
|---|---|---|---|
| Time | | | |
| BP-SY | | | |
| BP-DI | | | |
| Pulse | | | |
| Resp | | | |
| Temp | | | |
| WT-Ped | | | |

Medications

Tetanus:
Allergies:
NO ALLERGIES DOCUMENTE[illegible]

| Orders | Inits | Time |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

2130

S. Code called in ward at [illegible] 2130 after a patient fell back in bed [illegible] [illegible] unconscious with [illegible] [illegible]." When I arrived on scene patient was already receiving CPR. [illegible] on the right [illegible] [illegible] the [illegible], [illegible] [illegible] to the CPR [illegible] pulses. [illegible] [illegible] back, [illegible] [illegible] breathing on his own. At that point we stopped CPR and [illegible] [illegible] respirations [illegible] [illegible] [illegible] indicate [illegible]. [illegible] [illegible] and [illegible] [illegible] was resumed and [illegible] [illegible] [illegible] 3 at escalating degrees [illegible] [illegible] and [illegible] [illegible] [illegible] [illegible]. [illegible] but was unable to intubate. [illegible] intubated by Dr. [illegible]Kett. [illegible] [illegible] [illegible] [illegible] [illegible] became [illegible] [illegible]. Pt was declared deceased at 2157. A post mortem (X) was [illegible] [illegible] [illegible] cardiomyopathy [illegible] [illegible] [illegible] [illegible] [illegible].

ASSESSMENT/DIAGNOSIS
Cardiopulmonary arrest

===== DISPOSITION =====
__Home __Full Duty
__Quarters
__24hrs __48hrs __72hrs

Modified Duty Until:
Day:____ Mon:____ Yr:____

Referred to:

__Emergency __Today
__72 hours __Routine

Admitted to:

Others:

Condition Upon Release:
__Improved __Unchanged
✓__Deteriorated
Release Time:

Signature of Provider/Stamp:
[signature] MD

Instructions to Patient:

I HAVE RECEIVED AND UNDERSTAND MY DISCHARGE INSTRUCTIONS ______

20/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 HILL,WILLIAM
26 Apr 1967 MALE

A11
U:285-4617

H:280-6414

# CARDIAC/RESPIRATORY ARREST REPORT

*(This form is subject to the Privacy Act of 1974 - Use Blanket PAS, DD Form 2005)*

| LOCATION | ADMITTING DIAGNOSIS | DATE |
|---|---|---|
| Inpatient unit | Right Pleural effusion | 24 Jan 98 |

| TIME | INTERVENTIONS (Drugs/Doses, Procedures, IV's) |
|---|---|
| 2130 | BCLS initiated and 20gauge IV inserted into Ⓡarm |
| 2133 | Defib. 300 J |
| 2135 | Defib 360 J. Epinephrine 1mg IVP |
| 2138 | Lidocaine 75mg IVP |
| 2140 | Epinephrine 1mg IVP |
| 2142 | Defib 360 J |
| 2143 | Epinephrine 1mg IVP |
| 2145 | Epinephrine 1mg IVP |
| 2146 | 20gauge IV inserted into L arm |
| 2147 | Intubated by Dr. Burkett |
| 2149 | Mg 1gm IVP |
| 2151 | Asystole. Epinephrine 1mg IVP |
| 2155 | Atropine 2mg IVP. NG Tube inserted by Dr. Burkett |
| 2158 | Epinephrine 1mg IVP |
| 2158 | Bretylium 500mg IVP |
| 2159 | Code terminated |

| TYPE OF ARREST | TIME OF ARREST |
|---|---|
| Cardiac | 2130 |
| **TIME BCLS STARTED** | **TIME ACLS STARTED** |
| 2130 | 2133 |
| **TIME INTUBATED** | **TUBE SIZE** |
| 2147 | |

**NAME OF PROVIDER**
Dr. Webster

**NAMES OF PHYSICIANS RESPONDING**
Dr. Webster
Dr. O'Neil
Dr. Burkett

**VITAL SIGNS**

| TIME | BP | P | R |
|---|---|---|---|
| 2132 | Ø | Ø | minimal |
| 2133 | Ø | Ø | Ø |
| 2135 | Ø | Ø | Ø |
| 2142 | Ø | Ø | Ø |
| 2151 | Ø | Ø | Ø |
| 2154 | Ø | Ø | Ø |

**ARTERIAL BLOOD GASES**

| TIME | FIO2 | pH | pO2 | pCO2 |
|---|---|---|---|---|
| | | | | |

**ADDRESSOGRAPH**
Hill, W. m. John

**TIME CPR STOPPED**
2159

**SIGNATURE OF PHYSICIAN**

**SIGNATURE OF NURSE**

**RESUSCITATION**
☐ SUCCESSFUL ☒ EXPIRED

AETC FORM 1280, JUL 93 REPLACES ATC FORM 1280, APR 85, WHICH IS OBSOLETE

224

RATORY ARREST REPORT (Continued)

ll, William

▶21:19 24JAN98 LEAD II X1.0 HR= 31



RD

ORDER NO. 40457C 10457D

▶21:20 24JAN98 @300J

Hill, William



HEWLETT-PACKARD

29 24JAN98 LEAD II X1.0 HR= 45

Hill, William



HEWLETT-PACKARD

REORDER NO. 40457C 40457D

Hill, William

▶21:47 24JAN98 LEAD II X2.2 HR=---



PHYSIO

ORMATION

80. JUL 93 (REVERSE)

# CARDIOPULMONARY ARREST WORKSHEET

DATE / TIME OF ARREST: 2130

CPR INITIATED AT / BY: 2130

CODE BLUE ANNOUNCED @: 2130

TEAM MEMBERS RESPONDING

Director: Webster

Physicians: Webster, Oneil, Burket

Technicians: Bolton, Brook, Caesar

Nurses: Lester, Addison

Lab: Metzger

X-Ray: Yes

Other: ECC. Eilt Ambulance

IV Fluids Started (Type/Time, Flow rate, Site/Catheter size):

- 1: 2130 Right ARM 18g open wide
- 2: 2146 Left Arm 20g open wide
- 3:

Airway Management

Time: 2132 By: Brook

Bag Mask: Brook - O2 100%

Intubation: 2143 Dr Burkett

Bilateral Breath Sounds Verified by: Dr Burkett

| Vital Signs | Time 2132 | Time 2133 | Time 2135 | Time 2142 | Time 2151 | Time | Time | Time | Time |
|---|---|---|---|---|---|---|---|---|---|
| B/P | | | | | | | | | |
| Pulse | | No | No | No | NO | | | | |
| Resp. | Sparse | NO | NO | NO | NO | | | | |
| Defib. | ? v fib | stacked yes | stacked yes | yes | | | | | |
| Rhythm | ? v fib | ? V fib | | | flatline | | | | |
| Energy | | | | | | | | | |

| Medications | Route | Time 2135 | Time 2138 | Time 2140 | Time 2143 | Time 2148 | Time 2149 | Time 2151 | Time 2155 |
|---|---|---|---|---|---|---|---|---|---|
| Epinephrine | | 1ml | | 1ml | 1ml | 1ml | | 1ml | |
| Lidocaine | | | 75 | | | | | | |
| Bretylium | | | | | | | | | |
| Atropine | | | | | | | | | |
| Other | | | | | | | Mag 1gm | | 2ml |

Other Treatment:

Foley Catheter @ ______ By: ______

X-Ray @ ______ Of: ______

Other: NG Tube @ 2155 By: Dr Burket

CODE TERMINATED AT: 2159 - 57

BY: Webster

REASON:

Transport to GACH @:

Attendants: SSgt [illegible], MSgt [illegible]

WILMA R WEBSTER, MAJ
EMERGENCY PHYSICIAN 44MD
24 MDOS, HAFB, [illegible]

Signature of Recorder — 2 Jan 98 — Signature of Director — Date 25 Jan 98

[illegible] reverse side of form.

HAFB FORM 0-100 [illegible]

226

# CARDIOPULMONARY ARREST WORKSHEET

DATE / TIME OF ARREST: ______________ CPR INITIATED AT / BY: ______________

CODE BLUE ANNOUNCED @: ______________

## TEAM MEMBERS RESPONDING

Director: ______________ Nurses: ______________

Physicians: ______________

Technicians: ______________

Lab: ______________

X-Ray: ______________

Other: ______________

IV Fluids Started (Type/Time, Flow rate, Site/Catheter size):

#1: ______________

#2: ______________

#3: ______________

## Airway Management

Time: ______________ By: ______________

Bag Mask: ______________

Intubation: ______________

Bilateral Breath Sounds Verified by: ______________

| Vital Signs | Time | Time | Time | Time | Time | Time | Time | Time | Time |
|---|---|---|---|---|---|---|---|---|---|
| B/P | | | | | | | | | |
| Pulse | | | | | | | | | |
| Resp. | | | | | | | | | |
| Defib. | | | | | | | | | |
| Rythm | | | | | | | | | |
| Energy | | | | | | | | | |

| Medications | Route 2151 | Time 2158 | Time 2159 | Time | Time | Time | Time | Time | Time |
|---|---|---|---|---|---|---|---|---|---|
| Epinephrine | 1 M 1 | r | | | | | | | |
| Lidocaine | | | | | | | | | |
| Bretylium | | 500 | | | | | | | |
| Atropine | | | | | | | | | |
| Other | | | [illegible] VF in ESØ | | | | | | |

## Other Treatment:

Foley Catheter @ ______________ By: ______________

X-Ray @ ______________ Of: ______________

Other: ______________ @ ______________ By: ______________

CODE TERMINATED AT: ______________

BY: ______________

REASON: ______________

Transport to GACH @: ______________

Attendents: ______________

WILMA P. WEBSTER, MAJ
EMERGENCY PHYSICIAN 4423
24 MDOS, HAFB PANAMA

[signature] 21 Jan 98 [signature] 25 Jan 98

Signature of Recorder | Date | Director | Date

Remarks: Use reverse side of form

HAFB FORM [illegible]

227

Place: Inpatient Unit
Diagnosis: Right pleural effusion
21:30 BCLS initiated sith 20 gauge IV
21:33 Defib 300J
21:35 Defib 360J epinephrinc 1 mg IVP
21:38 Lidocaine 75 mgs IVP
21:40 epi 1 mg IVP
21:42 Defib 360J
21:43 Epi 1 mg IVP
21:45 Epi 1 mg IVP
21:46 20 gauge IV put into left arm
21:47 Intubated by Dr. Burkett
21:49 Mag 1 gm IVP
21:51 Aystole Epi 1 mg IVP
21:55 Atropine 2 mgs IVP ng tube by Burkett
21:57 Eppinephrine 1 mg IVP
21:58 Bretylium 500 mgs IVP
21:59 Code Terminated

Hill, Wm. John Time CPR stopped: 21:59

Date: 24 JAN 98
Type of Arrest: Cardiac
Time of arrest: 21:30
BCLS started 21:30
ACLS started 21:33
Time intubated 21:47

Names of Physicians responding
Dr. Webster
Dr. O'Neil
Dr. Burkett

Vital Signs

| | BP | P | Resp |
|---|---|---|---|
| 21:32 | 0 | 0 | 0 |
| | 0 | 0 | 0 |
| | 0 | 0 | 0 |
| | 0 | 0 | 0 |

21:30

S. Code called on ward at approx 21:30 after patient fell back in bed apparently unconscious with "heavy breathing." When I arrived on scene patient was already received CPR. I put my hand on his right groin to feel the pulses. I thought I felt faint pulses in addition to the CPR induced pulses. At that point Amn Brook pointed out that the patient was breathing on his own. At that point we stopped CPR and observed the patient's respirations even while the monitor seemed to indicate V fib. However the breathing decreased and he became cyanotic so CPR was renewed and I ordered defibrillation x 3 escalating doses , epi 1 mg q 3 ' and 1 gram of mg sulfate. I attempted but was unable to intubate. Pt Was intubated by Dr. Burkett Bretylium 500 mgs was given IVP. 2 mgs atropine given after pt became st. line. Pt was declared deceased at 21:59. A post mortem CXR was taken and showed probable cardiomegaly & intubation of the right mainstem bronchus.

Wilma P. Webster, MAJ

Dx Cardiopulmonary Arrest
Hill, William
20/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 Male 30 y/o

Place: Inpatient Unit
Diagnosis: Right pleural effusion
21:30 BCLS initiated sith 20 gauge IV
21:33 Defib 300J
21:35 Defib 360J epinephrine 1 mg IVP
21:38 Lidocaine 75 mgs IVP
21:40 epi 1 mg IVP
21:42 Defib 360J
21:43 Epi 1 mg IVP
21:45 Epi 1 mg IVP
21:46 20 gauge IV put into left arm
21:47 Intubated by Dr. Burkett
21:49 Mag 1 gm IVP
21:51 Aystole Epi 1 mg IVP
21:55 Atropine 2 mgs IVP ng tube by Burkett
21:57 Eppinephrine 1 mg IVP
21:58 Bretylium 500 mgs IVP
21:59 Code Terminated

Hill, Wm. John Time CPR stopped: 21:59

Date: 24 JAN 98
Type of Arrest: Cardiac
Time of arrest: 21:30
BCLS started 21:30
ACLS started 21:33
Time intubated 21:47

Names of Physicians responding
Dr. Webster
Dr. O'Neil
Dr. Burkett

Vital Signs

| | BP | P | Resp |
|---|---|---|---|
| 21:32 | 0 | 0 | 0 |
| | 0 | 0 | 0 |
| | 0 | 0 | 0 |
| | 0 | 0 | 0 |

230

EXHIBIT "C"

**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS 24TH MEDICAL GROUP (ACC)**
**HOWARD AFB, PANAMA**

DATE: 6 April, 1999

MEMORANDUM FOR : To whom it may concern

FROM: Dr. Gustavo Herrera

SUBJECT: Obstetrical management.

In general, a pregnant patient at term, not in active labor, stable, with normal fetal heart tones, not bleeding, with ruptured membranes and clear liquid can be safely advised to go to the maternity with her husband in a private vehicle.

GUSTAVO A. HERRERA, MD. FACOG.
OB/GYN CLINIC
HOWARD AFB, PN

Global Power For America

232

22:15 S. I'd spoken to Dr. Olmos earlier & she'd requested I check fetal heart tones on this patient. Alert and oriented, complains of intermittent abdominal pain, much liquid from 'water broke'.
O. Alert & oriented, PERRL, conjunctivae pink, tongue moist, neck suppple, heart RRR, lungs clear. + left CVA tenderness, abdomen with enlarged uterus with intermittent contractions, bringing towel with fluid on it. No special smell. Non fetid. Ext with no cyanosis. FHT: 140 Discussed with Dr. Olmos. Send to Paitilla Hospital in POV.
A. Term pregancy in labor
P. Transport to Paitilla
P. After birth: regular exercise, increase fruits & veges

Instructions to patient: go directly to Paitilla Hospital, meet Dr. Olmos there.

---

Note from other hospital:

Admitted 25 APR 98 Delivery: 26 APR 98 Hospital: Paitilla

History of Present Illness: 28 YO patient, G1, 39 weeks pregnant, with history of spontaneous rupture of membranes 25 april 1998, approximately 11:00 p.m. PATIENT WITH HISTORY OF POSITIVE G.B.S., SENSIBLE TO KEFLIN. ADMITTED FOR IV ANTIBIOTICS AND MONITORING OF LABOR.

Past History and System Review: NEGATIVE

Prenatal Course: NORMAL

Physical Exam: WHEN EVALUATED, WITH IRREGULAR UTERINE ACTIVITY, CERVIX DILATED 5-6 CM, EFFACEMENT 70%, VERTEX PRESENTATION, STATION 2-3, PASSAGE OF CLEAR AMNIOTIC FLUID. FETAL MONITORING WITHOUT ABNORMALITIES.

Initial Diagnosis: TERM IUP
SPONTANEOUS RUPTURE OF MEMBRANES.
INITIAL LABOR

Laboratory: CBC, URINALYSIS NORMAL

Hospital course: GOOD UTERINE ACTIVITY. THE PATIENT REQUESTED AN EPIDURAL BLOCKAGE THAT WAS GIVEN AT 6CM. ANTIBIOTIC THERAPY WAS STARTED AT ADMISSION WITH KEFLIN 1 GR IV Q6H. THE FETAL PRESENTATION STOOD AT -2-3 ALL THE TIME, AND IT DEVELOPED A CAPPUT. THE PATIENT REACHED 10 CM AND REMAINED WITH A FETAL PRESENTATION IN A STATION –2-3, 60 MINUTES AFTERWARDS. THE PATIENT WAS TAKEN TO THE OPERATING ROOM FOR A CESAREAN SECTION.

Type of delivery with indications: LOW SEGMENT TRANSVERSE CESAREAN SECTION. CLEAR AMNIOTIC FLUID, NORMAL ADNEXA, NORMAL PLACENTA, SHORT UMBILICAL CORD.

If C-Sec. Was done: Describe actions prior C-Section: FAILURE TO PROGRESS. PT WAS GIVEN IV PITOCIN AND HAD GOOD UTERINE ACTIVITY.

Final Diagnosis:
PUERPERIUM
TERM IUP
CORD DISTOCIA (SHORT UMBILICAL CORD)

Disposition:

RELEASED WITHOUT LIMITATIONS
EXCEPT FOR WEIGHT LIFTING.
INSTRUCTED ON HOW TO TAKE CARE OF

Medications: MOTRIN 800 MG PO TID.
KEFLEX 500 MG PO TID.

Follow Up:
1MAY 1998 FOR SUTURE REMOVAL

**EXHIBIT "D"**