c. Tylenol/Benadryl Issue

FACTS: Dr. Webster saw Alexandria Ordaz on 20 April 1998 and diagnosed the patient with gastroenteritis with associated aches and pains. Dr. Webster prescribed Tylenol, yet handed the patient a bottle of Benadryl. Once at home, the parents notified the hospital that they were given the wrong medication and they were instructed to return to the clinic for the correct medication.

FINDINGS: We find this incident to have occurred and that its occurrence did not meet standard of care.

ANALYSIS: Dr. Webster immediately noted the error, she did not attempt to hide the facts, and ultimately corrected the situation. The elixir-type drugs were in identical bottles (as demonstrated at the hearing), with identical labels, and had the same color. Furthermore, both medications are from the same manufacturer. As noted by the pharmacist (Capt Cusak), this exact error is not uncommon and not isolated to Dr. Webster. Ultimately, the hospital decided to purchase Tylenol through a different manufacturer to avoid similar episodes. The reality of this situation is that the panel has been provided only two medication errors for this provider since her arrival to Panama. Since we know she has seen well over a thousand patients, we feel this is an acceptable medication error rate.

Additionally, we were impressed by Capt Cusak's testimony which indicated Dr. Webster is highly regarded for her pharmacological knowledge. Specifically, the chief pharmacist cited her currency on medications, proper administration, and choice of medications.

## RECOMMENDATIONS

In accordance with AFI 44-119, para 4.22, and after thorough review of all the exhibits and testimony, the committee unanimously recommends the following for Dr. Webster: (1) She should not practice in an ER setting (this is primarily due to our concern that she does not adequately handle task-saturated events), (2) Family Practice/Primary Care/Aerospace Medicine privileges should be allowed, (3) In any or all of those settings, she should be monitored with 100% chart review for no less than three months and, (4) at the conclusion of that three month period her privileges should be reevaluated.

It is clear Dr. Webster possesses the requisite knowledge to be a physician. She does, however, display several disturbing qualities which make her presence in the military (specifically, a military ER with possible war-time taskings), a potential disruption. Despite some superior traits as a physician (thoroughness, dedication to patients, medical knowledge, etc.), she appears to have certain identifiable interpersonal deficiencies.

While these undesirable personality traits have yet to result in an untoward patient outcome, we can easily see where those who review this case may not want her to

practice in *any* military setting. Accordingly, while we don't believe the evidence against Dr. Webster rises to a level which would warrant revocation of her privileges, we acknowledge she may not "fit in" to the unique demands and needs of the United States Air Force. In short, if after a sufficient period of review this physician is unable to meet the expectations of the military, consideration for administrative separation should be given.

Richard T. Steffen — 20 Feb 99

RICHARD T. STEFFEN, Major, USAF, MC — DATE
Chairperson

Andrew L. Matthews — 20 Feb 99

ANDREW L. MATTHEWS, Major, USAF, MC — DATE
TDY from Langley AFB

Florin Georgescu — 20 FEB 99

FLORIN C. GEORGESCU, Capt, USAF, MC — DATE

**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS 24TH WING (ACC)**
**HOWARD AIR FORCE BASE, PANAMA**

25 February 1999

MEMORANDUM FOR 24 MDOS/CC

FROM: JA

SUBJECT: Recommended Action Regarding Major Wilma Webster

1. On 17-18 Feb 99, the 24th Medical Group held a provider credentials hearing seeking revocation of Major Wilma Webster's privilege to practice medicine at Howard Air Force Base. On 20 Feb 99, the Hearing Board unanimously recommended that Major Webster's practice as a physician be limited. You have expressed an interest in PCSing Major Webster expeditiously based upon the Hearing Board's recommendations. We do not recommend PCSing Major Webster in the near future and offer the following guidance.

2. BACKGROUND:

a. On 17-18 Feb 99, the 24th Medical Group held a provider credentials hearing seeking to completely revoke Major Webster's ability to practice medicine at the 24th Wing. On 20 Feb 99, the Hearing Board issued the following findings and recommendations: 1) that Major Webster not practice in an ER setting; 2) that Major Webster should be allowed privileges to practice in Family Practice/Primary Care/Aerospace Medicine; 3) that in any or all of these practice settings, Major Webster should be monitored with 100% chart review for no less than three months; and 4) that Major Webster's privileges be reevaluated at the end of that three month period.

b. You have indicated that the 24th Medical Group has concerns about its ability to fully comply with the Hearing Board's decision. Given the small size of the 24th Medical Group, it will be difficult to provide the level of chart review recommended by the Hearing Board. Additionally, the small size of the 24th Medical Group makes thorough chart review difficult without involving those persons who were actively involved in supporting the action to revoke Major Webster's privileges. Such involvement by interested parties could potentially lead Major Webster to allege the chart review process is unfair. As a result, you have expressed an interest in PCSing Major Webster expeditiously.

3. ANALYSIS: In order to accurately explain the rationale behind our recommendation not to PCS Major Webster at the current time, a clear understanding of the appeal process is necessary. AFI 44-119, *Medical Service Clinical Quality Management*, Chapter 4, describes the appeal process. A summary of the AFI requirements are as follows:

a. The hearing transcript and the Hearing Board's findings and recommendations must be completed and provided to Major Webster thirty (30) calendar days after the hearing concludes (20 Mar 99) (AFI 44-119, paragraph 4.22.1).

b. Major Webster then has ten (10) duty days to respond/appeal to the Board's recommendations. She can request additional time to respond (AFI 44-119, paragraph 4.23). 24 MDG/CC has the discretion to grant additional time. It may be advisable to grant Major Webster additional time if she so requests, since Major Webster's counsel is located in the United States.

c. 24 MDG/CC then has ten (10) calendar days from the time he receives Major Webster's response to make his final decision (AFI 44-119, paragraph 4.24). If 24 MDG/CC does nothing within fifteen (15) days after he receives Major Webster's response, his silence is deemed a denial of the Hearing Board's decision. We strongly recommended against a denial by silence. If 24 MDG/CC disagrees with the Hearing Board's recommendation, he should state the reasons why in writing.

d. 24 MDG/CC must notify Major Webster in writing of his final decision within three (3) calendar days of the date his decision becomes final (AFI 44-119, paragraph 4.24). This notification letter must state what 24 MDG/CC's final decision is and notify Major Webster of her right to appeal his final decision. Specific guidance on the notification letter is located in Attachment 13 of AFI 44-119. The hearing transcript, Major Webster's response, and 24 MDG/CC's final decision is then forwarded to HQ ACC/SG. If Major Webster appeals 24 MDG/CC's final decision, the appeal process to the Air Force Surgeon General could take about 90 days from the final decision date.

4. <u>RECCOMENDATION</u>:

a. While we understand the reasons behind the 24th Medical Group's desire to PCS Major Webster, we recommend against PCSing her before the Air Force Surgeon General makes a final decision on the privileging action. Based on our interpretation of AFI 44-119, as well as consultation with Major William Boyce (the Medical Law Consultant (MLC) at Keesler AFB), we recommend retaining Major Webster in the Health and Wellness Center (HAWC) or utilizing her to perform other administrative duties within the 24th Medical Group. Although the AFI does not specifically prohibit PCSing Major Webster, doing so could give the appearance that the 24th Medical Group is acting against her in reprisal for an adverse hearing outcome, and is denying her due process before a final decision has been rendered. However, if you decide to PCS Major Webster before final action is taken, we recommend such action be coordinated with HQ ACC/SG. In addition, we recommend notifying Major Webster's gaining unit of the present privileging action.

b. If 24 MDG/CC does not want to retain Major Webster in the HAWC, he may assign her other administrative duties in the hospital or allow her to return to providing patient care with chart review in accordance with the Board's recommendation.



379

5. RECOMMENDATION: We recommend against PCSing Major Webster before the Air Force Surgeon General makes a final decision. If 24 MDG/CC accepts the recommendation of the Board, he is not required to immediately place Major Webster in a setting where she would provide patient care. At his discretion, he may keep her in the HAWC until a final decision has been reached.

6. Capt Cynthia Valderrey and Capt Reggie Harris are my action officers regarding this matter. Please call them at 284-5354 if you have any questions or require additional information.

Matthew J Polgar

MATTHEW J. POLGAR, Lt Col, USAF
Staff Judge Advocate

Attachments:
Board Findings and Recommendations, 20 Feb 1999

cc:
24 MDG/CC

DEPARTMENT OF THE AIR FORCE
24TH MEDICAL OPERATIONS SQUADRON (ACC)
HOWARD AFB, PANAMA

**22 February, 1999**

**MEMO FOR 24TH MDG/CC (Col O'Neil)**

**FROM 24th MDG/SGH (Dr. Edwin K. Burkett)**

**SUBJECT: Privilege Hearing Recommendations**

1. On 22 February I was given the recommendations report from the hearing committee concerning the privileges of Major Wilma Webster. The committee decided that her privileges as an Emergency room provider should remain revoked because they agreed that she has proven cognitive deficits that are magnified under stress and that she cannot handle task-saturated events. They further decided that her privileges in Family Practice/Primary Care/Aerospace Medicine should be reinstated under a 100% chart review for no less than 3 months and then have her privileges reevaluated. The committee also commented that Major Webster has some disturbing qualities and undesirable personality traits that cause concern with her practicing medicine in any military setting. Following are my further comments and recommendations.

**Recommendation #1:** I fully concur with the decision about revocation of her Emergency physician privileges

Comment: In light of Major Webster's cognitive deficits and memory deficits I am not convinced that she can give appropriate and safe care to patients in Primary Care setting. I mainly question whether she can assimilate and manage the information for patients with multiple medical problems and multiple medications. However, this cannot be determined without monitoring and evaluation by long term chart review. Because of the lack of confidence in her at this MTF and the possibility that such a review may not appear to be impartially accomplished at the 24th MDG I do not feel this M&E should be done here.

**Recommendation #2:** While Major Webster remains at the 24th Medical Group she should continue without privileges in Primary Care. Upon her PCS the gaining MTF should institute the Monitoring and Evaluation process if they choose to grant her Primary Care privileges.

**Recommendation #3:** According to AFI 44-119 paragraph 3.17.3 I recommend that the hearing committee report, the DD Form 2499, and the transcript of the hearing be placed in Section III of her Provider Credentials File. Additionally, the supporting documents that have been consolidated into a single file be cross-referenced as part of this same section of the PCF.

Edwin K. Burkett
Edwin K. Burkett, MD
Maj USAF, MC
24th MDG, Chief, Medical Staff

HEARING TRANSCRIPT
PART I

# TAB 6

# RECORD OF CREDENTIALS HEARING

RE

## WILMA P. WEBSTER, MAJOR, USAF, MC

CONVENED UNDER

AIR FORCE INSTRUCTION 44-119

HELD AT

HOWARD AFB, PANAMA

ON 17-18 FEBRUARY 1999

Abbreviations Used:

| | |
|---|---|
| CC | Committee Chairperson |
| CM | Committee Member |
| LA | Legal Advisor |
| REC | Recorder |
| CIVRC | Civilian Respondent's Counsel |
| RESP | Respondent |
| WIT | Witness |

**TESTIMONY**

| Name of Witness | Page |
|---|---|
| **By the Government:** | |
| Fey, Gregory, Capt | 20 |
| Burkett, Edwin K., Maj | 55 |
| Mendez, Teodoro, Dr. | 92 |
| Goode, Kristen, SrA | 119 |
| Callender, Teodolinda Ms. | 130 |
| Thomas, Linda Ms. | 136 |
| O'Neil, Terrence J., Col | 141 |
| Remington, Kenneth, Lt Col | 168 |
| Shercliffe, Ryan, Capt | 175 |
| McCrary, James, Maj | 189 |
| **By the Respondent:** | |
| Angeloro, Michael B., Maj | 215 |
| Copp, David, Maj | 218 |
| Westrick, Mark P., Capt | 220 |
| Efthimiadis, Byron Dr. | 223 |
| Langsten, Randall, Capt | 227 |
| Cusack, Steven G., Capt | 232 |
| Li, Ann, Capt | 239 |
| Sonderegger, Thomas TSgt | 245 |
| Tall, Michael, Capt | 248 |
| Webster, Wilma P. | 267 |
| Marine, Joan, Maj | 284 |
| **By the Committee:** | |
| Burkett, Edwin K., Maj | 255 |

# HEARING EXHIBITS

1 Memo, 25 Nov 98, from Burkett to O'Neil
2 Memo, 3 Dec 98, from O'Neil to Webster
3 Memo, 3 Dec 98, from O'Neil to Webster
4 Memo, 21 Dec 98, from ADC to 24 MCG/CC
5 Memo, 7 Jan 98, from Burkett to Webster
6 Findings of PEB, 28 Jan 99
7 CV, Fey
8 Referral for Civilian Med Care
9 Consultation Sheet, 2 Oct 98
10 Clinical Neuropsychology Report, Beth Israel Deaconess
11 Ltr, 15 Jan 99, Poser to Webster
12 Chart used by CIVRC
13 Page 2 of Chart used by CIVRC
14 CV, O'Connor
15 CV, Poser
16 AF Form 2662, Burkett
17 MFR, 31 Jan 98, Burkett
18 MFR, 30 Jan 98, Burkett
19 Radiology Report
20 (Withdrawn)
21 Memo, 10 Feb 98, from Webster to Mendez
22 AF Form 765
23 Surveys/memos re patient care
24 LOC, 4 Feb 98
25 OPR (29 Jul 97-28 Jul 98)
26 Chart, LWOBS
27 Chart, Percentage of LWOBS
28 Ltr, Luff, 17 Feb 99
29 Ltr, Lindgren, 29 May 98
30 Ltr, 29 May 98, Sonderegger
31 MFR, 17 Sep 98
32 AF Form 3899
33 Memo, 17 Sep 98, Callender
34 Statement, 22 Feb 98, Thomas
35 CV, O'Neil
36 Memo, 22 May 98, O'Neil
37 Memo, 6 Feb 98, O'Neil
38 Memo, 13 Nov 98, O'Neil
39 Memo, 24 Jun 98, O'Neil
40 Memo, 23 Mar 98, Addison
41 Memo, 21 May 98, Addison
42 Case Review, McGuire
43 Résumé, LaMacchia
44 Memo, 14 Jul 98, LaMacchia
45 AF Form 2662, Shercliffe
46 Notes, Shercliffe
47 Memo, 30 Nov 97, McCrary
48 MFR, 20 May 98, McCrary
49 LWBS data
50 Maryland Hosp Indicator Data

51 Data, greater than 4 hours
52 Data, greater than 6 hours
53 Ltr, 21 Sep 98, Robbins
54 Provider Activity File
55 Credential File
56 Memo, 20 Jan 99, Olmos
57 Minutes of Credentials Meeting
58 Webster's Schedule for November
59 Ltr, Gamble
60 Ltr, Weber
61 Ltr, Jones
62 Ltr, Ngo
63 Ltr, McMasters
64 Ltr, Best

**HEARING PROCEEDINGS**

**PERSONS PRESENT**

Major Richard Steffen, USAF, Committee Chairperson,
Major Brynne Standaert, USAF, Committee Member,
Major Drew Matthews, USAF, Committee Member,
Major William Boyce, USAF, Legal Advisor,
Captain Cynthia Valderrey, USAF, Recorder,
Captain Reginauld Harris, USAF, Assistant Recorder,
Mr. Terrence J. Martin, Civilian Respondent's Counsel,
Major Wilma P. Webster, USAF, Respondent,
Mrs. Jeanne R. Starr, Reporter.

CC: The Committee will come to order. The attorneys for the hospital will speak first.

AREC: I am Captain Reginald T. Harris. The committee is convened at 0850 on 17 February 1999 at Howard Air Force Base pursuant to AFI 44-119.

The provider was provided receipt of the notice of this hearing on January 8, 1999. This letter of notification and acknowledgement, which is part of that same letter, will be made a part of the record of this hearing.

CC: And, Dr. Webster, you are represented by counsel?

RESP: Yes.

CC: Will you introduce yourself, please?

CIVRC: Yes, my name is Terrence J. Martin. I'm an attorney licensed to practice law in the State of Texas and in the State of Missouri. I am also licensed before the Court of Military Appeals, as well as several federal courts.

CC: Again, this committee is convened for the purpose of determining if any or all of the clinical privileges of Dr. Webster should be modified according to AFI 44-119. Members of the hearing committee present here will be me, Dr. Steffen, I'll be the Chairperson; Dr. Matthews and Dr. Standaert. Members of the committee--we don't

have anybody that is absent. Again we talked about who is present.

This hearing is convened to consider evidence, either written or oral, or both, concerning the scope of clinical privileges that you have been awarded and to make findings and recommendations to the MAJCOM/SG as to whether those privileges should be modified.

As the respondent in this hearing, you have these rights, and I will read these.

(1) To appear in person before all open sessions of this committee, with or without counsel;

(2) To challenge for cause any voting member of the committee;

(3) To present evidence and to call witnesses in your behalf and to ask questions of any witness appearing before this committee.

Do you understand the purpose of this hearing and your rights before it?

RESP: I do.

CC: The provider again is Dr. Webster. Is any committee member aware of any reason why he or she cannot conscientiously participate in this case and would not render a fair and impartial decision?

(Negative responses.)

CC: Does Dr. Webster desire to challenge any member for cause?

CIVRC: Before I make that decision, and I don't believe there will be any challenge, I do need to ask some questions of the panel.

CC: Okay.

CIVRC: All right, let me start off with you, Dr. Standaert. You are in the pediatric department here at Howard Air Force Base?

CM (Maj Standaert): Yes.

CIVRC: Have you ever been involved in any care rendered to a patient that Dr. Webster has treated?

CM (Maj Standaert): Yes, she has called me sometimes on call.

CIVRC: Has anything about that caused you to form an opinion one way or the other as to whether or not she is a competent doctor or not?

CM (Maj Standaert): Personal experiences with her, no.

CIVRC: Has there been any discussion which you have been a part of which has discussed Dr. Webster and her treatment of patients?

CM (Maj Standaert): There was one case Dr. Henderson had told me about, about a child that had gone downtown.

CIVRC: Was there something adverse about that case?

CM (Maj Standaert): As I remember, it was a child that I think he'd counseled Dr. Webster by phone to send down by ambulance and the child did not go by ambulance, but the parents--by their vehicle and when he arrived at the hospital downtown had stopped breathing. That was the incident that I remember he mentioned to me.

CIVRC: Would that incident, do you believe, prejudice you against Dr. Webster in this hearing, do you think?

CM (Maj Standaert): That's what he had told me. I suppose that would be like a hearsay statement and I haven't heard all the evidence.

CIVRC: Okay, and this hearing is not like a court-martial. I think the legal advisor will tell you that and some hearsay statements will be coming in, in the form of letters and other things. My question is, can you put that aside and just listen to the evidence and make a

decision on the evidence that comes here today or are you going to be influenced by what another doctor told you?

CM (Maj Standaert): No, I believe I can put that aside and be impartial and listen to what the evidence is.

CIVRC: Okay, was there any other things that you can remember that you have been told about Dr. Webster prior to coming here concerning her practice of medicine?

CM (Maj Standaert): I heard about an incident where there was a man who needed to be intubated and she had difficulty.

CIVRC: And did that--that's going to be gone into a great deal here in the hearing. But as a result of hearing that, did that cause you to form any opinion with regard to Dr. Webster before coming here today?

CM (Maj Standaert): No, actually I think I heard Dr. Webster mention about it and that there was maybe a physical problem with her own abilities to do that.

CIVRC: Do you think you can, considering the fact that you work here at Howard and you have heard some information about Dr. Webster's practice, that you can sit here and fairly and impartially sit here and judge the evidence without relying upon any of these experiences that are not going to be in evidence here?

CM (Maj Standaert): Yes, I believe I could.

CIVRC: All right. Dr. Stevens--

CC: It's Dr. Steffen.

CIVRC: Dr. Steffen, I apologize.

CC: No problem.

CIVRC: What is your specialty?

CC: Orthopedics.

CIVRC: Have you had any experience with Dr. Webster?

CC: No, not at all. I arrived in August. I don't think I've ever had any contact.

CIVRC: Have you had any discussions with your colleagues with regards to Dr. Webster?

CC: No, not really. I've never gone into any in-depth, really no, I have not.

CIVRC: So you feel you can sit here impartially?

CC: Yes.

CIVRC: I do have a problem with Dr. Standaert, and I'm not questioning your veracity, but I think that because of you having heard of instances which I don't believe are going to be in--at least one incidence that is not going to be in evidence before this board, that I think that that could possibly taint your decision.

(Addressing Chairperson.) I realize it's up to you whether not Dr. Standaert stays on the board or not, but I have to protect the record for my client. And that is one thing I want to point out that, from time to time, I will be making objections in this hearing and it's because I have to protect the rights of my client. So please don't take any of this personally. This is what I am paid to do. That's my only challenge.

(Legal Advisor and Chairperson conferred.)

CC: We are going to take a short break here and go back and talk here for a few minutes.

CIVRC: Thank you.

(The hearing recessed from 0858 until 0935 hours, 17 February 1999.)

LA: We are back on the record. All relevant parties have returned. The chairperson has something he wishes to announce.

CC: Based on the challenge by Dr. Webster's attorney, we are going to uphold his challenge and have Dr. Brynne Standaert removed from this panel. An alternate will be forthcoming, and as soon as we have that alternate, we will reconvene.

(The hearing recessed from 0935 hours until 1020 hours, 17 February 1999.)

LA: We are back on the record. We have a new member with us.

CC: Again, this committee is now going to come back to order with our new alternate. We are going to start back here again, I guess. This is our new committee member. This is Florin Georgescu. He will take the place of Brynne Standaert. Again, we will come back to the portion here that if counsel for Dr. Webster has any questions for him, at this time, he can go ahead.

CIVRC: Doctor, I don't believe I have ever met you. Have you met my client?

CM (Capt Georgescu): Yes, I met her on a couple of occasions.

CIVRC: Have you had any experiences with her, either pro or con, that might influence you in deciding whether or not her credentials should be withdrawn?

CM (Capt Georgescu): No, very informal type of meeting, "Hi, how are you doing?"

CIVRC: Fine, that's great.

We have no other challenges for cause.

CC: Did you have anything for Dr. Matthews because I know you spoke to me?

CIVRC: Dr. Matthews, you are from Langley?

CM (Maj Matthews): That's correct.

CIVRC: And, as I understand it, you have had no experiences with Doctor Webster one way or the other?



392

CM (Maj Matthews): The first time I met her was yesterday.

CIVRC: And you have not been provided any information about this case--

CM (Maj Matthews): No, I have not.

CIVRC: --prior to coming here?

No challenges.

CC: At this point, evidence, both documents and witnesses, will be presented and reviewed in an orderly manner. I guess we will go from there.

AREC: Before the government begins to formally present witnesses, we would like to enter into the record the notification letter and some other documents. And I will just go through them in order.

First, Hearing Exhibit 1 is a memorandum from the Medical Group Commander Colonel O'Neil, subject: Special Credentials Function. It is dated 25 November 1998.

CIVRC: You don't have to show me each one as you go through. I am going to mark it off--I assume they are all on this list that you gave me?

AREC: Yes, they are.

CIVRC: Anything that I need to see or I have an objection to, I will raise.

AREC: The second hearing exhibit on the record is a memorandum from the Medical Group Commander Colonel O'Neil to Major Webster, the subject: Advisement of Area Defense Counsel.

The third is a memorandum from Colonel O'Neil dated 3 December '98 which is a Notice of Proposed Revocation of Privileges.

Exhibit 4 is a Request for Hearing from Major Webster made through her are defense counsel, at the time, Captain Harding.

Exhibit 5 is a letter from the Medical Group SGH, dated 7 January 1999, which is Notification of Privileges Hearing.

Exhibit 6 is the Finding and Recommended Disposition of the U.S. Air Force Physical Examination Board.

LA: Captain Harris, is there a date on Exhibit 6?

AREC: Yes, sir, 28 January 1999.

All these documents which I have now, Hearing Exhibits 1 through 6, have been provided to Major Webster's counsel, and I am now providing them to the Chairperson of the Board.

CIVRC: For the record, we have no objection.

CC: Anything else?

AREC: Yes, sir. At this time, the government would like to make an opening statement.

CC: Okay.

AREC: Members of the board, I would like for you to imagine that you are in a ship with several passengers, and while you are in the ship, you notice that the ship has a slow leak. It is not a leak that is going to sink your ship right away, but slowly but surely your boat will fill up with water. At this point, you have got a problem and you have two options by which you can address this problem.

The first thing you can do is nothing. You can wait. But when you do, slowly but surely your boat fill up with water and your ship will sink. The second option you can take, however, is to take corrective action. You can fix that leak in your ship and save your passengers.



394

The quality of medical care that's been provided by Major Webster is a lot like that ship that has a slow leak. You have a problem and with that problem you have got two options. You can do nothing and allow that problem to get worse or you can take corrective action and save the passengers. And those passengers are like the patients that are under Major Webster's care.

The concerns that we are going to present to you regarding Major Webster stem back to when she first came to the 24th Medical Group back in October of 1997. These problems--these concerns that we have relate to her performance in the emergency department and in the primary care clinic. Throughout her performance, as you will hear today, Major Webster has lost, not only the confidence of the medical staff, but she has also lost the confidence of the patients under her care.

You will hear that Major Webster performed below the standard of care during a code blue in which she was required to do an intubation. You will also hear of at least two occasions where she provided incorrect medication for patients. You will hear of her difficulties of handling patient workloads and of her forgetfulness when dealing with patients.

It's based on these reasons and others that we are asking for a complete revocation of medical privileges.

Now before I continue, let me introduce myself. I am Captain Reggie Harris, and along with Captain Cynthia Valderrey, we are representing the Medical Group presenting the case for complete revocation of Major Webster's privileges. Now we are not doctors. We are judge advocates. Although we are judge advocates, I want to emphasize that this is not a court-martial proceeding. We are not here to punish Major Webster. We are not here to determine guilt or innocence. Your role here is to determine whether or not Major Webster can safely provide patient care to the patients of the 24th Medical Group.

Now back in November of last year, the Special Credentials function of the Medical Group met and they



395