DEPARTMENT OF THE AIR FORCE
HEADQUARTERS 24TH MEDICAL GROUP (ACC)
HOWARD AFB, PANAMA

3 December 1998

MEMORANDUM FOR: RECORD

FROM: 24MDG/CC (Col O'Neil)

SUBJECT: Decision on Date to Deliver Notice of Proposed Credentials Action to Maj Webster

1. I have decided to delay giving the notice of proposed credentials action to Major Wilma Webster until Tuesday, 8 December 1998. This is done after consultation with the Chief of the Mental Health Flight for concrete reasons that include considerations of Major Webster's safety and that of others. I first received written notification of the Credentials Committee action letter dated 20 November 1998 on Tuesday 2 December 1998 giving me until the 17th of December to act on the Committee's recommendations.

2. Major Webster must be considered at significant a-priori risk for violence to self or others. Consideration of the risks for suicide include:

a. She is single, living alone, off-Base
b. She has few known friends
c. The Christmas Holiday season is two weeks away.
c. She is facing a chronic, debilitating, inexorably progressive disease
d. On two occasions within the past 90 days she has made statements to others indicating fantasizing about doing violence to others (shooting persons in the hospital, blowing up an aeromedical evacuation plane. Although both of these statements were felt to be incidents of disinhibited bravado without significant likelihood of action, they must be considered warning flags.
e. She will lose her most significant status-respect ego support prop when her privilege to practice Medicine is revoked.
f. If I announce my decision to her immediately prior to a weekend, she will be at her residence alone in Panama City without daily observation over the weekend.

3. Dr. Greg Fey, Staff Psychiatrist, is not due back from leave until Monday, 7 December. LtCol Kenneth Remington, MDOS/CC, is not due back from leave until Tuesday, 8 December. The MDOS/CD is LtCol Scott Rodgers, the Chief of the Mental Health Flight. I wish to have the Command and mental health support lines cleanly separated so Maj Webster will feel comfortable to the greatest degree possible in opening up to the available mental health providers during the period of maximum stress.

4. Based on the above factors, I intend to announce my decision to Maj Webster on Tuesday, 8 December, 1998.

TERRENCE JAY O'NEIL, Col USAF, MC
Commander

Document2



735

**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS 24TH MEDICAL GROUP (ACC)**
**HOWARD AFB, PANAMA**

3 December 1998

MEMORANDUM FOR: Major Wilma P. Webster

FROM: 24MDG/CC (Col O'Neil)

SUBJECT: Notice of Proposed Revocation of Privileges

1. The Credentials Function of the 24th Medical Group has recommended to me to revoke your clinical privileges as Emergency Physician and Primary Care Physician. I have considered their recommendation and have decided to act as they recommend.

2. The reasons for this action by me are as follows:

a. While in the Emergency Room and in Primary Care Clinic your labile emotional state caused several patients to lose confidence in your ability to treat them.

b. You performed in a forgetful and disorganized manner on several occasions and there were documented incidents of you dispensing incorrect medication to patients.

c. In a witnessed cardiac arrest response you stated you were physically incapable of performing an endotracheal intubation due to left wrist weakness. Although the weakness was transient, and attributed to carpal tunnel syndrome at the time, you subsequently stated to me that you had mis-represented the incident and that your left wrist was not, in fact, weak. This conflict of claimed facts over a critical and basic part of your expected duties led me to lose confidence in your insight and truthfulness regarding your capabilities.

d. You had one acute episode of disabling weakness attributed to an immunologically-mediated neurological condition. Although transient, the incident described in "c" above leads me to question whether you would fully and truthfully disclose a more limited episode in the future which impinged on your ability to safely conduct essential parts of your duties as an Emergency Room Physician or Primary Care Physician.

e. You have undergone a full Neurology and Neuropsychiatry evaluation, with some parts of that evaluation repeated at three different institutions. The result of that evaluation has revealed that you have a chronic, progressive de-myelinating neurologic disease with significant cognitive and behavioral damage. You have demonstrated fluctuating neurological status over the past year, and the expert opinion of the medical team which has evaluated you leads me to believe that you will suffer from temporally- and physiologically-varying future involvement of motor strength, cognition, and judgement. Additionally, that medical team has determined that you demonstrate neither acceptance of nor insight into that disease process, and this may lead you to deny or ignore impairment which would interfere with your safely accomplishing critical tasks involved in your primary clinical duties. This could seriously endanger patient safety in either your Emergency Medicine or Primary Care Medicine duties.

f. You have on two occasions made statements in a public setting, witnessed by several persons, that indicate you have thought about or contemplated acts of violence against persons in the Hospital, and against an aeromedical evacuation aircraft. Regardless of whether you meant to carry out the actions implied by these statements, the nature of your making them and the setting you made them in create grave doubts about your judgement, insight, and impulse control in the clinical settings of the Emergency Room and Primary Care Clinic, where you may be under intense pressure and liable to great frustration in dealing with patients and illness situations.

3. You are advised that you have the right, upon request, to have a credentials hearing committee review this action. To have this hearing, you must make a written request to me within 30 days from the date you receive tnis notification. If you fail to ask within that time, or if you fail to appear at a hearing so requested, you waive your rights to the hearing. If you waive your rights to a hearing, you may still exercise your right to appeal this decision to HQ AFMOA/SGPC.

4. Depending on the outcome of this action, HQ AFMOA/SGPC may report the matter to appropriate professional regulatory agencies. I strongly recommend that you consult AFI 44-119, chapter 4, for information on the specific procedures involved with this action and your rights.

5. You are required to acknowledge receipt by signature below. Your acknowledgement of receipt does not constitute your acceptance of the action, only that you have received notification of the proposed action. You are entitled to a copy of this notification.

TERRENCE JAY O'NEIL, Col USAF, MC
Commander

1st Indorsement: Major Wilma P. Webster, USAF, MC

TO: 24MDG/CC (Col O'Neil)
Chairperson, Credentials Function

I acknowledge receipt.

09 DEC

WILMA P. WEBSTER, Maj, USAF, MC

**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS 24TH MEDICAL GROUP (ACC)**
**HOWARD AFB, PANAMA**

3 December 1998

MEMORANDUM FOR: Maj Wilma P. Webster

FROM: 24MDG/CC (Col O'Neil)

SUBJECT: Advisement of Availability of Area Defense Counsel

1. This is to advise you that the services of the Area Defense Counsel are available for legal consultation on issues including matters of credentialing. The individual who advises for this geographic area is Capt Scott Harding, Area Defense Counsel Office, Patrick AFB, Florida. He can be reached at DSN 8-312-854-4423, or 4424. His 'fax' number is extension 4425.

2. This information is furnished for your consideration only, and does not constitute a directive to consult Capt Harding.

TERRENCE JAY O'NEIL, Col USAF, MC
Commander

1st Indorsement: Major Wilma P. Webster, USAF, MC

TO: 24MDG/CC (Col O'Neil)

I acknowledge receipt.

Wilma P. Webster 09DEC

WILMA P. WEBSTER, Maj, USAF, MC

**Global Power For America**

738

**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS 24TH WING (ACC)**
**HOWARD AIR FORCE BASE, PANAMA**

2 December 1998

MEMORANDUM FOR 24 MDG/CC

FROM: JA

SUBJECT: Legal Review - Notice of Proposed Revocation of Privileges

1. On 2 December 1998, you asked this office whether the attached Notice of Proposed Revocation of Privileges is legally sufficient. After review of AFI 44-119, chapter 4, we have determined that this notice is legally sufficient and may be sent to Dr. Wilma Webster at your discretion. However, this memorandum should be mailed no later than 15 calendar days from the date of receipt of the Credentials Function recommendation.

2. If you have any questions or concerns, please feel free to contact me at 284-5354.

Katie E. Ellsworth

KATHERINE E. ELLSWORTH, Capt, USAF
Assistant Staff Judge Advocate

I concur.

Frederick M. Wolfe

FREDERICK M. WOLFE, Major, USAF
Acting Staff Judge Advocate

THIS IS A QUALITY ASSURANCE DOCUMENT PROTECTED FROM DISCOVERY
BY SECTION 1102 OF TITLE 10, USC
NOT RELEASABLE WITHOUT PERMISSION OF THE COMMANDER

# DEPARTMENT OF THE AIR FORCE

**HEADQUARTERS 24TH MEDICAL GROUP (ACC)**
**HOWARD AFB, PANAMA**

15 December, 1998

MEMORANDUM FOR: RECORD

FROM: 24MDG/CC (Col O'Neil)

SUBJECT: Credentials Process for Major Wilma Webster

1. Major Webster received notification of our intent to revoke her clinical privileges in Emergency Medicine and Primary Care Medicine on 9 December 1998.
    - IAW AFI 44-119, Section 4B, Para 4.15. Provider hearing Rights and Responsibilities, she has 30 calendar days to request a credentials hearing.
        - The date for her to submit a request for hearing is NLT Friday 8 January 1999
            - I will consider her request for hearing over the weekend
            - I should plan to advise her of my decision Monday 11 January 1999
        - She must be notified of the hearing and acknowledge receipt of same NET 30 duty days prior to its convening
            - IAW AFI 44-119, Section 4B, Para 4.16., the notification must include:
                - Specific allegations that constitute grounds for the hearing
                    - <u>This includes dates and pertinent patient records</u>
                    - Because personnel are re-deploying to CONUS and to Puerto Rico, some during the Christmas Season, it is vital that patient records associated with the clinical incidents surrounding the recommendation of the Credentials Committee be sequestered, and certified copies be maintained securely by the SGH until the time of the hearing!
                - The time and location of the hearing
                    - We should plan to hold a hearing o/a Monday 15 Feb 1999
                - Her right to be present, to present evidence, and to call witnesses (which she must arrange for presence of)
                - The names of witnesses to be called to testify at the hearing
                - The right to cross-examine witnesses
                - The right to have a military counsel appointed to assist the provider (if the provider is military) and the right to hire a civilian attorney at the provider's own expense)
            - IAW AFI 44-119, Section 4B, Para 4.17., the chief of the Medical Staff / Credentials Function Chairperson may choose to either appoint a hearing committee, or have all qualified voting members of the full Credentials Function act as the Hearing Committee. The Committee must include at

THIS IS A QUALITY ASSURANCE DOCUMENT PROTECTED FROM DISCOVERY
BY SECTION 1102 OF TITLE 10, USC
NOT RELEASABLE WITHOUT PERMISSION OF THE COMMANDER

least three physicians, and "when reasonably possible, one physician should be of the same specialty as the provider".

Other specific characteristics of the Hearing and the Committee are in Paragraphs 4.17. through 4.23. These are attached, for your information and preparation.

2. The importance of the proper conduct of this Credentials Hearing to Major Webster's career and professional life is paramount. Please study the attached information and assure that we have planned to be in strict compliance with AFI 44-119.

TERRENCE JAY O'NEIL, Col USAF, MC
Commander

Cc: SGH (LtCol Rodriguez-Vasquez)
MDOS/CC (LtCol Remington)

Atch: AFI 44-119, Chapter 4: Adverse Actions, pp 39-48

C:\AAMDGRP1\INVESTIG\WEBSTER\hearing\guidance.doc

# Chapter 4

# ADVERSE ACTIONS

## *Section 4A—Investigating, Holding in Abeyance, Denying, Suspending, Limiting, or Revoking Clinical Privileges*

**4.1. General.** The provisions of this section should not be construed as requiring the chief of the medical staff to place in abeyance, suspend, or take other privileging actions in order to carry out evaluations of medical services. Temporary moratorium on some medical services while evaluating those services for systemic problems may be appropriate to determine problem causes. This action may be taken without abeyance or suspension of privileges. In the event a particular provider's care is determined to be the cause of poor outcomes, abeyance or suspension actions may or may not be appropriate, depending on the extent of the problems, the provider's culpability and effort to correct them, and the remedial action required. However, such findings should be included in the PAF.

**4.1.1. Appropriate Use of Privileging Actions.** Privileging action must be taken when appropriate, regardless of the provider's contract or other duty status within the MTF. Severing the employment relationship in lieu of taking a privileging action that is indicated is not appropriate.

**4.2. Identity of Persons Providing Information.** The Air Force will make all reasonable efforts to protect the identity of persons who give information that could lead to a clinical privilege action.

**4.3. Allegations Involving Separated Providers.** Allegations of substandard performance or misconduct within the past 12 months must be investigated. Immediately advise HQ MAJCOM/SG of such cases. HQ MAJCOM/SG will coordinate with HQ AFMOA/SGPC. The responsibility for investigating these situations will remain with the MTF with assistance as necessary by the MAJCOM/SG. The MTF will notify the provider of the charges and will give the provider the opportunity to provide information in his or her defense. If the MTF has closed, HQ MAJCOM/SG assumes these responsibilities.

**4.4. Actions Involving the Medical Facility Commander:** When information arises on a privileged MFC's conduct or condition which may bear on his or her suitability for professional practice, the MFC's commanding line officer should notify and consult with HQ MAJCOM/SG who then assumes responsibility for privileging actions. All other issues are managed by the commanding line officer.

**4.5. Summary Action to Suspend Privileges:** Summary action is speedy and unceremonious action taken to suspend a provider from performing all or a portion of his or her privileges. This action is taken in response to gross provider misconduct, professional incompetence, or negligence that is self-evident and poses a significant threat to patient safety or well-being. When a provider's conduct or condition requires that summary action be taken to protect the health or safety of any patient, employee, or other person in the MTF, the credentials function chairperson or higher authority may immediately suspend all, or any portion of, the clinical privileges of the provider.

**4.6. Routine Action to Investigate, Hold in Abeyance, Suspend, Limit, or Revoke Privileges.** When the credentials function receives information on a provider's conduct or condition, and summary action is not deemed necessary, the function chairperson should determine the proper action to take. When the action is an abeyance or suspension, an inquiry should take place.



942

**4.7. Use of Abeyance:** An abeyance is not an adverse clinical privilege action. Abeyance is used when an evaluation appears warranted, but information is insufficient to suspend privileges or the potential hazard to patients or patient care is not well understood. It is imposed for the purpose of conducting an internal or external peer review or other inquiry. It is valid for 14 calendar days. The MFC may grant a single extension of up to 14 more calendar days. Then, if the abeyance period is not closed, the action automatically becomes a suspension of privileges. Abeyance which is not resolved when a provider ends his or her relationship with the MTF will automatically become a suspension. Abeyance actions which become suspensions must then be immediately reported as outlined in paragraph 4.10.

**4.8. Use of Suspension:** Suspension is used to control a provider's practice while an investigation is completed or while reevaluation, rehabilitation, or retraining is completed. It is a temporary measure. Suspension should be used as an initial action when misconduct, professional incompetence, or negligence is clear-cut, and poses a threat to patient safety or well-being. A suspension should not exceed six months. A request to extend the suspension beyond six months must be sent to HQ MAJCOM/SG for approval.

**4.9. Withdrawal of Permission to Engage in Off Duty Employment:** The MFC must withdraw any permission for the provider to engage in off-duty employment until the issue is resolved. The MFC must also notify those civilian medical treatment facilities where the provider is practicing of the summary suspension action. Generally, the MFC must remove permission for off duty employment if a provider is being investigated for any item listed in attachment 14, or if an adverse privileging action of any kind seems likely.

**4.10. Immediate Notification to HQ AFMOA/SGPC:** The MFC must send a DD Form 2499, **Health Care Provider Action Report** (RCS: DD-HA(AR)1611 to HQ AFMOA/SGPC and HQ MAJCOM/SG within 3 duty days to report any suspension, denial, limitation, or revocation action taken with a provider's clinical privileges. Copies of supporting documentation identifying the issues that gave rise to the action, the actual action taken, and provider notification of rights and responsibilities under this AFI must accompany the 2499. HQ AFMOA/SGPC will review all suspension actions and determine which must be reported immediately to the NPDB.

**4.11. Notification of the Provider:** The credentials function chairperson, after consultation with the SJA or MLC, should give written notice within 3 duty days to the provider of any abeyance or suspension. They must specify the deficiencies, and the scope and duration of the action (Attachments 7 & 8). If the provider is a member of a contract group, give a copy of the notification letter, and any subsequent correspondence, to the contract group. Notify the contracting officer in these cases of substandard performance and consult on further actions to manage these situations. The credentials function chairperson will inquire into the matter, or assign someone to inquire, in order to decide what action should follow.

**4.12. Inquiry Procedures:** An inquiry may be conducted with or without an accompanying privilege action. MFCs will evaluate allegations of misconduct including, but not limited to, those acts listed in attachment 14. MFCs will refer allegations of criminal misconduct to the local Office of Special Investigations (OSI) detachment. If more information or background on the provider's conduct is necessary, one or more officers may be appointed by the MFC to conduct a further inquiry. After completing the inquiry, the investigating officer sends a report through the credentials function chairperson to the credentials function. The report should organize those factual findings of the inquiry and may include the investigat-



743

ing officer's conclusions or recommendations. However, the report is not binding on the credentials function or higher authorities.

4.12.1. Any inquiry into any provider conduct which may adversely affect the privileges must begin within 15 duty days of the MFC's knowledge of the conduct.

**4.13. Records of Abeyances and Suspensions:** Abeyances and suspensions that lead to complete reinstatement of privileges will not be kept in a PCF. However, abeyance and suspension actions that lead to loss or limitation of privileges must be placed in Section III of the PCF and cannot be removed regardless of whether the suspension leads to an adverse outcome or complete reinstatement of privileges.

**4.14. Credentials Function Review and Recommendations:** The credentials function reviews the information and any other matters resulting from an inquiry and makes recommendations for management of the professional issues in the case. Recommendations must be made in the reasonable belief that the action is warranted by the facts in the case. The credentials function may refer the case back to the investigator for further inquiry if necessary, or may recommend an action with respect to the provider's privileges. In every case, only one of the following recommendations may be made with respect to the provider's privileges.

- Recommend privileges be reinstated or that no action be taken to limit or revoke the provider's privileges.
- Recommend specific monitoring and evaluation (M&E) of the provider to the MFC, including the nature and duration of the M&E.
- Recommend limiting clinical privileges.
- Recommend revoking clinical privileges
- Recommend denying clinical privileges.

4.14.1. The credentials function may make other suggestions with regard to the management of the provider in question. However, these should be forwarded to the MFC under a separate cover and should not be included at any time in the PCF.

4.14.2. The credentials function chairperson will forward the recommendation of the credentials function to the MFC as well as the facts of the case concerning the provider's privileges. The MFC reviews the recommendations and determines what action to take on the provider's privileges based on all the facts. The MFC then gives written notification to the provider of his/her intent to take action, and identifies the proposed action to the provider. If the MFC's proposed action is to deny, limit, or revoke the provider's privileges, then the commander must advise the provider of his or her right to a hearing and appeal rights (Attachment 6). If the provider decides not request a hearing, then the MFC's proposed action becomes the final action in the case. The decision must then be communicated to the provider IAW paragraph 4.24. If the MFC does not act within 15 calendar days of receipt of the credentials function recommendations, then the recommendations are considered to be rejected and no action on the provider's privileges has occurred.

*Section 4B—Adverse Actions Hearing Procedures.*

**4.15. Provider Hearing Rights and Responsibilities:** The provider has 30 calendar days to request a hearing. If the provider requests a hearing, the chairperson of the credentials function gives the provider



744

written notice of the hearing within 3 duty days (attachment 9 and paragraph 4.16 below). The provider may request a delay in the hearing for good reason. The credentials function chairperson evaluates the request and determines whether or not to grant a delay. The credentials function chairperson promptly notifies the provider in writing of his/her decision, and the new date/time of the hearing, if changed. If the provider fails to appear at the hearing, or elects to waive the hearing by giving written notice to that effect, then the provider's hearing rights are waived and no hearing should be held. When a waiver occurs, the MFC acts on the provider's privileges as intended and communicates this action in writing to the provider. If the action is to deny, limit, or revoke privileges the provider must also be given notice of the right to appeal.

**4.16. Provider Notification of Hearing:** The provider must be given written notification and acknowledge receipt of the following (Attachment 9):

- Specific allegations that constitute grounds for the hearing, including dates and pertinent patient records.
- The time and location of the hearing which must be no sooner than 30 calendar days from the date of the notification. The date may be extended by the hearing committee chairperson for good cause.
- The right to be present, to present evidence, and to call witnesses (the provider must arrange for the presence of his or her witnesses).
- Names of witnesses to be called to testify at the hearing.
- The right to cross-examine these witnesses.
- The right have a military counsel appointed to assist the provider (if the provider is military) and the right to hire a civilian attorney at the provider's own expense.

**4.17. Hearing Committee Composition:** When a hearing is required, the credentials function chairperson may choose to either appoint a hearing committee, or to have all qualified voting members of the full credentials function act as the hearing committee. In either case, the committee will include at least three physicians, except as follows:

- For dentists, two dentists will be substituted for two physicians.
- For other non-physicians, one individual of the same discipline of the provider will be substituted for one physician.
- When reasonably possible, one physician should be of the same specialty as the provider.

**4.18. Assuring Impartiality of Review Personnel:** Privileges review is a function of professional peers. Personnel participating in the review must be able to impartially review the case. The personnel listed below should not ordinarily serve on a hearing committee of the described provider:

- Those members for whom the subject provider is the supervisor, to include the reporting official or endorsing official for performance reports.
- The individual who suspended the provider's privileges or who recommended the provider's discharge from active duty.
- A person who investigated the case.
- A person whose testimony plays a significant part in the case.



745

4.18.1. The MFC or chief of the medical staff may appoint persons to serve in the credentials review process as needed. If the MFC is the provider being evaluated, or is disqualified from acting in the case, HQ MAJCOM/SG can appoint a senior physician to act as the MFC for the case.

4.18.2. The judge advocate appoints a legal advisor (non-voting). The appointee may present evidence on behalf of the MTF.

**4.19. Hearing Proceedings:** Unless otherwise designated by the credentials function chairperson, the senior member of the committee should act as the chairperson. The committee must consult with legal counsel to review compliance with this section before conducting the hearing. These proceedings are not bound by formal rules of evidence or a strict procedural format. The chairperson may use the procedural guide in attachment 10 for the hearing. Its use is not mandatory and it confers no substantive rights on the provider being evaluated. The chairperson or the legal advisor shall administer oaths to hearing personnel and to witnesses. The chairperson will rule on challenges for cause after consulting with the legal advisor. The legal advisor will rule on a challenge for cause against the chairperson. The committee may question witnesses and examine documents, as necessary.

**4.20. Presentation of New Information at Hearing:** Additional information, not used in the original credentials function deliberations on the case, may be presented at the hearing. However, the provider must be informed of the additional information prior to the hearing and must be afforded reasonable time to review the information as well as access records upon which the additional information is based so that he/she may prepare to refute it.

**4.21. Hearing Committee Activities:** The hearing committee should review all the evidence presented, including matters presented by the provider. The results of concurrent or previous administrative or legal proceedings are not binding on the hearing committee. The chairperson, with the help of the legal advisor, should arrange for the orderly presentation of evidence. An investigating officer may present relevant documentary evidence and testimony before the hearing committee. The chairperson, who may consult with the legal advisor, should rule on any objections made by the provider or counsel. The committee should not review evidence or deliberate on patient care of providers other than the individual being evaluated at the hearing, except as may be relevant to establish the standard of care at the MTF. The committee makes a verbatim record of the proceedings. A court recorder can be very useful in these proceedings. The verbatim record of the proceedings should not include the deliberations of a hearing committee after the close of evidence.

**4.22. Hearing Committee Recommendations:** After the hearing, the committee should deliberate and determine, by majority vote, recommendations it wishes to make to the MFC. Minority reports are permitted. The standard of proof for findings and recommendations is that they must be based on the reasonable belief that the actions are warranted by the evidence. Support general statements by specifically identified incidents or situations. Tab as exhibits to the record any pertinent medical records. Recommendations are limited to the following:

- Reinstating privileges.
- Limiting privileges and setting terms of limitations such as requirements for consultation, and identifying specific deficiencies that require improvement.
- Revoking clinical privileges



746

- Denying regular privileges.

4.22.1. The Hearing record must be available within 30 days of the hearing. The hearing record, including findings and recommendation, is sent through the credentials function chairman to the MFC. The credentials function may provide separate comments or recommendations to the MFC but may not alter the recommendations of the hearing committee. The chairperson also gives a copy of all findings and recommendations (and, if requested, a copy of the hearing record) to the provider (Attachment 12).

**4.23. Provider Statement of Exceptions and Corrections:** The provider has 10 duty days after receiving the hearing committee's and credentials function's recommendations to prepare and submit a written statement of exceptions, corrections, or other matters that they want to present to the MFC. The MFC may extend this time for good cause.

**4.24. Commander's Decision and Provider Notification:** Within 10 calendar days of receiving the hearing recommendations and record, the MFC reviews the hearing record, findings, recommendations, and any other matters submitted, and makes a decision on the provider's privileges. If the MFC makes no decision within 15 calendar days, then it is considered a rejection of the hearing committee recommendations, and the commander's previous proposed action (paragraph 4.14.2) stands as the final decision in the case. The MFC must provide written notification to the provider within 3 calendar days of the date the decision becomes final (Attachment 13). If the decision includes limiting, denying, or revoking privileges, the decision notice must advise the provider of the right to appeal to HQ/SG through HQ AFMOA/SGPC. Regardless of whether or not the provider appeals, the MFC will send all documentation related to the action directly to HQ AFMOA/SGPC, with an information copy to HQ MAJCOM/SG. Arrange the record of proceedings according to attachment 11.

**4.25. Reporting of Final Privileging Actions:** The MFC reports credentials actions to HQ MAJCOM/SG and HQ AFMOA/SGPC using a DD Form 2499. The 2499 should be accompanied by the principle supporting documentation including specifics on the issue(s) prompting the review, provider notification(s) of credentials actions, provider notification(s) of rights under this guideline, and provider responses to actions. MFCs will also inform these offices of any change in status of the privilege action. Reports should be made when privilege are suspended, limited, denied, or revoked.

### *Section 4C—Appeal Procedures for Privileging Actions*

**4.26. Provider Responsibilities:** The provider may make a written appeal of final privileging decisions to HQ USAF/SG, through HQ AFMOA/SGPC.

4.26.1. The provider must send the appeal to HQ AFMOA/SGPC within 10 duty days of receiving notice of the MFC's decision. The time limit may be extended by HQ AFMOA/SGPC for good cause. The MFC's decision remains in effect during the appeal. A provider who fails to appeal the MFC's decision waives any further appeal rights.

**4.27. Appeals Review Process:** Appeals made to the HQ USAF/SG will be reviewed by the Legal Advisor to the Surgeon General who will provide comments on the legal and administrative aspects of the case. HQ AFMOA/SGPC will have a specialty consultant review the medical aspects of the action. The specialty consultant will present the case at the Air Force Medical Practice Review Board. Review of both



747

the medical and legal recommendations are completed and a final recommendation is made to HQ USAF/SG. HQ USAF/SG is the final authority for defining, granting, suspending, limiting, denying, or revoking clinical privileges.

**4.28. Provider Notification of Appeals Decisions:** After reviewing the case, HQ USAF/SG makes a decision on the provider's privileges, and notifies the provider and HQ MAJCOM/SG in writing. For those actions deemed reportable by DoD, HQ AFMOA/SGPC will notify national and state regulatory agencies, HQ AFMPC/DPAM, NGB/SG, HQ AFRES/SG and HQ ARPC/SG.

**4.29. Providers Ending Affiliation With the Air Force Medical Service or Per manently Changing Station (PCS) Within the Air Force While Under Review:** Providers who separate, retire, are discharged, end employment with the Air Force, or permanently change station within the Air Force during any phase of a privileges review action, may be reported to professional regulatory agencies. The provider may ask that the review be continued after the change in his/her status with the Air Force or MTF. If the provider chooses to have the review continued he/she must send a written request to the office having responsibility for the case within 10 duty days following his or her change in status. If a request for continuation is received by the MTF or HQ AFMOA/SGPC (as appropriate), report to regulatory agencies will not occur until the case is closed. The MFC must inform providers who choose to separate while under review of the implications of their actions and their right to request the review process be continued (attachment 15).

***Section 4D—Management of Professional Adverse Actions With Registered, Licensed or Certified, Nonprivileged Staff***

**4.30. Applicability:** This guidance applies to staff members who do not have clinical privileges, but who possess a license or hold a certification or registration required by this regulation, by other guidance, or by the MTF for practice. This may include pharmacists, clinical nurses (RN, LVN), EMTs, dental hygienists, etc. It may also include practitioners who may be privileged according to this regulation, but which the MTF has decided not to privilege (i.e. social workers doing discharge planning duties, etc.). It may also include providers in GME programs or other training programs who have not been awarded clinical privileges. Provisions in this regulation regarding clinical peer review may be followed for enlisted personnel but this is not mandatory. In these cases the clinical peer review findings would be forwarded to the senior enlisted advisor and squadron commander. Any further action would be managed by the squadron commander through personnel, administrative, and/or UCMJ channels. Consideration should be given to notification of the licensing, registering, or certification body when appropriate. Submit notifications through channels to HQ AFMOA/SGPC who has sole responsibility for reporting to outside agencies (see paragraph 4.45).

**4.31. Objectives:** The objectives of this process are as follows: (a) protect the patients; (b) protect the rights of the individual(s) in question (afford due process); (c) ensure timely resolution of the issues; (d) separate the professional actions and considerations from administrative/legal considerations; (e) define a methodology for identifying and resolving the professional issues that is consistent with a, b, & c above; and (f) allow timely reporting of staff members to professional regulatory agencies if required.

**4.32. Routine Management of Staff Member Performance:** Management of the performance of non-privileged staff members is the responsibility of the supervisor. The provisions of this regulation



748

are not intended to replace or diminish that responsibility. Rather, they are intended to provide a means of proceeding in those cases where the staff member's conduct, condition, or performance is so far at variance with accepted norms that permanent removal from all or a portion of the individual's patient care duties is a necessary consideration. The procedures for clinical peer review may be used at any time an unbiased, external review of a staff member's performance would be helpful to continued management.

**4.33. Action to Remove an Individual From Patient Care Duties:** When a licensed or certified, non-privileged, staff member's conduct, condition, or performance requires immediate action to protect the health or safety of patients, the flight chief in consultation with the senior corps representative of the staff member's corps in the MTF, and the individual's supervisor will decide and remove the individual from all or a portion of his or her patient care duties while an inquiry is made. Whenever such an action is in progress, revocation of permission to engage in off-duty employment and withholding of skill upgrades are appropriate additional actions.

**4.34. Notification of Removal From Patient Care:** The supervisor will give the individual written notification of the removal from patient care duties, as well as any additional actions within 3 duty days of the actual removal. The individual should endorse the notification letter. A copy of the notification, with the actions and the reasons for them, must be documented in the individual's competency assessment, or other performance documentation folder. Commander-directed medical evaluations should be considered if appropriate.

**4.35. Requirements for Clinical Peer Review:** Clinical peer reviews are convened to determine the extent of a staff member's professional problems and limitations, and make recommendations for continued management of the staff member's performance or, if necessary, his or her permanent removal from patient care responsibilities. When an officer or civilian employee is removed from patient care for reasons outlined in 4.33. above, a clinical peer review must be convened to determine the extent of the problems and to make recommendations for further action on the professional issues in the case. Note: the focus of the peer review is on quality of clinical care or professional conduct only, not leadership, other conduct, or behavior issues unless they directly effect the quality of care rendered by the individual under review. Generally, a clinical peer review may be appropriate at any point in the performance management process, but must be done if an individual is removed from patient care.

**4.36. Clinical Peer Review Procedures:** The clinical peer review should be convened within 10 duty days of the individual's removal by the senior corps representative on the group staff for the corps to which the individual under review belongs. If the individual is a civilian, then the peer review will be convened by the senior corps representative under which that profession would normally fall.

**4.37. Make-up of the Clinical Peer Review Function:** The clinical peer review function will be made up of at least three members. One may be a more senior member of the same corps as the person under review, but at least two must be peers of the individual who is the subject of the action. Individuals who may not sit on the clinical peer review function include senior corps representatives on the group staff; the department/section supervisor, flight chief, or OIC where the individual works; the individual's immediate supervisor; and the squadron commander of the squadron to which the individual is assigned. At least one peer should be engaged in the same type or similar practice as the individual who is the subject of the action. At least one peer should be a similar kind of employee (i.e. military, civil service, contract, etc.).



746

When possible, the majority should be a similar kind of employee. Peers should also be similar in rank and experience to the individual under review, if possible.

**4.38. Peer Review and Recommendations:** The clinical peer review function will review the information related to the professional issues in question and will recommend an action to the MFC. The staff member under review may make a statement on his or her behalf to the peer review function. The statement may be written or delivered in person. The peer review members may ask questions of the staff member but the staff member is not required to answer. The staff member is not allowed to have legal or other representation.

4.38.1. Clinical practice should be reviewed in light of current civilian and military standards. Only the following courses of action may be recommended: (1) return the individual to full duty; (2) return the individual to limited duty with supervision (specify limitations, specify time limit not to exceed 6 months, and outline a performance improvement plan, revisit issue at end of time specified); (3) change of duty assignment with or without supervision (if supervision is included then those provisions listed in (2) apply); (4) permanently removal of the individual from all or a portion of his or her patient care or service duties. The function will communicate their recommendations and rationale in writing, within 3 duty days, to the MFC through the senior corps representative. The senior corps representative, after reviewing the recommendations of the clinical peer review function, may make additional recommendations to MFC. These should be forwarded separately from those of the clinical peer review.

**4.39. Action on Clinical Peer Review Recommendations.** The MFC decides what action to take after reviewing all the recommendations. The MFC is not bound by the peer review's recommendations or those of the senior corps representative. The individual under review will be notified in writing of the commander's proposed action within 14 calendar days. HQ AFMOA/SGPC and the MAJCOM/SG will be notified of the decision using DD Form 2499, Health Care Provider Clinical Privileges Action Report. If the MFC fails to take action within 15 calendar days of the receipt of the clinical peer review recommendations, then it is considered a rejection of the clinical peer review recommendations and no action on the staff member's suitability for continued patient care duties has occurred.

**4.40. Hearing Rights:** If the proposed action includes permanent removal from patient care/service, or includes actions which may lead to a report to a state licensing board or other regulatory agency, then the officer or civilian employee must be notified of his or her right to a hearing. The individual under review has 30 calendar days in which to request a hearing. If no request is received in 30 calendar days, or the individual gives written notice waiving his or her right to a hearing, or the individual fails to show up for a scheduled hearing, then hearing rights are waived. The hearing may be provided by the same individuals who made the initial clinical peer review recommendation or by a new panel. If hearing rights are waived, then the decision of the MFC becomes final. However, the individual still retains the right to appeal the decision to HQ AFMOA/SGPC.

**4.41. Hearing Procedures:** The hearing should be organized by the senior corps representative and may be no sooner than 30 days from the date of letter notifying the staff member of the hearing date. Hearing procedures are similar to those for privileged providers in paragraph 4.19. through 4.22., except that the recommendations available to the hearing committee are the same as those for the clinical peer review (paragraph 4.38.1. above). The Hearing committee will listen to the testimony, consider all the information in the case, and make recommendations to the MFC.



150

**4.42. Staff member Statement of Exceptions and Corrections:** The staff member has 10 duty days after receiving the hearing panel's recommendations to prepare and submit a written statement of exceptions, corrections, or other matters that they want to present to the MFC. The MFC may extend this time for good cause.

**4.43. Final Decision of the MFC:** The MFC reviews all the information and determines the final action to take in the case. Once decided, the MFC will notify the individual in writing of the action taken.. If the MFC fails to take action within 15 calendar days of receipt of the hearing panel recommendations, then it is considered a rejection of the hearing panel recommendations, and the commander's previous proposed action (paragraph 4.39) becomes the final decision. The final decision must be communicated to the staff member in writing by the MFC within 3 calendar days of the date it becomes final.

**4.44. Appeal Rights:** If the action is a permanent removal or curtailment of patient care duties, the individual must also be notified of his or her right to appeal the decision to HQ AF/SG through HQ AFMOA/SGPC. The individual has 10 duty days from receipt of the MFC's notice to make a written appeal. The MFCs decision remains in force until the appeal is complete. Appeal procedures at HQ AFMOA/SGPC are the same as for privileged providers.

**4.45. MTF Documentation and Notification Requirements:** All actions will be documented in the individual's competency assessment folder or training/personnel folder (or equivalent), along with the supporting information. If action includes permanent removal from all or a portion of patient care or service duties, then the words, "permanently removed" should appear in all subsequent documentation. A DD Form 2499 must be updated and forwarded to HQ MAJCOM/SG and HQ AFMOA/SGPC indicating the final disposition of the case. Send supporting documentation for the action as well. Report and follow ongoing actions of this nature within ECOMS.

**4.46. HQ AFMOA/SGPC Notifications:** When all appeals have been heard and the Surgeon General has made a final decision in the case, HQ AFMOA/SGPC communicates the Surgeon General's decision to appropriate state agencies and certification agencies as well as to the individual, the MAJCOM, and the MFC.

**4.47. Management of Nonprivileged Personnel Following Clinical Peer Review Actions.**

4.47.1. Consider for separation or termination, all officers and civilian personnel who are permanently removed from performing the full scope of their duties, or whose conduct or mental state makes them unfit for patient care duties.

4.47.2. Manage personnel who engage in patient care or service, and are not licensed or certified, IAW applicable Air Force personnel directives and instructions.



751

FINDINGS OF PROFESSIONAL REVIEW COMMITTEE
(CREDENTIAL FUNCTION OR PEER REVIEW)

# TAB 9

**DEPARTMENT OF THE AIR FORCE**
**24TH MEDICAL OPERATIONS SQUADRON (ACC)**
**HOWARD AFB, PANAMA**

**25 November, 1998**

**Memorandum for 24th Medical Group Commander**
**(Col. Terrence Jay O'Neil)**

**Subject: Special Credentials Function**

1. Per direction from the Medical Operations Squadron Commander, LtCol Kenneth Remmington, and in accordance with AFI 44-119, Chapter 4, the Credentials Function met on 18 November 1998 at 1615 hours to review the credentials and privileges of Major (Dr.) Wilma Webster. This memo summarizes the discussion and recommendations of the function.

2. The function included seven credentialed providers, two Mental Health experts who had each evaluated Dr. Webster, the Nurse Exec/Acting MDOS Vice Commander as consultants, and the Credentials administrative expert as function recorder. I presented to the group that we were to decide on a credentialing action on Dr. Webster based on recent diagnoses and testimony of the Psychiatric experts concerning her level of function and ability to perform the tasks of an Emergency Room or Primary Care Physician. I clarified the decision options as follows:

A. No Action, the physician keeps her current privileges
B. Monitor & Evaluate, the physician is supervised for a period and performance assessed
C. Limit, specific privileges are revoked while others are allowed
D. Revoke all privileges

3. The three consultants gave pertinent information and were excused. The members of the function discussed the issues involved in the initial meeting and again after reconvening on 19 Nov 98. Every member was provided a copy of Dr. Webster's privilege lists for Emergency Room and for Primary Care during the second meeting. Each member reviewed the list and further discussion ensued.

6. In conclusion, the Credentials Function of the 24th Medical Group recommends by unanimous vote to revoke all Emergency Physician and Primary Care Physician privileges from Major(Dr.) Wilma Webster based on her diagnoses of progressive Multiple Sclerosis and Cognitive Disorder.

Edwin K. Burkett

Edwin K. Burkett, MD
Maj USAF, MC
Assosciate Chief of Clinical Services
Acting Chair, Credentials Function

Attachments

1. Minutes of Special Credentials Function to review Major Webster's privileges
2. Detailed Memo of meeting by function chair
3. Original Neurology Consult at WHMC, Sept 1998
4. MEB Narrative on Major Webster from WHMC Neurology Department, Nov 1998
5. Neuropsychology evaluation done at WHMC, Nov 1998
6. Memo from WHMC Psychologist to MMB Chairman at WHMC, 20 Nov 98
7. Sample letter for revocation of privileges from AFI 44-119
8. Completed DD Form 2499
9. Legal Review by 24th Staff Judge Advocate Office
10. AFI 44-119, Chapter 4: Adverse Actions