ORIGINAL

DEPARTMENT OF THE AIR FORCE
24TH Medical Group (ACC)
Howard AFB, Panama

MEMORANDUM FOR CREDENTIALS FUNCTION MEMBERS

FROM: SGH

SUBJECT: Minutes of the Credentials Function (Ad-Hoc)

1. PLACE: Bldg 192, Dental Conference Room

2. DATE & TIME: 18 Nov 98, 1630

3. ATTENDANCE:

a. Members present:

| | |
|---|---|
| Maj Edwin Burkett | Chairperson |
| Lt Col Scott Rodgers | BSC |
| Lt Col Robert Granville | MC |
| Lt Col David Gore | DC |
| Lt Col Santa Ngo | MC |
| Lt Col Wanda Velez-Bustos | NC |
| Maj Gerry Brower | MC |
| Capt Ian G. Haycock | MC |
| Capt Pat Phermsangngam | MC |

b. Guest:

| | |
|---|---|
| Maj Richard LaMacchia | BSC |
| Capt Gregory Fey | MC |

4. NEW BUSINESS:

a. The purpose of this Credentials Function is to determine if any or all clinical privileges of Maj (Dr) Wilma Webster should be modified.

b. A detailed discussion of Maj Webster's neurologist, psychologist and neuro-psycologist evaluations. Capt Fey, psychiatrist and Maj LaMacchia, psychologist gave their professional evaluations and explained in detailed the nature of the impairment. Lt Col Velez Bustos also commented on Maj Webster's personal, social, incidents and administrative actions that have occurred. The board then discussed the processes and final decision.

c. The meeting was adjourned at 1830 till 19 Nov at 1615 in Command Conference room.

**THIS DOCUMENT CONTAINS QUALITY ASSURANCE MATERIAL.
DATA WILL NOT BE FURTHER RELEASED UNDER PENALTIES OF USA 1102.***

755

5. 19 Nov, 1615 Command Conference Room.

a. Members present:

| | | |
|---|---|---|
| Lt Col Santa Ngo | MC | |
| Lt Col Scott Rodgers | BSC | |
| Lt Col David Gore | DC | |
| Lt Col Robert Granville | MC | |
| Lt Col Gerry Brower | MC | |
| Maj Edwin Burkett | MC | Chairperson |
| Capt Ian Haycock | MC | |
| Capt Pat Phermsangngam | MC | |

b. Members absent:

| | | |
|---|---|---|
| Lt Col Velez-Bustos | NC | Excused |

c. Maj Burkett reviewed Maj Webster credentials file, (school diploma, current licenses, internship) etc. Then reviewed her Emergency Medicine Privilege and Family Practice, Aerospace Medicine and Primary Care Privilege.

d. The members discussed in detail the content of their decision. Maj Burkett talked about what is the basis of the provider. Examples: can she take a history, apply the history to a physical exam reliably, can she take care of medical problem, pediatrics, prescribe correct medication dosage, CPR, ACLS response to Code intubation, procedures, minor surgery etc.

e. The credentials function may recommend one of the following:

Recommend privileges be reinstated or that no action be taken to limit or revoke the provider's privileges.

Recommend specific monitoring and evaluation (M&E) of the provider to the MFC, including the nature and duration of the M & E.

Recommend limiting clinical privileges.

Recommend revoking clinical privileges.

f. Her Family Practice, Primary Care and Aerospace Medicine privileges and Emergency Medicine privileges were reviewed thoroughly and voted separately.

g. Family Practice, Primary Care and Aerospace Medicine privileges,the members voted on the following:

No votes for no action.

No votes for limited privileges

No votes for monitoring and evaluation.

Seven (7) YES votes for revoking clinical privileges.

The credentials chairperson abstained from voting.

**THIS DOCUMENT CONTAINS QUALITY ASSURANCE MATERIAL.
DATA WILL NOT BE FURTHER RELEASED UNDER PENALTIES OF USA 1102.***

h. Emergency Medicine privileges the members voted on the following:
No votes for no action.
No votes for limited privileges
No votes for monitoring and evaluation.
Seven (7) YES votes for revoking clinical privileges.
The credentials chairperson abstained from voting.

i. The Chairperson discussed IAW 44-119, if the MDG/CC concur with the recommendations, Maj Webster has 30 calendar days after his decision to request a hearing. The credentials chairperson will give a written notice of the hearing within 3 duty days. She can request a delay in the hearir g with a good reason. She can have her lawyer, her witnesses, which she needs to arrange herself.

j. The conclusion: A DD Form 2499 (Health Care Provider Action Report) will be made completed. If the MDG/CC concur it will be send to HQ AFMOA/SGPC and HQ MAJCOM/SG, a written notification to Maj Webster will also be made.

6. RECOMMENDATION TO THE COMMANDER: The Credentials Function members by unanimous votes. Recommend revoking all clinical privileges for Maj (Dr) Wilma Webster.

7. The meeting was adjourned at 1700.

EDWIN K. BURKETT, MAJ, USAF, MC
Committee Chairperson

ELVIRA DE LEON
Recorder

1st Ind

TO: Commander

APPROVED/DISAPPROVED.

TERRENCE JAY O'NEIL, COL, USAF, MC
Commander

**THIS DOCUMENT CONTAINS QUALITY ASSURANCE MATERIAL.
DATA WILL NOT BE FURTHER RELEASED UNDER PENALTIES OF USA 1102.***

**DEPARTMENT OF THE AIR FORCE**
**24TH MEDICAL OPERATIONS SQUADRON (ACC)**
**HOWARD AFB, PANAMA**

**20 November, 1998**

**Memorandum for Record**

**Subject: Special Credentials Function**

1. Per direction from the Medical Operations Squadron Commander, LtCol Kenneth Remmington, and in accordance with AFI 44-119, Chapter 4, the Credentials Function met on 18 November 1998 at 1615 hours to review the credentials and privileges of Major (Dr.) Wilma Webster. This memo details the discussion and recommendations of the function.

2. Initially present at the meeting were seven credentialed providers form the 24th Medical as members of the Function, two Mental Health experts who had each evaluated Dr. Webster in the past, and the Nurse Exec/Acting MDOS Vice Commander as consultants, and the Credentials administrative expert as function recorder. I presented to the group that we were to decide on a credentialing action on Dr. Webster based on recent diagnoses and testimony of the Psychiatric experts concerning her level of function and ability to perform the tasks of an Emergency Room or Primary Care Physician. I clarified the decision options as follows:

A. No Action, the physician keeps her current privileges
B. Monitor & Evaluate, the physician is supervised for a period and performance assessed
C. Limit, specific privileges are revoked while others are allowed
D. Revoke all privileges

3. I stated that Dr. Webster had been administratively relieved from patient care in May and subsequently had a Command Directed Psych evaluation. The Mental Health experts then summarized her evaluations here at the 24th MDG and also at Wilford Hall Medical Center Neurology and Psychiatry, including a detailed Neuropsychology testing battery. They both concurred with the diagnoses and assessment of the Wilford Hall evaluations, which were consistent with their personal encounters and evaluations. The following diagnoses and prognoses were given:

A. Lab supported, Clinically definite Multiple Sclerosis. Worsening.
B. Cognitive Disorder, Not Otherwise specified. Her ability to function as an emergency Room or Primary Care Physician is significantly impaired. She has no insight into her dysfunction.

4. The three consultants were excused and the members of the function discussed the issues involved. The function decided to table the decision until they had a chance to review Dr. Webster's specific Privilege Lists, which were not available at this time. The meeting adjourned with the plan to reconvene the following day.

5. Credentials Function with the same seven members and myself as the Chair reconvened at 1530 hours on 19 November 1998. Every member was provided a copy of Dr. Webster's privilege lists for Emergency Room and for Primary Care. Each member reviewed the list and further discussion ensued. The copies were collected at the end of the meeting and shredded. I reminded the function again of the four choices available and said they would decide on each privilege list separately. A vote was called for and I went down each choice asking for a show of hands for concurrence. Here are the results:

ER Privileges

No Action = 0/7 votes
M&E= 0/7 votes
Limit = 0/7 votes
Revoke all = 7/7 votes

Primary Care Privileges

No Action = 0/7 votes
M&E= 0/7 votes
Limit = 0/7 votes
Revoke all = 7/7 votes

6. In conclusion, the Credentials Function of the 24th Medical Group recommends by unanimous vote to revoke all Emergency Physician and Primary Care Physician privileges from Major(Dr.) Wilma Webster based on her diagnoses of progressive Multiple Sclerosis and Cognitive Disorder. The Function concluded that the Neurologic, Psychiatric , and Neuropsychologic evaluations clearly show a poor prognosis, meaning her condition will likely worsen. In addition, the function concluded that her lack of insight into even the possibility of impairment makes her an exceptional danger to patients.

Edwin K. Burkett, MD
Maj USAF, MC
Assosciate Chief of Clinical Services
Acting Chair, Credentials Function

**DEPARTMENT OF THE AIR FORCE**
**24TH MEDICAL OPERATIONS SQUADRON (ACC)**
**HOWARD AFB, PANAMA**

**25 November, 1998**

**Memorandum for 24th Medical Group Commander**

**Subject: Special Credentials Function**

1. Today I conferred with Dr. David Houglum, the ACC SGH. I briefed him on the proceedings of the Credentials Function and the diagnoses of the provider in question. I informed him that the function voted to revoke all of her privileges. I asked him for advice on our actions to this point and how we should proceed given the guidance in AFI 44-119.

2. Dr. Houglum approved of our process so far and made the following points.

- Continue to follow AFI 44-119

- The Credentials Function should give the recommendations to the Medical Group Commander for action.

- When the Commanders decides on a course of action he then notifies the provider.

- The commander may notify the MEB Chair at WHMC as soon as he makes his decision.

-It was very important for us to consult with the legal office as we have already.

-He recommends that we have Legal review any notification letter before it is given to the provider.

- If our legal office seems to not have a handle on the medical aspects we can send items to him for review by the MAJCOM Medicolegal expert.

- In the event that a hearing is requested we may notify him if additional credentialed providers are needed to sit on the hearing board.

EDWIN K. BURKETT
MAJ USAF, MC
Associate Chief of Clinical Services

**DEPARTMENT OF THE AIR FORCE**
HEADQUARTERS 24TH WING (ACC)
HOWARD AIR FORCE BASE, PANAMA

24 November 1998

MEMORANDUM FOR 24 MDG/CC

FROM: JA

SUBJECT: Legal Review - Revoking Clinical Privileges

1. On 20 November 1998, 24 MDG/SGH (Major Edwin Burkett) asked this office for guidance concerning the correct procedures for revoking a physician's clinical privileges. The proper procedures are outlined in paragraph 3 below.

2. Facts:

a. Dr. (Major) Wilma P. Webster was diagnosed with Multiple Sclerosis in 1993. She was administratively relieved from her duties in providing patient care in May 1998. In July 1998, she was command directed to undergo a mental health evaluation and was subsequently medevaced to Wilford Hall. In October 1998, when on leave in Turkey, Dr. Webster suffered a relapse and was again sent to Wilford Hall for evaluation. At this time, the following diagnoses and prognoses were given: "clinically definite Multiple Sclerosis (worsening); and Cognitive Disorder, not otherwise specified."

b. On 18 and 19 November, 1998, the credentials function met in order to review Dr. Webster's background as well as her specific privilege lists. The committee has unanimously recommended that all of Dr. Webster's privileges (both ER and Primary Care) be revoked, based, in part, on her diagnoses of progressive Multiple Sclerosis and Cognitive Disorder.

3. Applicable Law: The procedures for revoking a physicians' clinical privileges are outlined in AFI 44-119, *Medical Service Clinical Quality Management*. Specifically, Chapter 4 details these procedures.

a. *Inquiry*: Paragraph 4.12 addresses inquiry procedures. Specifically, an investigating officer may be appointed to conduct any inquiry into the allegations of misconduct on the part of the provider. After completing the inquiry, the investigating officer (IO) sends a report through the credentials function. The report should include the IOs findings and recommendations, but is not binding on the credentials function. Paragraph 4.12.1 states that "[a]ny inquiry into any provider conduct which may adversely affect the privileges must begin within 15 duty days of the medical facility commander (MFC's) knowledge of the conduct."

b. *Credentials Function*: The purpose of the credentials function is to review the conclusions and recommendations resulting from the inquiry, and make a recommendation to the MFC for action with respect to the providers' privileges. The credentials function chairperson forwards the recommendations of the credentials function to the MFC (paragraph 4.14.2). Once this is accomplished, the MFC must give written notice to the provider of his intent to take action. If the MFC plans to revoke or limit the providers' privileges, 24 MDG/CC must advise the provider of her right to a hearing and of her appeal rights. If the MFC does not act within 15 calendar days of receipt of the credentials function recommendation, then the recommendations are considered to be rejected (see paragraph 4.14.2).

c. *The Hearing*: Once the MFC provides written notice to the provider of his intent to take action, the provider has 30 calendar days to request a hearing (paragraph 4.15). As per paragraph 4.16, the provider must be given written notification and acknowledge receipt of the following: specific allegations that constitute grounds for the hearing, including dates and pertinent patient records, the time and location of the hearing (this can be no sooner than 30 calendar days from the date of the notification), the right to be present, the right to present evidence and to call witnesses, the names of the witnesses to be called to testify at the hearing, the right to cross-examine these witnesses, the right to have military counsel appointed (defense counsel) to assist the provider (emphasis supplied), and the right to hire a civilian attorney at the provider's own expense. If the provider does request a hearing, the chairperson of the credentials function must give the provider written notice of the hearing date within 3 duty days of the request (paragraph 4.15).

(1) Composition of the hearing committee: The committee must include at least 3 physicians. A judge advocate should also attend as a non-voting member to present evidence on behalf of the medical treatment facility (MTF).

d. *Final Reporting Requirement*: Once the hearing committee has arrived at a decision, the MFC reports credentials actions to HQ ACC/SG and HQ AFMOA/SGPC using a DD Form 2499. Reports should be made when privileges are suspended, limited, denied or revoked (paragraph 4.25). This report must be sent within 3 duty days of the date of the hearing committee's decision.

4. Options: When you receive the report from the special credentials function and the DD Form 2499 you may, 1) accept the findings of the credentials function and begin the process of revoking Dr. Webster's privileges; 2) not accept the recommendations of the credentials function and allow Dr. Webster to retain her privileges; or 3) take some other course of action that you deem appropriate under the circumstances (limitation or suspension of privileges).

5. Recommendation: Whichever option you choose, recommend that you do not forward the DD Form 2499 at this time. In addition, recommend that you take whatever action is necessary within 15 calendar days of the date of the memorandum from the credentials function (20 November 1998).

6. If you have any questions or concerns, please feel free to contact me at 284-5354.

KATHERINE E. ELLSWORTH, Capt, USAF
Assistant Staff Judge Advocate

I concur.

Further, recommend that your credentials function thoroughly review AFI 44-119 when addressing such a serious matter as a revocation of privileges. A complete understanding of this instruction will prevent mistakes and ensure compliance with Air Force directives.

MATTHEW J. POLGAR, Lt Col, USAF
Staff Judge Advocate

Attachments:
1. Recommendation of Credentials Function
2. DD Form 2499
3. Sample Letter for Revocation of Privileges
4. Sample Letter for Notification of Hearing
5. Sample Letter for Notification of Credentials Function Recommendation
6. Sample Letter of Decision by Medical Facility Commander

cc:
24 MDG/SGH

DEPARTMENT OF THE FORCE
24TH MEDICAL OPERATIONS SQUADRON (ACC)
HOWARD AFB, PANAMA

25 November, 1998

**Memorandum for 24th Medical Group Commander**
**(Col. Terrence Jay O'Neil)**

**Subject: Special Credentials Function**

1. Per direction from the Medical Operations Squadron Commander, LtCol Kenneth Remmington, and in accordance with AFI 44-119, Chapter 4, the Credentials Function met on 18 November 1998 at 1615 hours to review the credentials and privileges of Major (Dr.) Wilma Webster. This memo summarizes the discussion and recommendations of the function.

2. The function included seven credentialed providers, two Mental Health experts who had each evaluated Dr. Webster, the Nurse Exec/Acting MDOS Vice Commander as consultants, and the Credentials administrative expert as function recorder. I presented to the group that we were to decide on a credentialing action on Dr. Webster based on recent diagnoses and testimony of the Psychiatric experts concerning her level of function and ability to perform the tasks of an Emergency Room or Primary Care Physician. I clarified the decision options as follows:

A. No Action, the physician keeps her current privileges
B. Monitor & Evaluate, the physician is supervised for a period and performance assessed
C. Limit, specific privileges are revoked while others are allowed
D. Revoke all privileges

3. The three consultants gave pertinent information and were excused. The members of the function discussed the issues involved in the initial meeting and again after reconvening on 19 Nov 98. Every member was provided a copy of Dr. Webster's privilege lists for Emergency Room and for Primary Care during the second meeting. Each member reviewed the list and further discussion ensued.

6. In conclusion, the Credentials Function of the 24th Medical Group recommends by unanimous vote to revoke all Emergency Physician and Primary Care Physician privileges from Major(Dr.) Wilma Webster based on her diagnoses of progressive Multiple Sclerosis and Cognitive Disorder.

Edwin K. Burkett

Edwin K. Burkett, MD
Maj USAF, MC
Associate Chief of Clinical Services
Acting Chair, Credentials Function

764



Hearing Exhibit

Attachments

1. Minutes of Special Credentials Function to review Major Webster's privileges
2. Detailed Memo of meeting by function chair
3. Original Neurology Consult at WHMC, Sept 1998
4. MEB Narrative on Major Webster from WHMC Neurology Department, Nov 1998
5. Neuropsychology evaluation done at WHMC, Nov 1998
6. Memo from WHMC Psychologist to MMB Chairman at WHMC, 20 Nov 98
7. Sample letter for revocation of privileges from AFI 44-119
8. Completed DD Form 2499
9. Legal Review by 24th Staff Judge Advocate Office
10. AFI 44-119, Chapter 4: Adverse Actions

DEPARTMENT OF THE AIR FORCE
24TH Medical Group (ACC)
Howard AFB, Panama

MEMORANDUM FOR CREDENTIALS FUNCTION MEMBERS

FROM: SGH

SUBJECT: Minutes of the Credentials Function (Ad-Hoc)

1. PLACE: Bldg 192, Dental Conference Room

2. DATE & TIME: 18 Nov 98, 1630

3. ATTENDANCE:

a. Members present:

| | |
|---|---|
| Maj Edwin Burkett | Chairperson |
| Lt Col Scott Rodgers | BSC |
| Lt Col Robert Granville | MC |
| Lt Col David Gore | DC |
| Lt Col Santa Ngo | MC |
| Lt Col Wanda Velez-Bustos | NC |
| Maj Gerry Brower | MC |
| Capt Ian G. Haycock | MC |
| Capt Pat Phermsangngam | MC |

b. Guest:

| | |
|---|---|
| Maj Richard LaMacchia | BSC |
| Capt Gregory Fey | MC |

4. NEW BUSINESS:

a. The purpose of this Credentials Function is to determine if any or all clinical privileges of Maj (Dr) Wilma Webster should be modified.

b. A detailed discussion of Maj Webster's neurologist, psychologist and neuro-psycologist evaluations. Capt Fey, psychiatrist and Maj LaMacchia, psychologist gave their professional evaluations and explained in detailed the nature of the impairment. Lt Col Velez Bustos also commented on Maj Webster's personal, social, incidents and administrative actions that have occurred. The board then discussed the processes and final decision.

c. The meeting was adjourned at 1830 till 19 Nov at 1615 in Command Conference room.

766

**THIS DOCUMENT CONTAINS QUALITY ASSURANCE MATERIAL.
DATA WILL NOT BE FURTHER RELEASED UNDER PENALTIES OF USA 1102 ***

5. 19 Nov, 1615 Command Conference Room.

a. Members present:

| | | |
|---|---|---|
| Lt Col Santa Ngo | MC | |
| Lt Col Scott Rodgers | BSC | |
| Lt Col David Gore | DC | |
| Lt Col Robert Granville | MC | |
| Lt Col Gerry Brower | MC | |
| Maj Edwin Burkett | MC | Chairperson |
| Capt Ian Haycock | MC | |
| Capt Pat Phermsangngam | MC | |

b. Members absent:

| | | |
|---|---|---|
| Lt Col Velez-Bustos | NC | Excused |

c. Maj Burkett reviewed Maj Webster credentials file, (school diploma, current licenses, internship) etc. Then reviewed her Emergency Medicine Privilege and Family Practice, Aerospace Medicine and Primary Care Privilege.

d. The members discussed in detail the content of their decision. Maj Burkett talked about what is the basis of the provider. Examples: can she take a history, apply the history to a physical exam reliably, can she take care of medical problem, pediatrics, prescribe correct medication dosage, CPR, ACLS response to Code intubation, procedures, minor surgery etc.

e. The credentials function may recommend one of the following:

Recommend privileges be reinstated or that no action be taken to limit or revoke the provider's privileges.

Recommend specific monitoring and evaluation (M&E) of the provider to the MFC, including the nature and duration of the M & E.

Recommend limiting clinical privileges.

Recommend revoking clinical privileges.

f. Her Family Practice, Primary Care and Aerospace Medicine privileges and Emergency Medicine privileges were reviewed thoroughly and voted separately.

g. Family Practice, Primary Care and Aerospace Medicine privileges the members voted on the following:

No votes for no action.

No votes for limited privileges

No votes for monitoring and evaluation.

Seven (7) YES votes for revoking clinical privileges.

The credentials chairperson abstained from voting.

767

**THIS DOCUMENT CONTAINS QUALITY ASSURANCE MATERIAL.
DATA WILL NOT BE FURTHER RELEASED UNDER PENALTIES OF USA 1102 ***

h. Emergency Medicine privileges the members voted on the following:
No votes for no action.
No votes for limited privileges.
No votes for monitoring and evaluation.
Seven (7) YES votes for revoking clinical privileges.
The credentials chairperson abstained from voting.

i. The Chairperson discussed IAW 44-119, if the MDG/CC concur with the recommendations, Maj Webster has 30 calendar days after his decision to request a hearing. The credentials chairperson will give a written notice of the hearing within 3 duty days. She can request a delay in the hearing with a good reason. She can have her lawyer, her witnesses, which she needs to arrange herself.

j. The conclusion: A DD Form 2499 (Health Care Provider Action Report) will be made completed. If the MDG/CC concur it will be send to HQ AFMOA/SGPC and HQ MAJCOM/SG, a written notification to Maj Webster will also be made.

6. RECOMMENDATION TO THE COMMANDER: The Credentials Function members by unanimous votes. Recommend revoking all clinical privileges for Maj (Dr) Wilma Webster.

7. The meeting was adjourned at 1700.

EDWIN K. BURKETT, MAJ, USAF, MC
Committee Chairperson

ELVIRA DE LEON
Recorder

1st Ind

TO: Commander

APPROVED/DISAPPROVED.

TERRENCE JAY O'NEIL, COL, USAF, MC
Commander

**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS 24TH MEDICAL GROUP (ACC)**
**HOWARD AFB, PANAMA**

3 December 1998

MEMORANDUM FOR: Maj Wilma P. Webster

FROM: 24MDG/CC (Col O'Neil)

SUBJECT: Advisement of Availability of Area Defense Counsel

1. This is to advise you that the services of the Area Defense Counsel are available for legal consultation on issues including matters of credentialing. The individual who advises for this geographic area is Capt Scott Harding, Area Defense Counsel Office, Patrick AFB, Florida. He can be reached at DSN 8-312-854-4423, or 4424. His 'fax' number is extension 4425.

2. This information is furnished for your consideration only, and does not constitute a directive to consult Capt Harding.

TERRENCE JAY O'NEIL, Col USAF, MC
Commander

1st Indorsement: Major Wilma P. Webster, USAF, MC

TO: 24MDG/CC (Col O'Neil)

I acknowledge receipt.

Wilma P. Webster 09 DEC

WILMA P. WEBSTER, Maj, USAF, MC

Hearing Exhibit 2



769

**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS 24TH MEDICAL GROUP (ACC)**
**HOWARD AFB, PANAMA**

3 December 1998

MEMORANDUM FOR: Major Wilma P. Webster

FROM: 24MDG/CC (Col O'Neil)

SUBJECT: Notice of Proposed Revocation of Privileges

1. The Credentials Function of the 24th Medical Group has recommended to me to revoke your clinical privileges as Emergency Physician and Primary Care Physician. I have considered their recommendation and have decided to act as they recommend.

2. The reasons for this action by me are as follows:

a. While in the Emergency Room and in Primary Care Clinic your labile emotional state caused several patients to lose confidence in your ability to treat them.

b. You performed in a forgetful and disorganized manner on several occasions and there were documented incidents of you dispensing incorrect medication to patients.

c. In a witnessed cardiac arrest response you stated you were physically incapable of performing an endotracheal intubation due to left wrist weakness. Although the weakness was transient, and attributed to carpal tunnel syndrome at the time, you subsequently stated to me that you had mis-represented the incident and that your left wrist was not, in fact, weak. This conflict of claimed facts over a critical and basic part of your expected duties led me to lose confidence in your insight and truthfulness regarding your capabilities.

d. You had one acute episode of disabling weakness attributed to an immunologically-mediated neurological condition. Although transient, the incident described in "c" above leads me to question whether you would fully and truthfully disclose a more limited episode in the future which impinged on your ability to safely conduct essential parts of your duties as an Emergency Room Physician or Primary Care Physician.

e. You have undergone a full Neurology and Neuropsychiatry evaluation, with some parts of that evaluation repeated at three different institutions. The result of that evaluation has revealed that you have a chronic, progressive de-myelinating neurologic disease with significant cognitive and behavioral damage. You have demonstrated fluctuating neurological status over the past year, and the expert opinion of the medical team which has evaluated you leads me to believe that you will suffer from temporally- and physiologically-varying future involvement of motor strength, cognition, and judgement. Additionally, that medical team has determined that you demonstrate neither acceptance of nor insight into that disease process, and this may lead you to deny or ignore impairment which would interfere with your safely accomplishing critical tasks involved in your primary clinical duties. This could seriously endanger patient safety in either your Emergency Medicine or Primary Care Medicine duties.

f. You have on two occasions made statements in a public setting, witnessed by several persons, that indicate you have thought about or contemplated acts of violence against persons in the Hospital, and against an aeromedical evacuation aircraft. Regardless of whether you meant to carry out the actions implied by these statements, the nature of your making them and the setting you made them in create grave doubts about your judgement, insight, and impulse control in the clinical settings of the Emergency Room and Primary Care Clinic, where you may be under intense pressure and liable to great frustration in dealing with patients and illness situations.

3. You are advised that you have the right, upon request, to have a credentials hearing committee review this action. To have this hearing, you must make a written request to me within 30 days from the date you receive this notification. If you fail to ask within that time, or if you fail to appear at a hearing so requested, you waive your rights to the hearing. If you waive your rights to a hearing, you may still exercise your right to appeal this decision to HQ AFMOA/SGPC.

4. Depending on the outcome of this action, HQ AFMOA/SGPC may report the matter to appropriate professional regulatory agencies. I strongly recommend that you consult AFI 44-119, chapter 4, for information on the specific procedures involved with this action and your rights.

5. You are required to acknowledge receipt by signature below. Your acknowledgement of receipt does not constitute your acceptance of the action, only that you have received notification of the proposed action. You are entitled to a copy of this notification.

TERRENCE JAY O'NEIL, Col USAF, MC
Commander

1st Indorsement: Major Wilma P. Webster, USAF, MC

TO: 24MDG/CC (Col O'Neil)
Chairperson, Credentials Function

I acknowledge receipt.

09 DEC

WILMA P. WEBSTER, Maj, USAF, MC

EPARTMENT OF THE AIR FOR
USAF JUDICIARY AREA DEFENSE COUNSEL
PATRICK AIR FORCE BASE FLORIDA 32925-3238

21 December 98

MEMORANDUM FOR 24 MDG/CC

FROM: AFLSA/ADC
1201 Edward H. White II St., Ste. N-110
Patrick AFB, Florida 32925

SUBJECT: Request for Hearing

1. My client acknowledged receipt of the notice of proposed revocation of privileges dated 3 December 98 on 9 December 98. By and through counsel and in accordance with the rights enumerated in Chapter 4 of Air Force Instruction 44-119, dated 1 October 1995, Major Wilma Webster hereby respectfully requests a hearing to review the proposed action.

2. I can be contacted at DSN 854-4423 and the fax number is DSN 854-4425.

SCOTT E. HARDING, Capt, USAF
Area Defense Counsel

WILMA P.WEBSTER, MAJ USAF MC

HEaring Exhibit 4

777

DEPARTMENT OF THE AI... ORCE
24TH MEDICAL OPERATIONS SQUADRON (ACC)
HOWARD AFB, PANAMA

**7 January, 1999**

**MEMORANDUM FOR Wilma Webster, Major USAF, MC:**

**FROM: 24th MDG/SGH (Major Edwin K. Burkett)**

**SUBJECT: Notification of Privileges Hearing**

1. The credentials hearing committee will conduct a hearing that may adversely affect your clinical privileges. Depending on the final outcome, HQ AFMOA/SGPC may report the matter to appropriate civilian regulatory agencies. I refer you to AFI 44-119, chapter 4 for discussion of your rights and responsibilities in this matter. Information on what specific matters are reported to civilian regulatory agencies may be found in the same regulation, chapter 4 and 6.

2. Allegations being investigated are:

A. That you suffer from a chronic, progressive demyelinating disease (Multiple Sclerosis) with significant cognitive and behavioral damage that makes you unable to safely conduct patient care. Also that you lack acceptance or insight into the disease and this compounds your risk to quality patient care. The bases for these allegations are as follows:

1) You underwent a Command Directed Psychologic Evaluation dated 14 July 1998 at the 24th Medical Group, Panama conducted by Major Richard La Macchia which concluded that you:

-Had consistently poor motor skills performance, particularly under pressure.

- Possible aspects of a Cognitive Disorder evidenced by neurospychologic deficits consistent with diffuse brain dysfunction

-Functional impairment that would prevent you from performing at or above the standard of care required for an ER physician

- Lack of awareness of any of your deficits

2) According to a discharge summary dated 18 October 1998 you were admitted to a Turkish Hospital for an acute disabling weakness attributed to an immunologically mediated mechanism. Dr. Emil Goldenberg and Dr. Hayim Babur stated that you had:

- Acute Guillain-Barre

- This led to your admission and Neurology workup at Wilford Hall Medical Center

3) On 4 August 1998 a narrative summary was completed from your neuropsychologic evaluation at Wilford Hall Medical Center, San Antonio, Texas conducted by Lt. Col. Brian Campbell that concluded that you have:

- Cognitive Disorder, not otherwise specified

- Personality change due to Multiple Sclerosis

- Antisocial, histrionic, and narcissistic personality traits

Hearing Exhibit 5

4) On 7 November 1998 a narrative summary was completed from your Neurology evaluation at Wilford Hall Medical Center (WHMC), San Antonio, Texas was by Dr. Richard Popwell and Dr. Gary Gronseth and you were diagnosed as having:

- Laboratory supported, clinically-definite Multiple Sclerosis (MS)
- Had an acute inflammatory demyelinating polyneuropathy (AIDP)

The narrative states that there is a long-term functional impact because, whether this presentation was AIDP or an MS exacerbation, similar attacks in the future could occur and once again debilitate you.

5) On 20 November 1998 from Lt. Col Brian Campbell wrote a memorandum to Dr. Jack Saylor, MMB concerning your Social and Industrial Impairment Ratings. He stated that:

- "Her difficulties lead to marked military impairment and disqualify her for worldwide duty. I would rate her social and industrial impairment as severe. Although she may be employable, I doubt that she can continue with her practice of medicine safely and competently"

B. On 5 different occasions you have demonstrated labile emotional, behavioral, and personality traits in front of patients that have caused patients to lose confidence in your ability to treat them.

1) According to a patient complaint dated 11-12-97 Samantha Houston says that, "Dr. Webster was very, very forgetful and (I was) waiting in the emergency room from 3:30PM to 11:30pm."

2) A patient complaint submitted by Brian Denmark states that you gave him poor service and that "The provider was unwilling to listen to what I was saying." You "refused" to renew a prescription he had been taking for 10 years.

3) Another patient complaint dated 27 Oct 1997 by Kenneth R. Teel states that " Dr. Webster was absent minded"

4) A memorandum dated 7 February 1998 from patient SGT John Silbaugh says that during his appointment you began to cry. This made him nervous and when he asked you what was wrong you said, " I hate this job." He stated that you also said that the work you were doing could put you in jail.

5) A memo dated 6 May 1998 from patient Michelle Schroder describes an ER encounter. She complained of knee pain but says you told her that her XRAYS were fine and there was nothing wrong with her knee. She says she saw Orthopedics a few days later and was told she had a torn meniscus, and was scheduled for arthroscopic surgery. She says, "I was extremely disappointed with the service and care provided by Maj. Webster, especially when she told me nothing was wrong with my knee. I would not feel very confident if a life threatening emergency occurred while she was the attending Emergency Physician."

C. You have demonstrated poor insight and impulse control evidenced by emotional outbursts and inappropriate statements in public locations including contemplation of acts of violence against persons, and against an aeromedical evacuation aircraft.

1) On 29 January 1998 you responded in an angry, loud, and unprofessional manner when you were instructed that you had scheduled patients checking in and should not go out to eat for