National Practitioner Data Bank
Healthcare Integrity and Protection Data Bank
P.O. Box 10832
Chantilly, VA 20153-0832

www.npdb-hipdb.com

DCN# 5500000015888312
Process Date: 01/14/2000, 16:46
Page: 1 of 1

# SENSITIVE INFORMATION ENCLOSED

**To:** AFMOA SGOC
110 LUKE AVENUE, ROOM 405

BOLLING AFB, DC 20332-7050

**From:** **National Practitioner Data Bank**

**Re:** **Report Verification**

Enclosed is a copy of a report that you recently submitted to the National Practitioner Data Bank (NPDB). Based on the information in your submission, this report will be maintained under the provisions of Title IV of Public Law 99-660, as amended. Entities and individuals who submit information to the NPDB are legally responsible for the accuracy of such information. To ensure that the information you submitted is accurate and complete, it is strongly recommended that you review the content of the enclosed report. Submit any corrections to the NPDB and, if required, to the appropriate State licensing board as quickly as possible to preclude the possible legal consequences resulting from the disclosure of inaccurate information. If, on review of the enclosed report, you conclude that the report was submitted erroneously (e.g., identifies the wrong subject, reported an incident which is not reportable to the NPDB, etc.), you must "VOID" the report immediately.

If the information contained in the enclosed report is accurate and complete to the best of your knowledge, no further action is necessary. You may either destroy the attached report or file it in a secure place as a record of your submission. You are responsible for maintaining the confidentiality of information from the NPDB, which may only be used for the purposes for which it was disclosed.

To submit a correction to this report, or to void this report (i.e., purge it in its entirety from the Data Bank(s) listed above), you must:

(1) Log onto the NPDB-HIPDB web site.
(2) Select the Report option, and select "Correction" or "Void" for the type of report.
(3) Provide the DCN that appears in the upper right-hand corner of this document when prompted for the existing report number.
(4) Enter the corrected report information, if applicable.
(5) Submit the report electronically.

National Practitioner Data Bank
Healthcare Integrity and Protection Data Bank
P.O. Box 10832
Chantilly, VA 20153-0832

www.npdb-hipdb.com

DCN# 5500000015888312
Process Date: 01/14/2000
Page: 1 of 4

For authorized use by:
AFMOA SGOC

# ADVERSE ACTION REPORT

## CLINICAL PRIVILEGES ACTION

**Report #** 5500000015888312

**This report is maintained in :** [X] **The National Practitioner Data Bank**
[ ] **The Healthcare Integrity and Protection Data Bank**

The information contained in this report is maintained by the National Practitioner Data Bank, for restricted use under the provisions of Title IV of Public Law 99-660, as amended, and 45 CFR Part 60. All information is confidential and may be used only for the purpose for which it was disclosed. For additional information or clarification, contact the reporting entity identified in Section A.

**A. REPORTING ENTITY IDENTIFICATION**

Entity Name: AFMOA SGOC
Address: 110 LUKE AVENUE, ROOM 405
BOLLING AFB, DC 20332-7050
Telephone: (202)767-4140

Authorized Agent:
Agent Phone:

Authorized Submitter's Name: MOLLY J. HALL, COL, USAF
Authorized Submitter's Title: CHIEF, CLINICAL QUALITY MANAGEMENT DIVIS

**B. SUBJECT IDENTIFICATION INFORMATION (INDIVIDUAL)**

Name: WEBSTER, WILMA P

Other Name Used:

Gender: FEMALE

Organization Name: 24TH MEDICAL GROUP
Address: 2501 CAPEHART ROAD
OFFUTT AFB, NE 68113-2160

Home Address:

Social Security Number(s): 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

Date of Birth: 07/06/1941

Deceased:

School(s) & Year(s) of Graduation: UNIVERSIDAD NACIONAL AUTONOMA DE MEXICO (1979)

National Practitioner Data Bank
Healthcare Integrity and Protection Data Bank
P.O. Box 10832
Chantilly, VA 20153-0832

www.npdb-hipdb.com

DCN# 5500000015888312
Process Date: 01/14/2000


For authorized use by:
AFMOA SGOC

| | |
|---|---|
| Occupation/Field of Licensure (Code): | ALLOPATHIC PHYSICIANS (MD) (010) |
| License #, State: | CFE 42836 CA |
| Occupation/Field of Licensure (Code): | ALLOPATHIC PHYSICIANS (MD) (010) |
| License #, State: | 4301044199 MI |
| Occupation/Field of Licensure (Code): | ALLOPATHIC PHYSICIANS (MD) (010) |
| License #, State: | MD032126-E PA |
| Occupation/Field of Licensure (Code): | ALLOPATHIC PHYSICIANS (MD) (010) |
| License #, State: | 26210 WI |
| Drug Enforcement Administration(DEA)(s): | |

## C. INFORMATION REPORTED

| | |
|---|---|
| Date of the Report: | 01/14/2000 |
| Report Type: | INITIAL REPORT |
| Type of Action Taken: | CLINICAL PRIVILEGES (C) |
| Action Classification: | CLINIC PRIV REVOKED: PHYSICAL IMPAIRMENT (61080) |
| Date of the Action: | 03/24/1999 |
| Length of Action: | PERMANENT |
| Effective Date: | 12/12/1999 |

***Reporter's Description of Action:***

DR. WILMA WEBSTER'S CLINICAL PRIVILEGES IN EMERGENCY MEDICINE WERE REVOKED FOR A MEDICAL CONDITION THAT COULD IMPACT HER ABILITY TO RENDER PATIENT CARE. DIAGNOSED WITH A COGNITIVE DISORDER THAT IMPARIS HER ABILITY TO MANAGE MULTIPLE COMPLEX TASKS SIMULTANEOUSLY. THE EMERGENCY ROOM ENVIRONMENT WAS CONSIDERED TOO HIGH RISK. IN ADDITION, HER PRIVILEGES IN FAMILY PRACTICE MEDICINE WERE RESTRICTED TO 100% SUPERVISION.

## D. SUBJECT STATEMENT

If the subject identified in Section B of this report has submitted a statement, the unedited statement appears in this section.

Date Submitted: 02/07/2000

PLEASE BE ADVISED THAT I REPRESENT DR. WILMA WEBSTER REGARDING THE ABOVE REFERENCED MATTER. SHE HAS ASKED ME TO RESPOND TO THE ABOVE REFERENCED REPORT BY THE AIR FORCE. DR. WEBSTER VEHEMENTLY CONTESTS THE ACTIONS OF THE AIR FORCE IN BOTH REVOKING HER EMERGENCY ROOM PRIVILEGES AND IN PLACING A REQUIREMENT OF 100% SUPERVISION OVER HER PRIVILEGES IN FAMILY PRACTICE MEDICINE. THE REPORT THAT DR. WEBSTER SUFFERES WITH A COGNITIVE DISORDER THAT IMPAIRS HER ABILITY TO MANAGE MULTIPLE COMPLEX TASKS SIMULTANEOUSLY IS SIMPLY NOT TRUE. THE USAF PHYSICAL EVALUATION BOARD REJECTED THIS CONTENTION WHEN

National Practitioner Data Bank
Healthcare Integrity and Protection Data Bank
P.O. Box 10832
Chantilly, VA 20153-0832

www.npdb-hipdb.com



For authorized use by:
AFMOA SGOC

THEY FOUND HER FIT FOR ACTIVE DUTY AND RETURNED HER TO DUTY. THE THREE PHYSICIANS WHO SAT ON DR. WEBSTER'S CREDENTIAL'S BOARD IGNORED THAT FINDING, AND DESPITE HAVING NOT EVEN A SCINTILLA OF EVIDENCE TO DOCUMENT POOR CARE, USED THE SAME EVIDENCE PRESENTED TO THE USAF PHYSICAL EVALUATION BOARD TO REACH THE EXACT OPPOSITE CONCLUSION. IN A CREDENTIAL'S HEARING THAT LASTED TWO DAYS, INVOLVED THE TESTIMONY OF 21 WITNESSES AND 64 EXHIBITS, AND CONSUMED 339 PAGES OF TRANSCRIPT, THE AIR FORCE FAILED TO PRODUCE ONE PATIENT CHART THAT DOCUMENTED THAT DR. WEBSTER HAD PRACTICED MEDICINE BELOW THE STANDARD OF CARE. IN FACT, THERE WAS UNANIMOUS AGREEMENT AMONG THE PHYSICIANS WHO OBSERVED HER PRACTICE AND REVIEWED HER RECORDS THAT SHE PRACTICED GOOD MEDICINE AND WAS A COMPETENT PRACTITIONER. DR. WEBSTER PRODUCED SIXTEEN WITNESSES, CONSISTING OF ALL OF HER FELLOW EMERGENCY ROOM PHYSICIANS, PHYSICIAN ASSISTANTS, MEDICAL TECHNICIANS AND PATIENTS, THROUGH LIVE TESTIMONY (10) AND BY AFFIDAVIT (6) THAT ATTESTED TO HER SKILLS AS AN EMERGENCY ROOM PHYSICIAN. FURTHER, TO BIAS THIS PROCESS, THE AIR FORCE WITHHELD VITAL INFORMATION IN THE FORM OF CODE BLUE RECORDS AND STACKED THE BOARD WITH AT LEAST ONE PHYSICIAN WHO WAS BIASED IN FAVOR OF DR. WEBSTER'S CHIEF ACCUSER. ANOTHER MEMBER OF THE BOARD IGNORED THE INSTRUCTIONS OF THE LEGAL ADVISOR AND CONDUCTED HIS OWN INVESTIGATION OF EVIDENCE OUTSIDE THE HEARIN

**E. REPORT STATUS**

An 'X' indicates that the information in this report has been

[X] Disputed by the subject identified in section B.

[ ] Elevated for decision by the Secretary of the U.S. Department of Health and Human Services

[ ] Reviewed by the Secretary of the U.S. Department of Health and Human Services, who has made the following comment concerning the report:

Date of Initial Report: 01/14/2000

Date of Most Recent Change: 01/14/2000

CONFIDENTIAL DOCUMENT – FOR AUTHORIZED USE ONLY

**

**

999

**National Practitioner Data Bank**
**Healthcare Integrity and Protection Data Bank**
P.O. Box 10832
Chantilly, VA 20153-0832

**www.npdb-hipdb.com**

**DCN# 5500000015888312**
Process Date: 01/14/2000
Page: 4 of 4

For authorized use by:
AFMOA SGOC

**END OF REPORT**

# Documentation on Major Wilma P. Webster

| TYPE | FROM | TO | DATE | CAT | SUBJECT |
|---|---|---|---|---|---|
| MEMO | ADDISON | WEBSTER | 5-Nov-97 | B/P | ADDITIONAL DUTY ASSIGNMENT |
| E-MAIL | ROBBINS | WEBSTER | 12-Nov-97 | B/P | PHONE NUMBER ON CONSULT |
| MEMO | MCCRARY | RECORD | 30-Nov-97 | B/P | COUNSELING SESSION |
| E-MAIL | WEBSTER | ADDISON | 29-Jan-98 | B/P | SCOPES OF CARE |
| MEMO | WEBSTER | ADDISON | 29-Jan-98 | B/P | FIRST DAY IN PRIMARY CARE |
| MEMO | BURKETT | RECORD | 30-Jan-98 | B/P | MAJOR (DOCTOR) WILMA WEBSTER OUTBURST ON 29 JAN 98 |
| MEMO | BURKETT | RECORD | 31-Jan-98 | B/P | CODE BLUE ON 24 JAN 98 |
| MEMO | MENDEZ | WEBSTER | 4-Feb-98 | B/P | LETTER OF COUNSELING |
| MEMO | O'NEIL | RECORD | 5-Feb-98 | B/P | INTERVIEW WITH MAJOR WEBSTER |
| MEMO | O'NEIL | RECORD | 6-Feb-98 | B/P | ISSUES SURRONDING COMPLAINT BY MAJOR WEBSTER |
| MEMO | WEBSTER | O'NEIL | 8-Feb-98 | B/P | REASONS I SHOULD HAVE BEEN GIVEN DICTATORSHIP OF ER |
| E-MAIL | ADDISON | WEBSTER | 10-Feb-98 | B/P | MAKING THAT E-MAIL OFFICIAL |
| MEMO | WEBSTER | MENDEZ | 10-Feb-98 | B/P | RESPONSE TO YOUR LETTER OF COUNSELING |
| MEMO | ADDISON | RECORD | 12-Feb-98 | B/P | REPLY TO MAJOR WEBSTER'S REBUTTAL TO LOC |
| MEMO | ADDISON | WEBSTER | 23-Mar-98 | B/P | EVENTS LEADING UP TO YOUR REMOVAL FROM ER |
| MEMO | WEBSTER | ADDISON | 5-Apr-98 | B/P | RESPONSE TO YOUR LETTER OF 23 MAR 98 |
| MEMO | RODRIGUEZ | MENDEZ | 6-Apr-98 | B/P | AIRWAY MANAGEMENT EVALUATION |
| E-MAIL | MENDEZ | DELEON | 7-Apr-98 | B/P | DOCTOR WEBSTER INTUBATION OBSERVATION |
| E-MAIL | ANGELERO | MENDEZ | 14-Apr-98 | B/P | DOCTOR WEBSTER INTUBATION OBSERVATION |
| MEMO | MENDEZ | RECORD | 15-Apr-98 | B/P | MAJOR WILMA WEBSTER AIRWAY MANAGEMENT CAPABILITIES |
| E-MAIL | ADDISON | O'NEIL | 19-Apr-98 | B/P | RESPONSE TO YOUR LAST LETTER |
| FORM | | | 20-Apr-98 | B/P | MEDICAL TREATMENT FACILITY INCIDENT STATEMENT |
| NOTE | SHERCLIFFE | RECORD | 25-Apr-98 | B/P | DOCTOR WEBSTER |
| MEMO | BROOK | ADDISON | 8-May-98 | B/P | PATIENT DANIEL CARLSON |
| MEMO | ARIAS | TUER | 14-May-98 | B/P | EMERGENCY ROOM TREATMENT- PATIENT MARY COPESKY, D/W USAF |
| NOTE | SHERCLIFFE | RECORD | 19-May-98 | B/P | ANOTHER INTERESTING CONVERSATION WITH DOCTOR WEBSTER |
| MEMO | MCCRARY | RECORD | 20-May-98 | B/P | MAJOR WILMA P. WEBSTER/ UNSATISFACTORY PERFORMANCE AS ER PROVIDER |
| MEMO | O'NEIL | WEBSTER | 22-May-98 | B/P | RELIEF FROM EMERGENCY ROOM DUTIES DUE TO PERFORMANCE |
| MEMO | O'NEIL | RECORD | 26-May-98 | B/P | MAJOR WEBSTER'S RESPONSE TO MY LETTER OF 21 MAY 98 |
| MEMO | O'NEIL | WEBSTER | 31-May-98 | B/P | YOUR LETTER OF 29 MAY 98, RELIEF FROM EMERGENCY ROOM DUTIES |
| NOTE | O'NEIL | ADDISON | 31-May-98 | B/P | LEFT WITHOUT BEING SEEN DATA |
| NOTE | O'NEIL | ADDISON | 6-Jun-98 | B/P | LEFT WITHOUT BEING SEEN DATA |
| MEMO | WEBSTER | O'NEIL | 12-Jun-98 | B/P | MAJOR JAMES MCCRARY |

1001

# Documentation on Major Wilma P. Webster

| TYPE | FROM | TO | DATE | CAT | SUBJECT |
|---|---|---|---|---|---|
| NOTE | O'NEIL | ADDISON | 12-Jun-98 | B/P | MAJOR JAMES MCCRARY |
| MEMO | MCCRARY | O'NEIL | 22-Jun-98 | B/P | REPLY TO MAJOR WILMA WEBSTER |
| MEMO | ADDISON | O'NEIL | 23-Jun-98 | B/P | RESPONSE TO DOCTOR WEBSTER'S CONCERNS REGARDING DR. MCCRARY |
| MEMO | O'NEIL | RECORD | 24-Jun-98 | B/P | REVIEW OF DOCUMENTATION REGARDING DR. WEBSTER AND DR MCCRARY |
| MEMO | ADDISON | WEBSTER | 30-Jun-98 | B/P | STATUS OF YOUR DUTIES |
| E-MAIL | ADDISON | WEBSTER | 11-Aug-98 | B/P | TDY |
| MEMO | CALLENDER | RECORD | 16-Sep-98 | B/P | OFFICER'S PECULIAR BEHAVIOR |
| MEMO | O'NEIL | RECORD | 16-Sep-98 | B/P | SERIOUS THREATS / FANTASIES REPORTED CONCERNING MAJOR WILMA WEBSTER |
| MEMO | O'NEIL | RECORD | 17-Sep-98 | B/P | FOLLOW UP ON ISSUES SURROUNDING THREAT MADE BY MAJOR WEBSTER ON AEROVAC |
| MEMO | GOODE | RECORD | 17-Sep-98 | B/P | WILMA WEBSTER, MAJOR, USAF |
| FORM | GEORGESCO | RECORD | 17-Sep-98 | B/P | AEROMEDICAL EVACUATION PATIENT RECORD |
| MEMO | ROBBINS | WHOMEVER | 21-Sep-98 | B/P | COUNSELING OF MAJOR (DOCTOR) WILMA WEBSTER |
| MEMO | REMINGTON | MEB | 10-Oct-98 | B/P | MAJOR WILMA P. WEBSTER, USAF, MC, 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 |
| MEMO | WEBSTER | O'NEIL | 9-Dec-98 | B/P | ARTICLE NOT APPROVED FOR PUBLICATION |
| MEMO | WEBSTER | REMINGTON | 13-Dec-98 | B/P | RESPONSE TO YOUR MFR OF 3 SEP 98 |
| MEMO | REMINGTON | RECORD | 15-Jan-99 | B/P | INABILITY TO CONTACT MAJOR WILMA WEBSTER |
| MEMO | REMINGTON | RECORD | 21-Jan-99 | B/P | INTERACTION WITH MAJOR WILMA WEBSTER |
| MEMO | REMINGTON | RECORD | 2-Feb-99 | B/P | CONVERSATION WITH MAJOR WEBSTER |
| MEMO | ADDISON | WEBSTER | 21-May-98 | EVAL | COMMAND DIRECTED MENTAL HEALTH EVALUATION |
| MEMO | WEBSTER | ADDISON | 24-May-98 | EVAL | COMMAND DIRECTED MENTAL HEALTH EVALUATION |
| MEMO | O'NEIL | WEBSTER | 27-May-98 | EVAL | RESPONSE TO YOUR LETTER OF 24 MAY 98; COMMAND DIRECTED MENTAL HEALTH EVALUATION |
| MEMO | O'NEIL | ADDISON | 14-Jul-98 | EVAL | RESULTS OF COMMANDER-DIRECTED NEUROPSYCHIATRIC EVALUATION OF MAJOR WILMA WEBSTER |
| MEMO | LAMACCHIA | ADDISON | 14-Jul-98 | EVAL | COMMANDER-DIRECTED EVALUATION OF MAJOR WILMA WEBSTER |
| PT REC | GRONSETH | RECORD | 25-Sep-98 | EVAL | NEUROLOGY CONSULTATION |
| PT REC | GOLDENBERG | RECORD | 22-Oct-98 | EVAL | DISCHARGE SUMMARY |
| PT REC | GRONSETH | RECORD | 3-Nov-98 | EVAL | NEUROLOGY CONSULTATION |
| MEMO | MEB | O'NEIL | 10-Nov-98 | EVAL | MEDICAL EVALUATION BOARD (MEB) ON MAJOR WILMA P. WEBSTER |
| MEMO | O'NEIL | PEB | 13-Nov-98 | EVAL | COMMANDER'S LETTER ON MAJOR WILMA P. WEBSTER |

1002

# Documentation on Major Wilma P. Webster

| TYPE | FROM | TO | DATE | CAT | SUBJECT |
|---|---|---|---|---|---|
| PT REC | MEB | REMINGTON | 17-Nov-98 | EVAL | MEDICAL EVALUATION BOARD PACKAGE |
| MEMO | CAMPBELL | SAYLOR | 20-Nov-98 | EVAL | SOCIAL AND INDUSTRIAL IMPAIRMENT RATINGS FOR MAJOR WILMA WEBSTER |
| PT REC | O'CONNOR | RECORD | 28-Jan-99 | EVAL | FINDINGS AND RECOMMENDED DISPOSITION OF USAF PHYSICAL EVALUATION BOARD |
| MEMO | ADDISON | RECORD | 23-Jul-98 | OPR | REFERRAL OPR |
| MEMO | O'NEIL | RECORD | 23-Jul-98 | OPR | INTERVIEW WITH MAJOR WEBSTER |
| MEMO | MENDEZ | ADDISON | 24-Jul-98 | OPR | MAJOR WILMA P. WEBSTER OPR |
| MEMO | ADDISON | RECORD | 10-Aug-98 | OPR | REFERRAL OPR |
| MEMO | WEBSTER | O'NEIL | 16-Aug-98 | OPR | RESPONSE TO REFFERAL OPR |
| MEMO | O'NEIL | WEBSTER | 18-Aug-98 | OPR | MY REVIEW OF YOUR RESPONSE TO REFERRAL OPR |
| MEMO | REMINGTON | RECORD | 3-Sep-98 | OPR | REFERRAL OPR MAJOR WEBSTER |
| MEMO | WEBSTER | REMINGTON | 14-Sep-98 | OPR | ADDENDUM TO RESPONSE TO REFERRAL OPR |
| MEMO | BURKETT | RECORD | 18-Nov-98 | PRIV | MINUTES OF THE CREDENTIALS FUNCTION (AD-HOC) |
| FORM | BURKETT | RECORD | 20-Nov-98 | PRIV | HEALTH CARE PROVIDER ACTION REPORT |
| MEMO | BURKETT | RECORD | 20-Nov-98 | PRIV | SPECIAL CREDENTIALS FUNCTION |
| MEMO | POLGAR | O'NEIL | 24-Nov-98 | PRIV | LEGAL REVIEW REVOKING CLINICAL PRIVILEGES |
| MEMO | BURKETT | O'NEIL | 25-Nov-98 | PRIV | SPECIAL CREDENTIALS FUNCTION |
| MEMO | BURKETT | O'NEIL | 25-Nov-98 | PRIV | SPECIAL CREDENTIALS FUNCTION |
| MEMO | WOLFE | O'NEIL | 2-Dec-98 | PRIV | LEGAL REVIEW REVOKING CLINICAL PRIVILEGES |
| MEMO | O'NEIL | RECORD | 3-Dec-98 | PRIV | DECISION ON DATE TO DELIVER NOTICE OF PROPOSED CREDENTIALS ACTION TO MAJOR WEBSTER |
| MEMO | O'NEIL | WEBSTER | 3-Dec-98 | PRIV | NOTICED OF PROPOSED REVOCATION OF PRIVILEGES |
| MEMO | O'NEIL | WEBSTER | 3-Dec-98 | PRIV | ADVISEMENT OF AVAILABILITY OF AREA DEFENSE COUNSEL |
| MEMO | O'NEIL | RECORD | 15-Dec-98 | PRIV | CREDENTIALS PROCESS FOR MAJOR WILMA WEBSTER |
| MEMO | HARDING | O'NEIL | 21-Dec-98 | PRIV | REQUEST FOR HEARING |
| MEMO | BURKETT | WEBSTER | 7-Jan-99 | PRIV | NOTIFICATION OF PRIVILEGES HEARING |
| MEMO | BURKETT | WEBSTER | 8-Jan-99 | PRIV | DOCUMENTS SUPPORTING ALLEGATIONS FOR PRIVILEGE NOTIFICATION |
| SURVEY | PATIENT | O'NEIL | 14-Oct-97 | PT COMP | |
| SURVEY | PATIENT | O'NEIL | 27-Oct-97 | PT COMP | |
| SURVEY | PATIENT | O'NEIL | 11-Nov-97 | PT COMP | |
| SURVEY | PATIENT | O'NEIL | 12-Nov-97 | PT COMP | |
| SURVEY | PATIENT | O'NEIL | 2-Feb-98 | PT COMP | |
| SURVEY | PATIENT | O'NEIL | 2-Feb-98 | PT COMP | |

1003

# Documentation on Major Wilma P. Webster

| TYPE | FROM | TO | DATE | CAT | SUBJECT |
|---|---|---|---|---|---|
| SURVEY | PATIENT | O'NEIL | 6-Feb-98 | PT COMP | |
| MEMO | PATIENT | TUER | 7-Feb-98 | PT COMP | |
| MEMO | PATIENT | ADDISON | 6-May-98 | PT COMP | |
| MEMO | RODRIGUEZ | WEBSTER | 18-May-98 | PT COMP | |
| MEMO | WEBSTER | RODRIGUEZ | 20-May-98 | PT COMP | |
| SURVEY | PATIENT | O'NEIL | | PT COMP | |
| SURVEY | PATIENT | O'NEIL | | PT COMP | |
| MEMO | PATIENT | O'NEIL | | PT COMP | |
| MEMO | EFTHIMIADIS | WHOMEVER | 29-May-98 | SUP | DOCTOR WEBSTER |
| MEMO | SONDEREGGER | O'NEIL | 29-May-98 | SUP | LETTER OF RECOMMENDATION |
| MEMO | LINDGREN | WHOMEVER | 29-May-98 | SUP | DOCTOR WEBSTER |
| MEMO | MCMASTERS | WHOMEVER | 24-Jun-98 | SUP | DOCTOR WEBSTER |
| MEMO | NGO | O'NEIL | 1-Oct-98 | SUP | DOCTOR WEBSTER |
| MEMO | OLMOS | WHOMEVER | 20-Jan-99 | SUP | DOCTOR WEBSTER |
| SURVEY | PATIENT | O'NEIL | | SUP | DOCTOR WEBSTER |

1004

**DEPARTMENT OF THE AIR FORCE**
**24TH MEDICAL OPERATIONS SQUADRON (ACC)**
**HOWARD AFB, PANAMA**

**NOVEMBER 5, 1997**

MEMORANDUM FOR MAJ WILMA WEBSTER

FROM: CC

SUBJECT: Additional Duty Assignment

1. Effective immediately, you are assigned the additional duty of Assistant Director, Emergency Services. Your duties involve working with the Director, Maj McCrary, and the OIC, Capt Shercliffe, to ensure that the standards of care are met, staff members are properly trained and operational risk management is properly employed. Maj McCrary is your direct supervisor and Dr. Mendez is the Flight Chief.

2. Please know that as your Squadron Commander, I stand ready to assist you in any way you require. Thank you.

3. This memorandum supersedes all previous correspondence on this subject.

Martha W. Addison

MARTHA W. ADDISON, Lt Col, USAF, NC
Commander

MEMORANDUM FOR MDOS/CC

I hereby acknowledge receipt of this letter of appointment and understand my duties and responsibilities as outlined.

Wilma P. Webster
Maj Wilma Webster

20 NOV 97
Date

cc: 24 MDG/SGOPE/Capt Shercliffe
24 MDG/SGOPE/Maj McCrary
24 MDG/SGOPE/Dr. Mendez

To: webstewp@SGOF@ WA
Cc: mccrarje@SGOF@
mendezt@SGOF@HOWA
addisomw@SGN@HOWA
robbinmp@SGA@HOWA
Bcc: Elvira DeLeon@SGHQ@HOWA
From: Mark P. Robbins@SGA@HOWA
Subject: Phone number on Consult
Date: Wednesday, November 12, 1997 at 2:32:51 pm EST
Attach:
Certify: Y

Dr Webster, I am presently having to review a fracture followup patient (paperwork only- no live patient) on a consult you sent to Paitilla. Here is what you did not do:

1. Stipulate who or what service eg Ortho or ER or by name consult. NOT DONE
2. Because it was checked as a "Today", you were required to note on the consult which "provider-to-provider" you discussed this. NOT DONE
3. Despite my message of earlier, you did not put your phone number on it so the receiving physician could contact you. NOT DONE
4. If you have difficulty making arrangements with downtown providers, you should contact either Dr Mendez or Dr Edwin Lopez.

Expect to hear from Drs McCrary and Mendez about proper charting.
Ms DeLeon, put copy of this memo in provider's PAF.
LtC Robbins; C, Med Staff

**DEPARTMENT OF THE AIR FORCE**
**24TH MEDICAL SUPPORT SQUADRON (ACC)**
**HOWARD AFB, PANAMA**

30 November 1997

MEMORANDUM FOR RECORD

FROM: 24 MDOS/SGOME

SUBJECT: COUNSELING SESSION

1. This is a letter of documenting a counseling session given to Major Wilma Webster on 30 November 1997.

2. The following topics were discussed pertaining to poor performance in the Emergency Department during duty as MOD.

3. Excessive patient waiting times. Taking too long to see patients that have waited for a number of hours to see a provider. Waiting times and LWBS (left without being seen) far exceeds other providers in the department.

4. Keeping patients that have been seen in the ED too long before making a final disposition. Pattern of not keeping up with return of tests results and "forgetting" about patients still in the department. Slow to call for consults.

5. Receiving multiple complaints by name on patient satisfaction forms. The department suffers.

6. Several complaints by technicians and nursing staff indicating a lack of confidence in working with provider due to incidences of mis-communication or poor instructions.

7. I indicated that I've seen a pattern of difficulty in handling the work-load in this Emergency Department when alone as sole MOD.

8. I conveyed the need to either change or organize the providers present approach to patient car... as to minimize the above problem areas. We have talked about these problems in the past.

JAMES E. MCCRARY, MAJ, USAF, MC
CHIEF, EMERGENCY SERVICES

*Global Power For America*

1017

To: Martha W. Addison@SGN@HOWA
Cc:
Bcc:
From: Wilma P. Webster@SGOF@HOWA
Subject: re: Scopes of Care
Date: Thursday, January 29, 1998 at 6:18:54 pm EST
Attach:
Certify: Y

---

LtC Addison, I worked in Primary Care Clinic today and I was getting used to where things were and how to treat Family Practice style patients. Although I'd been promised only acute patients, Dr. Robbins had to leave to go to Flight Medicine so I was given all kinds of patients. I tried to finish the charts by lunchtime but couldn't. Nobody told me that if I didn't do that I couldn't go to lunch, until it was 13:10 and I was on my way out. Then, very coldly, Maj Burkett told me I would not be able to go eat . . that I must stay and see scheduled patients, so I went all day eating only a pop tart and a sandwich Dr. Mendez gave me. I was feeling very weak and dizzy but Maj Burkett didn't seem to care in the least. Capt L told me something similar happened when she worked here. What a way to treat your providers! I had been told previously by Gary Browne that if I finished the 2 patients up I could go to lunch and that's what they usually did. I don't blame him in the least. He and all the ancillary staff have been sweethearts. But why wasn't I warned that I would starve if I didn't drop everything at 13:00 and run out! As you know I am not lazy or a shirker, but I like to be treated properly and I feel this did not happen today. Maj Wilma Webster

Martha W. Addison@SGN@HOWA Wrote:
|
| Thanks Dr. Webster. Anything that I emailed to the
| sections, you received. I asked them for the 7 categories
| under JCAHO, which you also received. I am keeping you in
| the loop just like I told you I would last week.
| appreciate your forwarding this. mwa
|
| Wilma P. Webster@SGOF@HOWA Wrote:
| |
| | LtC Addison, here are the Scopes of Care that I have so
| | far. I edited them some to make the format smoother and
| | to take away the 'patchwork' effect. Yesterday I went to
| | Physical Exams and Flight Medicine and called up Public
| | Health to get their scopes because you had requested I
| | turn it all in today , but was told by them that you had
| | given them extra time to get it in. Next time I'd
| | appreciate it if could you e-mail me with such changes.
| | Thanks, Maj Wilma Webster
| |
|

1008

29 JAN 98

MEMORANDUM FOR LtC Martha Addison

FROM: Major Wilma P. Webster

SUBJECT: First day in Primary Care

1. LtC Addison, I worked in Primary Care Clinic today and I was getting used to where things were and how to treat Family Practice style patients. Although I'd been promised only acute patients, Dr. Robbins had to leave to go to Flight Medicine so I was given all kinds of patients.

2. I tried to finish the charts by lunchtime but couldn't. Nobody told me that if I didn't do that I couldn't go to lunch, until it was 13:10 and I was on my way out. Then, very coldly, Maj Burkett told me I would not be able to go eat . . that I must stay and see scheduled patients, so I went all day eating only a pop tart and a sandwich Dr. Mendez gave me. I was feeling very weak and dizzy but Maj Burkett didn't seem to care in the least.

3. Capt Li told me something similar happened when she worked here. What a way to treat your providers. I had been told previously by Gary Browne that if I finished the 2 patients up I could go to lunch and that's what they usually did. I don't blame him in the least. He and all the ancillary staff have been sweethearts. But why wasn't I warned that I would starve if I didn't drop everything at 13:00 and run out.
sic (12:00)

4. As you know I am not lazy or a shirker, but I like to be treated properly and I feel this did not happen today

Wilma P. Webster
WILMA P. WEBSTER, MAJ, USAF, MC
Emergency Physician

DEPARTMENT OF THE AIR FORCE
24TH MEDICAL OPERATIONS SQUADRON (ACC)
HOWARD AFB, PANAMA

30 January, 1998

**Memorandum for Record**

**Subject: Major (Dr.) Wilma Webster. Outburst on 29 Jan 98.**

1. On 29 January 1998 Major Webster was on her first day of work in the Primary Care Clinic. She saw patient's in the morning and through the noon hour. Since she was new to the clinic and normally works the ER I had arranged for her appointments to be all acute slots at 30 min intervals. She also saw sick call and a few patients rescheduled from another provider.

2. At 1215 the NCOIC informed me that she was asking about going to lunch and I said she must be here for her scheduled patients at 1300. At 1310 I was informed that she was on her way to lunch despite having scheduled patients at 130 and 1330. I caught up with her in the ER lobby and asked her where she was going and she said, "I am going out to eat". I informed her that she had patients scheduled and that she did not have time to go out to eat. I offered her some of the lunch that I brought.

3. Her response was anger laden, loud, physically demonstrative, and antagonistic. She insisted that she was going to eat, she says she was promised lunch, she said she did not care what happened. I informed her that if she left the building and did not come to see her patients I would have to report her to our flight chief and there would be consequences. I returned up stairs to clinic and she came up as well.

4. Regardless of the circumstances, Major Webster's response was unprofessional, immature, and unbecoming of an Air Force Officer. I am writing this memo as information and giving a copy to the Chief, Primary Care Teams Flight, the SGH, and the Medical Operations Commander.

Edwin K. Burkett, MD
Maj USAF, MC
24th MDG, Chief, Family Practice Element

**DEPARTMENT OF THE AIR FORCE**
**24TH MEDICAL OPERATIONS SQUADRON (ACC)**
**HOWARD AFB, PANAMA**

**31 January, 1998**

**Memorandum for Record**

**Subject: Code Blue on 24 January 1998**

**1.** I was called in from home the night of 24 January 1998 for a code blue in progress on the Inpatient ward. I am writing this memo because I was disturbed by an apparent lack of mastery of ACLS protocol by the Code Leader, Dr. Wilma Webster. As we are all nervous in such a situation and I am reluctant to be judgmental I will try and stick to 3 areas that I felt were discrepant : Airway management, CPR, and Defibrillation.

2. Airway Management and Ventilation: When I arrived Dr. Webster was standing at the head of the bed with an ET Tube and a Laryngoscope, the patient was on a monitor with VFIB showing, and he was pulseless and cyanotic. She had attempted an intubation unsuccessfully. A technician had an Ambu bag and mask to the patient's face but no one was holding the head. I commented that I didn't think he was getting any air and tried to get the tech to do a head tilt. The patient was thick necked and his head was in the mattress so this was very difficult. Dr. Webster made no attempt to position the head or give direction. I came to the head of the bed and auscultated the patients chest but heard no sounds, I then did a chin lift maneuver and noted chest rise and fall with the technician's bagging. Dr. Webster made 2 more intubation attempts unsuccessfully and then asked for someone else to try.

Main critique: Dr. Webster does not seem to grasp the importance of head position for ventilation and that intubation, though important, is not the only way to successfully manage an airway. Even after the code debriefing with LtCol Addison and the team, she insists that the patient was ventilated.

3. CPR: When I arrived CPR was not being done. I asked what rhythm she was seeing and she said VFIB, I agreed after looking at the monitor. I asked if anyone was doing Chest compressions and the team said "no" but someone stepped up to do them. Apparently CPR had been initiated but stopped when Dr. Webster thought the patient had breaths on his own.

Main critique: a pulseless patient needs chest compressions regardless of what is on the monitor or if they are thought to be "breathing".

4. Defibrillation: Dr. Webster was so intent on intubating that she had not ordered Defibrillation on this patient in VFIB. After I had asked about the CPR, LtCol Addison asked if the patient had been shocked yet. Again there was a negative reply and so Dr. Webster then

ordered 3 successive shocks. However, after that, I or LtCol Addison had to suggest repeated shocks after other interventions and drugs were given.

Main critique: The cure for VFIB is Defibrillation. Dr. Webster did not seem to grasp the importance of early and repetitive use of electricity in Vfib.

5. Recommendation : I recommend that Dr. Webster take the next ACLS course in May 1998 prior to working alone in the ER.

6. I have not discussed the critique with Dr. Webster. I am sending a copy to the Flight Chief, the SGH, and the MDOS Commander.

Edwin K. Burkett, MD
Maj USAF, MC
24th MDG, Chief, Family Practice Element
ACLS Affiliate Faculty

**DEPARTMENT OF THE AIR FORCE**
**24TH MEDICAL OPERATIONS SQUADRON (ACC)**
**HOWARD AFB, PANAMA**

v

Howard AFB, 4 February 1998.

MEMORANDUM FOR: Maj.(Dr) Wilma P. Webster

FROM: Teodoro Mendez, M.D.
Chief, Primary Care C.inics Flight

SUBJECT: Letter of Counseling

1. On 29 January 1998 you were informed by Maj (Dr) Burkett, Chief of Family Practice that you needed to finish the medical care of your patients before leaving the clinic for lunch. He also stated that while the FPC routine/acute appointments are every 15 minutes yours are every 30 minutes allowing you time to become acustomed to the different work environment. Your response was "anger laden, loud, physically demonstrative and antagonist".

2. On 2 February 1998 you left your 1100 and 1130 patients waiting for more than an hour while you had lunch at noon. Those patients were seen by the Flight Chief at 1245. At 1800 there was one patient still waiting for you in the lobby of the outpatient clinic; the patient informed the FPC NCOIC that you asked him to wait for you, but you were not in the facility. This constitutes patient abandonment and is not an acceptable provider behaviour.

3. On 3 February 1998 you left your work area, in Primary Care Clinic, to "take lunch" for more than an hour leaving your 1100 and 1130 patients waiting- the same as the day before.

4. Your unprofessional and demonstrative response in public display to the Chief of Family Practice and your attitude towards patient relations and inter-personal relationships are unacceptable for an Air Force Officer and a physician. This behavior will not be tolerated in our organization.

Teodoro Mendez, M.D.
Chief, Primary Care Clinics Flight.

cc: Lt Col Martha Addison, Commander, 24th MDOS
Lt Col Mark Robbins, Chief of Medical Staff, 24th MDG

1st Endorsement:
I acknowlegde receipt of above.

Wilma P. Webster 5 FEB 98
Signature Date
See my response

1014

**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS 24TH MEDICAL GROUP (ACC)**
**HOWARD AFB, PANAMA**

**PERSONAL/CONFIDENTIAL MEDICAL INFORMATION**

5 Feb 98

MEMORANDUM FOR RECORD

FROM: 24MDG/CC

SUBJECT: Interview With Major Webster

1. Major Wilma P Webster requested to speak with me at 1100 today. She met with me in my office. She indicated that she had two things to discuss with me.

2. She stated that the criteria used to not assign her as Chief of Emergency Services were faulty. She stated that personalities rather than skills and experience had been used to assign Dr. McCreary as the E.R. Chief. She stated that although she at one time thought that the fact she was a female might have played a role in Dr. McCreary (a male)'s selection, she currently does not believe that her gender was a factor. I asked her for clarification on that, and reminded her that this was an issue of EEOC and Federal law, which would require me to order an investigation if she believed that gender was truly a factor. I stated that I would call the EEOC Office in her presence if she felt that gender had been a factor used in her selection. She requested that I not do that, and re-stated that she does not currently believe that her gender was a factor. She stated that she was Board-certified in Internal Medicine, and that she had taken and passed the written part of the Emergency Medicine boards, but had failed "several times" the oral part of the E.R. boards. Maj Webster stated that rather than the passing of the written Boards being a "plus" for her, the failing of the oral Boards had been a "minus", and that she felt this was unfair. Maj Webster stated that she feels she is better qualified to be E.R. Chief than Capt McCreary, and that she outranks him, as well, making her assignment to the position virtually required. She requested an investigation of the criteria used for his selection over hers. I asked Maj Webster what she felt the criteria for an E.R. Flight Chief should be. She responded that they should be years of experience, Board certification (partial or completed), and military rank. I responded that I desired her to write me a memo requesting such an inquiry, stating the criteria which she felt had been used unfairly, and her strengths and any perceived weakenesses as an E.R. Flight Chief.

3. The second issue Maj Webster brought up was her re-assignment to Family Practice Clinic. She stated that she was "miserable", "overwhelmed", and "desperately unhappy". She stated that she had not signed the list of Family Practice procedures given her by Dr. mendez, because she felt uncomfortable with many of them, especially the longitudinal care of pediatric patients. She stated that she had been unable to complete charts, and was constantly missing lunch because "I am unfamiliar with the procedures and how things are laid out in the clinic, and it is taking me much longer than the others". She related that on one day she had an angry outburst involving

AFD=c:\medgroup\complain\webster.doc

Dr. Burkett and herself when she had insisted on leaving for lunch even though her AM patients had not been completed. She stated that a recent letter of admonishment she had received was "punishment", and that she was being "punished" by the staff of Family Practice, who were unfriendly and "not caring". She told me that the reason for her transfer from the E.R. to the Family Practice Clinic had occurred because she had stated during an arrest that she could not intubate a patient because her wrist used to hold the intubation speculum was too weak. [I was personally present at the arrest, along with LtCol Addison, and witnessed Maj Webster make this statement and pass the intubation to Dr. Burkett at the arrest for that reason.] She now states that she said this out of acute embarrassment for not having been able to accomplish the intubation successfully because of a large patient, a thick patient neck, and bad positioning on the bed, and not because of any weakness of her wrist. She states she is doing PALS, and that this AM she successfully accomplished two intubations on pediatric manikins.

4. At this point, she became distraught and tearful. She stated that she is overwhelmed by the feeling that she "is being punished", that she doesn't have time for everyday things like finishing her charts, going to lunch, picking up her mail, and doing the JCAHO and Continuum of Care work which LtCol Addison has assigned her. She stated that she had briefly considered "going AWOL" or "committing suicide", but had dispensed with both "because I have too much to live for, and have too much of a commitment to the Air Force". She stated that she simply felt isolated and distraught. She was now in tears. I asked her if she was considering suicide any longer, and she said "no". I asked her if she desired to speak to someone, in particular, LtCol Rodgers, for stress management counseling. She said "yes". I asked her if she would be willing to go today, if I arranged to have ltCol Rodgers available for her to talk with, and she said "yes". I asked her what she felt would acutely decompress her feeling of being overwhelmed, and her response was:

a. To be placed back in the Emergency Room
b. To see sick call patients
c. To perform physical examinations

I informed her placeing her back into the E.R. would not be possible at this time. I told Maj Webster that, in the absence of LtCol Addison, I would direct that she be assigned to perform physicals and see sick call patients exclusively.

5. When Maj Webster left my office at 1145, she was still somewhat tearful, but in control. She went immediately to the ground floor of Building 186 and I witnessed her introduce herself to LtCol Rodgers, who saw her for a clinical visit immediately.

TERRENCE JAY O'NEIL, Col USAF, MC
Commander

AFD=c:\medgroup\complain\webster.doc