**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS 24TH MEDICAL GROUP (ACC)**
**HOWARD AFB, PANAMA**

6 Feb 98

MEMORANDUM FOR RECORD

FROM: 24MDG/CC

SUBJECT: Issues Surrounding Complaint by Maj Webster

1. I had a meeting with LtCol Mark Robbins, the Chief of the Medical Staff this AM in my office. We discussed the issues brought up by the complaint and surrounding details furnished by Maj Webster yesterday. I announced my intent as being the placing of Maj Webster in a practice situation temporarily where she felt comfortable and less-stressed, while assuring supervision and review of clinical performance regarding both that setting and the possibility of her eventual return to an Emergency Room setting.

2. My concern, shared by LtCol Robbins, was that the nature of the problems seen 85% of the time in Emergency Rooms is acute Family Practice health issues which could easily have been dealt with on an appointed basis. A lack of familiarity and comfort with treating those sorts of patients in an outpatient setting causes concern which both of us felt justifiable in looking toward Dr. Webster's return to an E.R., where speed and triage is even more important.

3. Additionally, Dr. Webster's level of anguish and subjective distress needs to be assessed during the period she is convalescing from her planned wrist surgery, so that her ability to deal with patient care issues undistractedly is safe and adequate. I informed Dr. Robbins that LtCol Rodgers had seen Dr. Webster yesterday afternoon and offered her his ongoing services for emotional support and stress management.

4. Finally, I informed Dr. Robbins that I had let HQACC know that the issue was active, and that Col Santiago would be kept informed, incase some sort of E.R. coverage proved to be needed were the stress situation on Dr. Webster to deteriorate further.

TERRENCE JAY O'NEIL, Col USAF, MC
Commander

Cc: SGH/LtCol Robbins
SGO/LtCol Addison

AFD=c:\medgroup\complain\webster2.doc

08 FEB 98

MEMORANDUM FOR Col O'Neil

FROM: Major Wilma P. Webster

SUBJECT: Reasons I should have been given directorship of ER

1. Thirteen years of Emergency Department experience
   -5 months in medium-sized hospital in Rochester, New York
   -2 years and 9 months in medium-sized hospital in Bloomsburg, PA, where I was acting director for 1 year and 5 months
   3 month temporary position in medium-sized hospital in Berwick, PA
   -4 years and 10 months in medium-sized hospital in Hazleton, PA
   -4 years in small hospital in Muncy Valley, PA
   -3 years at Yokota Air Base ER (where I was director for two years)
   -Emergency Physician RAF Lakenheath ER for two years

2. Superior experience directing Emergency Departments:
   -Successful director of medium sized civilian Emergency Department (Jan 86-June 87)
   -Director of Yokota AFB ER for 2 years, until my son's accident in 1994

3. Acclaimed organizer in civilian life
   -Singlehandedly began advertising and organizing civilians and military to form Toastmasters club in England, then chaired meetings every two weeks
   -Within 2 years club was chartered and remains active to this day..

3. Maintenance of Physical Fitness
   -Regular schedule of cardiovascular and muscle-building exercise
   -Achieved top 10% of Air Force in bicycle ergonmetry test for age and sex.

4. Military experience
   -Nine years of military experience
   -Army reservist from July 10, 1989 until joined Air Force in 1992
   -Deployed to Desert Shield/Desert Storm Nov 1990-May 1991, earning Army Achievement Medal for accomplishments while credentialling deploying providers
   -Commander Ashley PA troops participating in Victory Day Parade, Washington,D.C.,June '91
   -Air Command and Staff course successfully completed 1994
   -Deployed to Osan, Korea in support of Operation Provide Reception, Staging, Onward Movement and Integration June, 1995
   -Air Force Achievement medal awarded Yokota, Japan for work rewriting many protocols and operating instructions and consistently being provider most lauded by patients.
   -Chief Escort for Madingley Ceremony, RAF Lakenheath, 26 May, 1997
   -Guest spearker RAF Lakenheath Women's Equality Day celebration, UK, 26 Aug, 1997

Wilma P. Webster, MAJ, USAF
Emergency Physician

To: Wilma P. Webster@SGOF@HOWA
Cc:
Bcc:
From: Martha W. Addison@SGN@HOWA
Subject: re: Making that e-mail official
Date: Tuesday, February 10, 1998 at 8:14:24 am EST
Attach:
Certify: N

---

Thank you Dr. Webster. If at anytime you wish to discuss any issues with me, I am available for you as well as all the other members of this group. mwa

Wilma P. Webster@SGOF@HOWA Wrote:

|
| LtCol Addison, after Dr. Mendez gave me a Letter of
| Counseling for initially refusing adamantly to obey Maj
| Burkett when he ordered me not to go off to eat on my
| first day in Primary Care Clinic, I made an appointment
| to speak to Col. O'Neil, who suggested I make the first
| e-mail message I sent you official by putting it in Word
| and sending you the document. This is what I am enclosing
| here. It is the exact same e-mail message sent before
| minus two exclamation marks. I haven't yet figured how to
| sign these documents electronically so I will send you a
| signed copy also. Sincerely, Major Wilma P. Webster
|
|
| P. S. I am reminded of the quote from General Fogleman
| and then Secretary of the Airforce, Sheila Widnall.
| "Every Air Force member deserves the opportunity to
| achieve his or her own potential, and to work and live in
| an environment that values human dignity and is free of
| discrimination. Each one of us, whether military or
| civilian, plays a key role in creating and maintaining
| this kind of working and living climate."
|

1019

10 FEB 98

MEMORANDUM FOR Dr. Teodoro Mendez

FROM: Major Wilma P. Webster

SUBJECT: Response to your letter of counseling

With all due respect, Dr. Mendez much of the data in your Letter of Counseling is inaccurate or incomplete. Although the routine appointments were every 30 minutes, there were many sick call patients to be seen in between. I saw a total of 16 patients on that first day (29 FEB), one more than you, but less than Dr. Burkett who saw 18 plus several phone consults.

On the 2nd day (Jan 30) I saw 11 patients, Burkett 12 and you saw 7. That was the day I'd arranged to have Phillipine food brought in for everybody, but I was so busy I didn't get a bite until approximately 12:30. I did not take a big lunch break.

On my 3rd day (February 2), remembering how weak and dizzy I'd felt the first day when I wasn't allowed time to eat, I went down to the ER about 12:30 and heated a TV dinner. I did not take more than an hour and hurried right back because I'd been told lunchtime was 12-1 and if I didn't take it then, I wouldn't get any. I think I worked until 18:30 that night, at least I did so on several nights. At any rate, as is my custom, I never knowingly left anything unfinished, especially abandoning a patient.

On February 3rd I had several errands to do including picking up my PALS book and an important package waiting in the post office for days. I went to get those things and ran back to the ER where I ate another TV dinner hurridly and raced to get back to Primary Care by the hour deadline.

While in Primary Care I ran into multiple problems and there was insufficient help at resolving them. Some of the deficiencies were as follows:

Needed forms not in room
Unclear what Physical Exam forms to use (or missing forms)
Unclear what were requirements for different physical exams
No printout of my scheduled patients was given me on several days
Not enough guaiac tests in room
Not enough throat culturettes in room
Initially there were no adult-sized ear speculums in room
Non-functioning otoscope light (both patient and I tried to fix, but couldn't)
No notice near the phone of important phone numbers (lab, pharmacy, etc)
I didn't know where Thayer Martin medium was kept
Needed textbooks not available
Only PDR in room was very outdated one
Computer never worked right (later confirmed by Systems to have virus)

6. Given the difficulties faced I respectfully request that you retract your letter of counseling.

WILMA P. WEBSTER, MAJ, USAF, MC
Emergency Physician

1020

DEPARTMENT OF THE AIR FORCE
HEADQUARTERS 24TH MEDICAL GROUP (ACC)
HOWARD AFB, PANAMA

12 Feb 98

MEMORANDUM FOR RECORD

FROM: 24 MDOS/CC

SUBJECT: Reply to Maj Webster's Rebuttal to LOC

1. I met with Dr. Webster on 11 Feb 98 to discuss my response to her LOC received from Dr. Mendez, her flight commander, dated 4 Feb 98. I explained to Dr. Webster the serious nature of a LOC for an officer and informed her that per Legal advice the commander reserved the right to start a UIF file or a copy could be placed in the member's PIF. Based on the situation, the removal from Dr. Webster's usual worksite, ER, I hoped that this was a one time occurrence and consequently, I would not rescind the LOC but would not to initiate a UIF. I did inform Dr. Webster that a copy would be placed in her PIF and I told her that I felt she should continue to seek mental health counseling to include anger management as her actions were not becoming of an officer. Dr. Webster began by telling me that she felt that Dr. Burkett should be counseled as she had been told that he treated all the women who worked in PCC the way she had been treated and that he had not received her very well. I stopped Dr. Webster and informed her that if she was discriminated against I had to call in the appropriate office as we had a zero tolerance for discrimination. She stated, "well, that's hearsay so I won't pursue it". I informed her that if she had no actual facts regarding discrimination I would advise her not to spread hearsay. I also informed her that if she was mistreated by anyone to include myself, we all had a supervisor and I expected to hear about it.

2. We briefly addressed Dr. Webster's written complaints on her rebuttal. I had already addressed the mentioned issues with Dr. Mendez who had asked for 24 hours to look at the same. Dr. Webster acknowledged that she had received a brief orientation and that people helped her when she asked for assistance. She also went on to say that Dr. Burkett was acting better and that she did not know if anyone had talked to him or not. I did not feel as though it as appropriate to discuss Dr. Burkett as Dr. Webster at no time assumed any responsibility for her unofficer like behavior. When specifically questioned about her behavior she responded that she was not her usual friendly, smiling self as she did not want to be in the PCC but did not respond to her angry, loud demonstrative attitude that had been displayed on 29 Jan 98.

3. I finished the conversation with a repeat that no UIF would be filed currently and that I recommended Dr. Webster continue meeting with the Mental Health staff and attend an anger management class. Dr. Webster informed me at this time that she felt "threatened" by the fact that she could get a UIF. I informed her that I was not using this fact as a threat, but that it was the truth. I also informed her that if she did not persist in unacceptable behavior this should not be the case.

Martha W Addison

MARTHA W. ADDISON, LtCol, USAF, NC
Commander, 24th Medical Operations Squadron

CC: SGO/CC: Col O'Neil
SGH: LtCol Robbins

1021

23 March 98

MEMORANDUM FOR RECORD

TO: Dr. Webster

FROM: LtCol Addison

RE: EVENTS LEADING UP TO YOUR REMOVAL FROM ER

1. I am writing this memo in an effort to address and clarify some issues that continue to arise. In an effort to avoid further confusion, I have asked Dr. Mendez to be a witness to this conversation. Despite repeated conversations with you addressing why you where not put in charge of the Emergency Room , you continue to state that the decision was based on personalities versus skills and experience. (Conversation with Dr. O'Neil, 5 Feb 98). You obviously continue not to believe that Drs. Mendez and Robbins and myself made a conscientious decision to wait until both yourself and Dr. McCrary arrived, evaluate your credentials, PIF and demonstrated work performance and then make a decision, based on a known factor - watching two professionals operate as well as evaluating their credentials.

2. Following the Code Blue on 24 Jan 98, you made an admission that you were not able to intubate the patient (a large male with a thick neck) due to lack of strength in your wrist. As you were already scheduled for surgery on this extremity, the decision was made to remove you based on risk factors and the fact that in the Emergency Room you could be the only provider and placed in the same situation. You immediately protested, which is acceptable. Since being placed in the Primary Care Clinic you have stated that you were not treated fairly by Dr. Burkett. You have acted out with loud outbursts and banging on lockers in the ER. You were given a letter of counseling by Dr. Mendez regarding actions between yourself and Dr. Burkett. You sent a rebuttal on the letter, dated 10 Feb and to date, I have not been appraised of any additional outbursts from you. Based on this input, I made the decision not to create an Unfavorable Information File. You were given a letter dated 12 Feb 98 that explained this.

3. I have received written input from a patient commenting about you crying while the patient was seen at sick call. I have had inquiries from other concerned members regarding your emotional state and your perception that you are being punished. You make no bones about letting me know how unhappy you are about working in the Primary Care area and have proceeded to let me know that I have been punishing you since you first arrived. (Conversation 18 March 98 when I said "good morning" and asked how you were doing and you proceeded to tell me how I was wronging you.)

4. Dr. Mendez has assured me that you are aware of the game plan to return you to the ER after you have completed ACLS, either by course or by machine. My understanding is that a March date has been set up and this effort coordinated. You still protested when your profile was removed, despite this knowledge.

5. As the Squadron Commander, I am asking you to realize that you are an officer in the USAF and to act accordingly. If you feel that I have wronged you, please sit down with my supervisor, Col O'Neil, and clear up the matter. Regardless of w here you are tasked to work in the 24th Medical Group, I expect professionalism and a spirit of teamwork. Please accept responsibility for yourself and your actions.

Martha W Addison

MARTHA W. ADDISON, LtCol, USAF, NC
Commander, Medical Operations Squadron

COMMENTS:
Received and will write rebuttal. Wilma P Webster MAJ

1022

05 APR 98

MEMORANDUM FOR Lt Col Martha Addison

FROM: Major Wilma P. Webster

SUBJECT: Response to your letter of 23 March '98

1. With all due respect, Lt Col Addison, although your letter proposes to clarify events, it appears to reinforce the inaccuracies of previous weeks. I reiterate that I have not had "loud outbursts", but only told Dr. Burkett quite emphatically that I WOULD GO EAT when he insisted I not do so on my first day in Primary Care. In the end he had his way and at 18:00 I was still working, albeit feeling weak and dizzy having had only one sandwich since the night before.

2. The only locker I remember banging on in the ED was the one where I was trying to insert a luggage label into a ring where it didn't really fit. Finally someone helped me put it in place.

3. On another day I was crying (softly) in my office. I felt miserable being forced to work in an area which I find exceedingly boring, and where my abilities in the handling of emergency patients are stagnating more day by day.

4. I was not going to insist on the position of Director of the ED, although I did feel slighted by your apparent disregard for my military and Emergency Department experience. On multiple occasions I have noted indications that my experience is indeed more extensive than the present director's, yet I was fairly content to continue with the position of assistant director.

5. When you decided to transfer me to Primary Care, you gave me good reason to see Col O'Neill. During the meeting I told him all my concerns, including how bad I felt about not being chosen for director.

6. Many people are aware of how unsuitable my present job is, yet I must continue here in spite of the fact that I am needed in the Emergency Department also. Who could be making such cruel and seemingly arbitrary decisions? And why? Is it to make sure I have no chance at the directorship?

7. I ask you, how working in Primary Care can help me pass my Emergency Medicine Oral Board Examination, the one last hurdle to achieve Emergency Medicine Board Certification? Remember that I have been accepted by the College of Emergency Physicians as a Candidate and have already passed their written exam.

8. You ask me to realize I am a professional and act accordingly. I agree that is necessary, but I ask you why you have always spoken 'down' to me as if I were your child? My fellow officers tell me they've noticed the same thing, but they don't feel as uneasy about it as I do, perhaps because of their younger age.

9. My aunt Lydia, a super-woman, was my mother image, and now that she has passed away, nobody will ever replace her. Please don't try. Instead, I would appreciate if in the future you would treat me as a fellow professional, much like Col O'Neill, and LtC Robbins do. This is the request that I submit respectfully to you.

Wilma P. Webster

WILMA P. WEBSTER, MAJ, USAF, MC
Emergency Physician

1023

**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS 24TH MEDICAL GROUP (ACC)**
**HOWARD AFB, PANAMA**

6 April 98

MEMORANDUM FOR PRIMARY CARE FLIGHT COMMANDER

SUBJECT: Airway Management Evaluation

1. On 24 March, 1998, Dr. Ulloa and myself evaluated Maj Webster on the Airway Management Station of the ACLS protocol. The reason for this evaluation was basically to assess whether this provider, who is already ACLS certified, could perform the airway management techniques appropriately after undergoing release surgery for her surgical condition.

2. This is to notify you that Maj Webster's performance during the Airway Management was unsatisfactory due to the following reasons:

   a. Overall too much time in the process of endotracheal intubation
   b. Even though the universal steps for evaluating a patient in respiratory arrest were taken, the provider spent too much time trying to localize a stylet to facilitate intubation.
   c. Poor technique positioning and immobilizing the head and neck.
   d. Poor technique handling the laryngoscope.
   e. Poor technique inserting the laryngoscope and finding the landmarks.
   f. Several prolonged attempts

3. It is recommended that Maj Webster contact Maj Angeloro, nurse anesthetist, to set some individual training in the Operating Room. We expect to re-test her airway management techniques after this training.

4. Thanks. If you have any questions, please call me at 4-6343.

Jose E. Rodriguez-Vazquez, LtCol, USAF, MC, SFS
Chief, Medical Staff

*Global Power For America*

1024

Cc:
Bcc:
From: Teodoro Mendez@SGOF@HOWA
Subject: fwd: Dr. Webster
Date: Tuesday, April 7, 1998 at 1:54:12 pm EST
Attach: c:\mydocu~1\websair.doc
Certify: N
Forwarded By: Teodoro Mendez@SGOF@HOWA

---

Comments By: Teodoro Mendez@SGOF@HOWA
Originally To: Teodoro Mendez@SGOF@HOWA
Originally From: Jose E. Rodriguez-Vazquez@SGPF@HOWA
Original Date: 4/6/98 12:06 PM
Comments:

Elvira, please add the attachment to Maj Webster PAF
Thanks
Dr. Mendez

——————[Original Message]——————

Here is evaluation for airway management. You could send a memo to the Credentials Committee recommending indirect or direct (whatever you an Dr. McCreary decide) supervision (2s) on airway management areas until she is cleared by Maj Angeloro and SGH.

Thanks

JOSE E. RODRIGUEZ-VAZQUEZ, LtCol, USAF, MC, SFS
Chief, Flight Medicine Flight
Chief, Medical Staff

To: mendezt@SGOF@HOWA
Cc:
Bcc:
From: Michael B. Angeloro@SGOF@HOWA
Subject: Dr. Webster Intubation Observation
Create Date: Tuesday, April 14, 1998 3:14 PM
Send Date: Tuesday, April 14, 1998 3:14 PM
Attach:
Certify: N

---

I observed Dr. Webster perform 2 intubations on adult subjects. Her laryngoscopy technique was without problems and she was able to intubate both patients on the first attempt.
I hope this is adequate for your needs.
Mike Angeloro.

**DEPARTMENT OF THE AIR FORCE**
**24TH MEDICAL OPERATIONS SQUADRON (ACC)**
**HOWARD AFB, PANAMA**

April 15, 1998.

MEMORANDUM FOR RECORD

FROM: Teodoro Mendez M.D. SGOP

SUBJECT: Major (Dr.) Wilma Webster Airway Management Capabilities

1. On the 24th of Jan 98 Major Webster was the provider in charge of a Code Blue in the Inpatient Unit. Next day she verbally reported to me that she was unable to intubate the patient because she was suffering a Carpal Tunnel related syndrome with the consequent wrist weakness. She also stated that she was scheduled for surgery with Lt. Col. (Dr.) Granville on the 13 of February.
2. Major Webster was assigned until that day to the ER. Any ER provider must be fully ATLS/ACLS functional. Due to her wrist pathology she was not fully functional to meet the ER requirements. On the 25th of Jan 98 as a Flight Chief I explained the above to her and she was transfer to the outpatient clinics. It was clearly explained to Maj Webster that she must be released from her post operative profile and give prove of her proeficiency on airway management in order to be transfer back to the ER.
3. Maj Webster profile was removed by Dr. Granville the third week of March 98.
4. An airway proeficiency test was done the 24th of March by Dr. Eric Ulloa certified ACLS instructor and supervised by Lt. Col. Jose Rodriguez-Vasquez SGH. Maj. Webster performance was unsatisfactory. It was recommended for her to be re-evaluated by Maj. Angeloro OR Nurse Anesthetist with live patients in the OR.
5. Maj Webster assisted Maj Angeloro with two intubations in the OR. He stated "Her laringoscopy technique was adequate and she was able to intubate both patients on the first attempt".
6. During this time Maj Webster succesfully completed a PALS course.
7. Starting the 16th of April, 98 Major Webster will be transfer to the ER.

Teodoro Mendez, M.D.
Chief, Primary Care Teams Flight

cc. Maj Webster PAF
Maj Webster
Lt. Col. Addison
Lt. Col. Rodriguez-Vasquez

1027

To: Terrence J. O'Neil@SGA@HOWA
Cc:
Bcc:
From: Martha W. Addison@SGN@HOWA
Subject: re: fwd: Reponse to your last letter
Create Date: Sunday, April 19, 1998 1:28 PM
Send Date: Sunday, April 19, 1998 1:28 PM
Attach:
Certify: N

---

Sir, this whole situation bears watching and we'll just have to see how the hands play out. If there is a doubt in my mind about her clinical competence, you can rest assured that I will get Dr. Rodriquez involved. Thanks. mwa

Terrence J. O'Neil@SGA@HOWA Wrote:

| Comments By: Terrence J. O'Neil@SGA@HOWA
| Originally To: Martha W. Addison@SGN@HOWA
| Originally Cc: Terrence J. O'Neil@SGA@HOWA, Teodoro Mendez@SGOF@HOWA
| Originally From: Wilma P. Webster@SGOF@HOWA
| Original Date: 4/6/98 11:03 AM
| Comments:
|
| Received from Maj Webster. There continues to be a concern in both of our minds, I think, that her part of the responsibility for the situations that have arisen is not being accepted by Maj Webster. This letter sounds like "I'm fine: it's the rest of the world that is wrong". Bears continued close followup to make sure that clinical performance and military bearing are not deteriorating.
|
| TJO'Neil
|
| --------------------------[Original Message]--------------------------
|
| LtCol Addison, this is my response to your latest letter. I looked for you this morning to give it to you in person, but must have missed you. You should be getting the hard copy within a day or so. Maj Wilma P. Webster

QUALITY ASSURANCE DOCUMENT - EXEMPT FROM DISCOVERY IAW U.S.C SECTION 1102
DO NOT RELEASE WITHOUT PERMISSION OF MTF COMMANDER

# MEDICAL TREATMENT FACILITY INCIDENT STATEMENT

OMB No. 0701-0135
Expires: 9-30-97

Public reporting burden for this collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Department of Defense, Washington Headquarters Services, DIOR, 1215 Jefferson Davis Highway, Suite 1204, Arlington VA 22202-4302; and to OMB, Paperwork Reduction Project (0701-0135), Washington DC 20503. Please DO NOT RETURN your form to either of these addresses. Return your completed form to your Supervisor.

MEDICAL FACILITY ADDRESS: 24 MDOS / SGOPE

INCIDENT NUMBER:

**1. INCIDENT DATA**

| TYPE | DATE | TIME | LOCATION |
|---|---|---|---|
| MEDICATION ERROR | 20 Apr 98 | 2200 | HOWARD ER |

**2. PERSONAL DATA**

PERSON (Last, First, Middle Initial): ORDAZ, ALEXANDRIA N

SEX: M [ ] F [X]

RANK/GRADE:

DOB: 31 MAR 97

STATUS: DEP DAUGHTER USAF

SSN: 01/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

ORGANIZATION: 24 SECURITY FORCES

SPONSOR (Name and Grade): ORDAZ, PAUL E

RELATIONSHIP TO SPONSOR:

ADDRESS (Street, PO Box, City, State, Zip Code): PSC 1 BOX 4007 APO AA 34001

PHONE NO.: 284-6125

**3. STATUS**

| | | | |
|---|---|---|---|
| [ ] | MEDICAL PERSONNEL | DEPARTMENT | JOB TITLE |
| [ ] | VISITOR/OTHER | REASON FOR BEING IN MEDICAL FACILITY | |
| [ ] | INPATIENT | REGISTER NO. ER LOG # | UNIT/CLINIC: EMERGENCY ROOM |
| X | OUTPATIENT | | REASON FOR HOSPITALIZATION |

**4. COMPLETE IF PROPERTY/EQUIPMENT INVOLVED**

DESCRIBE PROPERTY/EQUIPMENT: N/A

**5. COMPLETE IF BED INVOLVED**

| | YES | NO | UP | DOWN | ORDERED |
|---|---|---|---|---|---|
| HEIGHT OF BED ADJUSTABLE | | | | | |
| BED RAILS PRESENT | | | | | |
| FOOTSTOOL BY BED | | | | | |

**6. COMPLETE IF MEDICATION INVOLVED (Medicine Administered)**

DRUG(s): BENADYRL

| X | ORAL | [ ] | INJECTION | [ ] | INTRAVENOUS INFUSION |
|---|---|---|---|---|---|

**7. NARRATIVE OF INCIDENT** (Give a concise statement of the facts. DO NOT include opinions or conclusions.) ABOVE PATIENT WAS SEEN IN HOWARD ER ON 20 APR 98 AT 1858 HRS BY DR WEBSTER. PATIENT PRESCRIBED TYLENOL EXIXIR 3/4 tsp 4-5 x DAILY. AT 2200 hrs, 20 Apr 98 SPONSOR CALLED ER STATING HE HAD JUST GAVE CHILD MEDICATION BUT THE BOTTLE WAS BENADRYL 12.5mg/mL SYRUP NOT TYLENOL. SPONSOR INSTRUCTED TO RETURN TO ER WITH MEDICATION AND CHILD. DR WEBSTER NOTIFIED OF ERROR. SEE ER LOG # 980420-00033 AND ER LOG 980420-00040. Shirley Russell, TSgt

DO NOT FILE OR REFER TO IN MEDICAL RECORDS

AF FORM 765, DEC 94 (EF-V1) PerFORM PRO PREVIOUS EDITIONS ARE OBSOLETE

1026

# [1] DEPARTMENT OF THE AIR FORCE
24 TH MEDICAL GROUP (ACC)
HOWARD AFB, PANAMA

## INCIDENT REPORT SUMMARY
(This ECRAF format incorporates th . Operational Risk Management (ORM) model into the analysis)

Incident (AF form 765) # __________ Date: 2 APR 98

### 1. EVALUATION:
A. IDENTIFY THE HAZARD: wrong medication given to patient.

B. ASSESS THE RISK: - a medication not indicated may induce/produce medical problems to the patient

### 2. CONCLUSION:
A. ANALYZE RISK CONTROL MEASURES: - verify medication given to pt properly.
- verify medication with second person.

### 3. RECOMMENDATIONS:
A. MAKE CONTROL DECISIONS: - MOD needs to show medication given to patient (from the ER MOD cabinet) to the shift leader for double checking.

### 4. ACTIONS (IMPROVEMENTS):
A. RISK CONTROL IMPLEMENTATION: - Implemented immediately.
- Patient involved in the incident was evaluated medically, no side effects of medication.

2 APR 98 Teodoro Mendez, MD
SGOPL, NI 14
24th MDOS, Howard AFB, P

### 5. FOLLOW-UP:
DATE reviewed by Environment of Care Committee: __________
DATE reviewed by ECOMS: __________
Risk Manager Signature: __________
Date Incident Closed: __________

SGQ FL 003-10 Feb 1998

[1] THIS DOCUMENT CONTAINS QUALITY ASSURANCE MATERIAL. COPIES, ATTACHMENTS AND INFORMATION THEREFORM WILL NOT BE RELEASED UNDER PENALTIES OF 10 USC 1102.

... - 24 MED GP HOWARD AFT PM | LOG NUMBER: 980420-0[illegible]

Arrival Date/Time: 20 Apr 1998@1839 | 3rd Party Payer: NO
Trans to Hospital: PRIVATELY OWNED VEHICLE | Time Seen: 18:58
History Obtained From: PATIENT | Category: N/U

Addr: PSC 1 BOX 4007 APO, AA 34001 | Phone: 284-6125
Chief Complaint: FEVER, VOMITING | Sex: FEMALE Age: 12

| VITAL SIGNS | | | |
|---|---|---|---|
| Time | 1840 | | |
| BP-SY | / | | |
| BP-DI | | | |
| Pulse | 140 | | |
| Resp | | | |
| Temp | 101.5 (R) | | |
| WT-Ped | 9Kgs | | |

| Orders | Inits | Time |
|---|---|---|
| TC | [illegible] | 1920 |

Medications: Tylenol 0.8cc 1700 hrs 20 Apr 98

Tetanus: Don't Know
Allergies:
NO ALLERGIES DOCUMEN
∅

S. 18:58 c/o sick x 2 days c̄ fever vomiting. anorexia also. Vomits 1-2 x daily. No diarrh

O Interactive child, PERRL, conj pink, tongue moist. Neck supple, pharyn erythema, TM's WNL, heart RRR, lungs clear. Abd soft BS +. Ext - moves all 4 well.

A. gastroenteritis

P. tylenol
↑ fluids
Vomiting instruction sheet

P [illegible] family - ↑ fruits & veges regular [illegible], exercise.

ASSESSMENT/DIAGNOSIS
gastroenteritis

====== DISPOSITION =====
✓ Home __Full Duty
__Quarters
__24hrs __48hrs __72hrs

Modified Duty Until:
Day:____ Mon:____ Yr:____

Referred to: peds

__Emergency __Today
__72 hours ✓ Routine

Admitted to:

Others:

Condition Upon Release:
__Improved ✓ Unchanged
__Deteriorated
Release Time: 1920

Signature of Provider/Stamp: [illegible signature] MAJ

Instructions to Patient: Tylenol elixir 3/4 tsp 4-5 x daily if needed. Return if worse
Increase fluid
Explained Vomiting instruction sheet

I HAVE RECEIVED AND UNDERSTAND MY DISCHARGE INSTRUCTIONS ____________

01 5[illegible]8-27-[illegible]765 ORDAZ, ALEXANDRIA N F41
31 Mar 19[illegible] FEMALE W:284-6405 H:234-6125
Loc: ER
Spon: ORDAZ, [illegible] E Rank: SRA D:2343415
[illegible]

1031

EMERGENCY CARE & TREATMENT - 24 MED GP HOWARD AFB M LOG NUMBER: 980420-00

Arrival Date/Time: 20 Apr 1998@2220 | 3rd Party Payer: NO
Trans to Hospital: PRIVATELY OWNED VEHICLE | Time Seen: 2223
History Obtained From: FATHER OF PATI | Category: N/U

Addr: PSC 1 BOX 4007 APO, AA 34001 | Phone: 284-6125
Chief Complaint: MEDICATION ERROR | Sex: FEMALE Age: 12m

| VITAL SIGNS | | | |
|---|---|---|---|
| Time | 2222 | | |
| BP-SY | / | | |
| BP-DI | / | | |
| Pulse | 134 | | |
| Resp | 32 | | |
| Temp | 99.3 | | |
| WT-Ped | 9kg | | |

Medications: Tylenol @ 1700; Benadryl @ 2100

Tetanus: UNK
Allergies: NKDA
NO ALLERGIES DOCUMENTED

| Orders | Inits | Time |
|---|---|---|
| | | |

S: 2228 child given benadryl instead of tylenol. Received 3/4 tsp. No new Sx.

O. No change. Child interactive, crying alert. Breathing well. Good color

A. Substitution of 3/4 benadryl for 3/4 tsp tylenol

P. Given tylenol 3/4 tsp 4-5 a daily prn

ASSESSMENT/DIAGNOSIS
Substitution 3/4 tsp benadryl for tylenol

===== DISPOSITION =====
✓ Home __Full Duty
__Quarters
__24hrs __48hrs __72hrs

Modified Duty Until:
Day:_____ Mon:_____ Yr:_____

Referred to: Ped

__Emergency ✓ Today
__72 hours ✓ Routine

Admitted to:

Others:

Condition Upon Release:
_Improved ✓ Unchanged
_Deteriorated
Release Time: 2230

Signature of Provider: Wilma P. Webster, MD

WILMA P. WEBSTER, MAJ
EMERGENCY PHYSICIAN 44E3
24 MDOS HAFB, PANAMA

Instructions to Patient:
continue instructions as previously

I HAVE RECEIVED AND UNDERSTAND MY DISCHARGE INSTRUCTIONS [signature]

/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 ORD..Z,ALEXANDRIA N F41
31 ... 1997 FEMALE W:284-6405 H:284-6125
Loc ER
Spo... ORDA..,PAUL E Rank: SRA

1032

① Refused to complete Bite form
SPS left ED @ 1700 to ✓ vaccination status of Dog, called back
p̄ 1800 MOD had changed shift. Wessler would not
complete form. "I said Dr Velarde should finish it"

② Pt run to Clayton theater. ♀ c̄ palpitation. Wessler would not
authorize transport without Rythm strip. Had to speak
to Dispatcher. After explanation of response procedures by SSgt
Cruz she authorized transport to S.F.

③ Anzola, IV Team IUP walk-in Broke @ Home ER. would not
Authorize w/ender Transport even after Husband said
he did not know how to get to Padilla / want to Drive his wife.
Patient waited 30 min in ER for Commercial Taxi

④ Dr Wessler finally left @ 1300 and is
scheduled for duty @ 1800 hrs

CPPTS

**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS 24TH MEDICAL GROUP (ACC)**
**HOWARD AFB, PANAMA**

8 May 98

.MEMORANDUM FOR LT COL ADDISON

FROM: SrA Douglas Brook

RE: Patient Daniel Carlson

On 7 May 98 at 2334 SSG Daniel Carlson reported in to the Emergency room. Ms Barbara Caesar took the patients vital signs and then promptly reported the patients condition to Maj (Dr) Webster, which I witnessed. I later saw the patient in the ER waiting area appearing in no distress. At 0045 I was asked by Dr. Webster as to the whereabouts of the patient, we did a visaul check of building 192 with no avail. It was then deducted that the patient left without being seen.

Douglas W. M. Brook, SrA, USAF

SOMD Unit 7101

14 May 1998

MEMORANDUM FOR COL William F. P. Tuer, Command Surgeon

SUBJECT: Emergency Room treatment - patient Mary Copesky, D/W USAF

1. On 13 May, at approximately 1100 hours, I was attending one admission and involved in assisting a family member whose twin child was stillborn, when I was contacted by Mrs.Ines Delgado and informed that a 42-year-old female patient was on her way to the Emergency Room at Centro Medico Paitilla (CMP) via ambulance after a fainting episode at the Valent Recreation Center. The patient had been assisted at the site by a group of nurses and was stable and conscious at the time that she left the Center.

2. The patient arrived in the Emergency Room at 1200, and was evaluated by the Emergency Room physician who decided that due to the excessive vaginal bleeding (menstruation) the patient should be examined by a specialist. At this time I called the 24th Medical Group Emergency Room and spoke with Dr. Webster indicating the situation. Dr. Webster stated that she could not authorize a specialist before consulting first with an OB-GYN physician at Howard and that she would return the call. I provided Dr. Webster with CMP's Emergency Room telephone and fax numbers. After twenty minutes I called the Emergency Room again and spoke to the clerk who stated that she would get in touch with Dr. Webster and find out if there was an answer to the request. Thirty minutes later I contacted the Emergency Room at Howard, and by this time Mrs. Anderson, who was accompanying Mrs. Copesky, stated that she was tired of waiting and proceeded to call COL O'Neil. At the time that Mrs. Anderson was speaking to COL O'Neil, the authorization for care was received via fax in the Emergency Room.

3. From 1200 hours until Mrs. Copesky was seen by the OB-GYN doctor I remained in the Emergency Room. I continued to see other patients (a census of 12) and returned to the Emergency Room to check on the patient's condition and inquire if she was going to be admitted. The patient was sent home at 1700 approximately.

4. During all this time I was available on the cellular telephone.

GRACIELA ARIAS
Patient Liaison Coordinator

Case 1:05-cv-01833-CCM Document 10-8 Filed 04/10/2006 Page 20 of 20

USARSO COMMAND SURGEON UNIT 7101 SOME BLDG 127 FORT CLAYTON PANAMA APO AA 34004-5000
COM 011-507-288-5614/6474/4872/5702

# FAX

Date: 19 May 98
Number of pages including cover sheet: 3

TO:
COL O'Neil
24th MED GRP

Phone: 284-5409
Fax phone: 284-3617
cc: COL Thomas TSB

From:
OFFICE OF THE USARSO COMMAND SURGEON

TJ - After our conversation I asked our liason and this is her account.
[signature]

Phone: DSN 313-288-5614/6474/4872/5702
Fax Phone: DSN 313 288-5409/4310

REMARKS: URGENT FOR YOUR REVIEW REPLY ASAP PLEASE COMMENT