# In the United States Court of Federal Claims

No. 05-1333C
(Filed November 20, 2006)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * | * | |
| | * | |
| **MAJOR WILMA P. WEBSTER,** | * | Military pay; motion to dismiss; |
| | * | jurisdiction; Additional Special |
| Plaintiff, | * | Pay, 37 U.S.C. § 302 (2000); |
| | * | motion to amend; RCFC 15(a); |
| v. | * | futility; jurisdiction under the |
| | * | Administrative Procedures Act, |
| **THE UNITED STATES,** | * | 5 U.S.C. § 704 (2000); motion to |
| | * | dismiss for failure to state a |
| Defendant. | * | claim; takings jurisprudence. |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * | * | |

Terrence J. Martin, Sr., San Antonio, TX, counsel for plaintiff.

Douglas K. Mickle, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant. LT COL Rita Russell, Air Force Services Agency, of counsel.

## MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

This case is before the court after briefing on Defendant's Motion To Dismiss pursuant to RCFC 12(b)(1) and RCFC 12(b)(6). Defendant argues that plaintiff's claims do not fall within the jurisdiction of the United States Court of Federal Claims or, in the alternative, that plaintiff's complaint fails to state a claim upon which the court may grant

relief. Plaintiff's response included a motion for leave to amend her complaint pursuant to Fed. R Civ. P. 15(a). 1/ Argument is deemed unnecessary.

## FACTS

Major Wilma P. Webster, MC, USAF, Retired ("plaintiff"), is a former physician who served with the United States Air Force (the "USAF") prior to medical retirement on December 1, 2000. Plaintiff was ordered to extended active duty as a physician on June 20, 1992, and began working at the Howard AFB Emergency Room ("ER") in October 1997. Subsequently, she was removed from her duties on or about January 29, 1998, after a diagnosis of Carpal Tunnel Syndrome, and returned to her duties following corrective surgery in April 1998. Soon thereafter, plaintiff was reassigned to work in the Health and Wellness Center.

On November 18, 1998, a Credentials Function Committee was convened to review allegations of plaintiff's lack of fitness to practice medicine. Findings and Recommendations Clinical Privileges Hearing, Feb. 17-18, 1999. A unanimous recommendation was reached by the seven reviewing members to revoke all of plaintiff's ER and Primary Care privileges, based on "diagnoses of progressive Multiple Sclerosis and Cognitive Disorder." AR 758-59. Plaintiff requested and was granted a formal hearing to be held on February 17-18, 1999, regarding the decision of the Credentials Function Committee. Based upon the presentation of evidence, the Committee made the unanimous recommendation that

> (1) [plaintiff] should not practice in an ER setting, this is primarily due to our concern that she does not adequately handle task-saturated events, (2) Family Practice/Primary Care/Aerospace Medicine privileges should be allowed, (3) In any of those settings, she should be monitored with 100% chart review for no less than three months and, (4) at the conclusion of that three month period her privileges should be reevaluated.

Findings and Recommendations Clinical Privileges Hearing, Wilma Webster, Major, USAF, MC, Feb. 17-18, 1999, at 7. 2/

---

1/ RCFC 15(a) conforms to the language of Fed. R. Civ. P. 15(a), which mandates in relevant part: "[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

2/ Citations to the Administrative Record (the "AR") are provided only when the document is not self-identifying.

Plaintiff appealed the Final Privilege Decision on April 6, 1999. The Air Force Medical Practice Review Board and the Air Force Surgeon General reviewed the decision and actions taken by the Credentials Function Committee. Both reviewing entities found the actions of the Credentials Function Committee to be appropriate and informed plaintiff on January 19, 2000, of the Air Force Surgeon General's intent to report the results of the hearing to the National Practitioners' Data Bank (the "NPDB"). AR 84. Subsequent to this determination, plaintiff was referred by a Medical Evaluation Board to be evaluated by an Informal Physical Evaluation Board (the "IPEB") on July 12, 2000. AR 139. The IPEB concluded that plaintiff was unfit for continued service and recommended permanent retirement with a compensable rating of 30%. AR 139. Plaintiff accepted the findings of the IPEB on September 20, 2000, and was retired at the rank of Major on December 1, 2000. AR 139-40.

Plaintiff filed an application with the Air Force Board for Correction of Military Records (the "AFBCMR") on May 1, 2000, requesting the AMBCMR to (1) void the recommendation of a Medical Practice Review Board that restricted plaintiff from practicing emergency medicine; (2) void a commanding officer's decision to restrict plaintiff's practice of medicine to supervised activities in limited settings; (3) issue an order directing the Air Force Surgeon General to modify information sent to the NPDB; (4) correct plaintiff's record to reflect the determination of the AFBCMR; and (5) grant Additional Special Pay ("ASP") from July 1, 1998, to December 1, 2000. AR 15. The AFBCMR concluded, on February 4, 2003, that (1) plaintiff was due two years of ASP from July 1, 1998, through July 1, 2000, and (2) the actions taken regarding restriction of plaintiff's medical practice were taken appropriately in accordance with established directives. AR 10-11. Plaintiff requested reconsideration of the decision on August 19, 2004, but the AFBCMR denied her request on December 28, 2004. AR 1503-05.

Subsequent to the denial of her request for reconsideration, plaintiff filed her complaint with the United States Court of Federal Claims on December 20, 2005. Plaintiff alleges that the decision of the Military Physicians Review Board (the "MPRB") and the AFBCMR was against the weight and preponderance of the evidence, arbitrary and capricious, and in violation of United States Air Force regulations. She requests (1) removal of the adverse determinations of the MPRB regarding restricting her from practicing Emergency Medicine; (2) removal of the restriction of plaintiff's ability to practice Family Practice/Primary Care/Aerospace Medicine without 100% supervision for six months; (3) rescission of the adverse report to the NPDB or modification to reflect a restriction to practice Emergency Medicine under physician supervision; and (4) grant of ASP for the period from July 1, 2000, through December 1, 2000. Defendant moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6) and 12(b)(1), respectively. Plaintiff responded by filing a

combined response and motion requesting leave to amend her complaint pursuant to RCFC 15(a). Defendant opposed, contending that the proposed amended complaint would still fail under RCFC 12(b)(1), or (b)(6).

## DISCUSSION

1. Standard of review

Defendant first moves to dismiss plaintiff's complaint under RCFC 12(b)(1) for lack of subject matter jurisdiction. When a federal court hears such a jurisdictional challenge, "its task is necessarily a limited one." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. Courts adhere to "'the accepted rule that a complaint should not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); accord New Valley Corp. v. United States, 119 F.3d 1576, 1579 (Fed. Cir. 1997).

Therefore, when a complaint properly is within its jurisdiction, a court is to accept as true the facts alleged in the complaint. Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 633 (1999). In addition, a court is "obligated to . . . draw all reasonable inferences in plaintiff's favor." Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). If relief can be granted "'under any set of facts that could be proved consistent with the allegations[,]'" then the motion must be denied. NOW, Inc. v. Scheidler, 510 U.S. 249, 256 (1994) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). Nevertheless, if the jurisdictional facts alleged in the complaint are disputed, "the . . . court may consider relevant evidence in order to resolve the factual dispute." Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988); Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999) (holding that "[f]act-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged").

When a party alleges a lack of jurisdiction pursuant to RCFC 12(b)(1), only unchallenged facts are deemed to be correct and true. Hamlet v. United States, 873 F.2d 1414, 1416 (Fed. Cir. 1989). If defendant challenges jurisdiction with respect to plaintiff's claim for relief, however, plaintiff cannot rely merely on allegations in the complaint, but must bring forth relevant competent proof to establish jurisdiction. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); see also Land v. Dollar, 330 U.S. 731, 735 n.4 (1947). Once the court's subject matter jurisdiction is put into question, it is "incumbent upon [plaintiff] to come forward with evidence establishing the court's jurisdiction . . . . [Plaintiff] bears the burden of establishing subject matter jurisdiction by a

preponderance of the evidence." Reynolds, 846 F.2d at 748; see also McNutt, 298 U.S. at 189.

The Tucker Act defines the jurisdiction of the Court of Federal Claims. See 28 U.S.C. § 1491(a)(1) (2000). "[I]t confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States, and . . . waives the Government's sovereign immunity for those actions." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc).

The United States Court of Appeals for the Federal Circuit in Fisher sought to clarify Tucker Act jurisprudence, which had blended the questions of the Court of Federal Claims's jurisdictional grant with the merits of the claim. 402 F.3d at 1172. "This mixture has been a source of confusion for litigants and a struggle for courts." Id. The Federal Circuit concluded that the Tucker Act does not provide any substantive causes of action, instructing that, "in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." Id.; see also United States v. Mitchell, 463 U.S. 206, 216 (1983). The Federal Circuit adopted a single-step approach to addressing whether a Constitutional provision, statute, or regulation is money-mandating and therefore within the jurisdiction of the Court of Federal Claims:

> When a complaint is filed alleging a Tucker Act claim based on a Constitutional provision, statute, or regulation, . . . the trial court at the outset shall determine, either in response to a motion by the Government or *sua sponte*[,] . . . whether the Constitutional provision, statute, or regulation is one that is money-mandating.
>
> If the court's conclusion is that the Constitutional provision, statute, or regulation meets the money-mandating test, the court shall declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course. . . .
>
> If the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act.

Fisher, 402 F.3d at 1173.

RCFC 12(b)(6) authorizes defendant to move, before filing a responsive pleading, for dismissal of the complaint. 3/ A motion made under RCFC 12(b)(6) challenges the legal theory of the complaint, not the sufficiency of any evidence that might be adduced. The purpose of the rule is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). Such a motion must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Advanced Cardiovascular Sys. v. SciMed Life Sys., 988 F.2d 1157, 1160 (Fed. Cir. 1993).

2. Subject matter jurisdiction

1) Plaintiff's original complaint

Plaintiff's complaint alleges that (1) the evaluation of her clinical skills by the USAF at various specified instances was arbitrary and capricious and that (2) she was improperly denied ASP for the period between July 2000 and December 2000. Plaintiff's responsive brief conceded plaintiff's second request for relief, stating that she "is not entitled to any further ASP based on the appropriately cited regulations and case law." Pl.'s Br. filed Aug. 28, 2006, at 43. Therefore, the following discussion regarding plaintiff's original complaint relates to the remaining allegations of arbitrary and capricious review of plaintiff's clinical skills by the USAF.

The sole basis of jurisdiction cited by plaintiff in her original complaint is 5 U.S.C. § 704 (2000), which provides for judicial review of "[a]gency action made reviewable by

---

3/ RCFC 12(b) provides:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court.

statute and final agency action for which there is no other adequate remedy in a court." 4/ 5 U.S.C. § 704 is a provision of the Administrative Procedures Act (the "APA"), which has been held by the Federal Circuit not to lie within the jurisdiction of the Court of Federal Claims. See Martinez v. United States, 333 F.3d 1295, 1313 (Fed. Cir. 2003) (en banc) (holding that Court of Federal Claims lacks jurisdiction to entertain claims under APA); Murphy v. United States, 993 F.2d 871, 874 (Fed. Cir. 1993) (stating that Claims Court "has no authority to invoke the APA").

Plaintiff, therefore, does not allege a source of jurisdiction for the Court of Federal Claims. See Reynolds 846 F.2d at 748. Moreover, plaintiff does not plead a statute, Constitutional provision, or regulation that meets the "money-mandating" test established in Fisher, which also undercuts plaintiff's claims. As a result, plaintiff's original complaint is subject to dismissal pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction.

2) Plaintiff's proposed amended complaint

Plaintiff's request for leave to amend her complaint pursuant to RCFC 15(a) cites two alternative jurisdictional bases for her surviving claims. 5/ The proposed amended complaint proffers 5 U.S.C. § 704 and the Seventh Amendment to the United States Constitution.

---

4/ Plaintiff originally alleged that she was due ASP under "Title 37, Chapter 5 of the United States Code" and "AFI 41-9109, Special Pay for Health Professionals." Compl. filed Dec. 20, 2006, at 7-8. Plaintiff neglected to specify further details as to the statutory or regulatory basis for her allegations. Nevertheless, 37 U.S.C. § 302, which falls within Chapter 5 of Title 37 of the United States Code, provides:

> An officer who is an officer of the Medical Corps of the . . . Air Force designated as a medical officer and who is on active duty under a call or order to active duty for a period of not less than one year is entitled to special pay in accordance with this subsection. . . . an officer entitled to variable special pay . . . is entitled to additional special pay of $15,000 for any twelve-month period during which the officer is not undergoing medical internship or initial residency training.

37 U.S.C. § 302(a)(4). This statute relates to plaintiff's request for relief regarding the allegedly wrongful denial of ASP, which has been conceded by plaintiff and provides no jurisdictional basis for plaintiff's surviving claims.

5/ Plaintiff submitted a proposed amended complaint as an exhibit to her response filed August 28, 2006. The discussion that follows is based upon the information submitted by plaintiff in the proposed amended complaint.

RCFC 15(a) provides that leave to amend "shall be freely given when justice so requires." Id. Nevertheless, "[i]t is well established that the grant or denial of an opportunity to amend pleadings is within the discretion of the trial court." Mitsui Foods, Inc. v. United States, 867 F.2d 1401, 1403 (Fed. Cir. 1989). Reasons that justify the denial of a motion to amend under RCFC 15(a) include "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" Mitsui Foods, Inc., 867 F.2d at 1403 (quoting Forman v. Davis, 371 U.S. 178, 182 (1962)). Should one of these criteria exist, denial of the request for leave to amend is appropriate. See Te-Moak Bands of Western Shoshone Indians of Nevada v. United States, 948 F.2d 1258, 1261 (Fed. Cir. 1991) (affirming Court of Federal Claims' denial of motion to amend pleadings based on undue delay and failure to cure in earlier allowed amendment).

As detailed above, 5 U.S.C. § 704 does not provide a basis for the jurisdiction of the Court of Federal Claims. See Martinez, 333 F.3d at 1313; Murphy, 993 F.2d at 874. The other basis for plaintiff's claim offered in her proposed amended complaint is the Seventh Amendment of the United States Constitution, which provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

U.S. Const. amend. VII.

The Seventh Amendment right to a jury trial has been held to be inapplicable in the Court of Federal Claims. United States v. Sherwood, 312 U.S. 584, 587 (1941) (stating "Congress, despite the Seventh Amendment, may dispense with a jury trial in suits brought in the Court of Claims"). It not only fails to provide a jurisdictional basis, but also is not "money-mandating," as elaborated in Fisher, 402 F.3d at 1174. Because plaintiff's proposed amended complaint cannot remedy the jurisdictional failings of the original complaint, amendment is futile. Under the rule set forth in Mitsui, 867 F.2d at 1403, plaintiff's motion to amend must be denied due to futility of amendment.

3) Due process

While plaintiff does not explicitly identify any further jurisdictional basis for her claims in the proposed amended complaint, an indirectly alleged jurisdictional argument is countered by defendant in its reply brief and response to plaintiff's motion for leave to amend her complaint. Plaintiff's response to defendant's motion to dismiss asserted that defendant

"deprived Plaintiff of a valuable property right, the right to practice medicine, without due process of law." Pl.'s Br. filed Aug. 28, 2006, at 5. Insofar as plaintiff invokes the Due Process clause of the Fifth Amendment, defendant argues that the Constitutional provision is not money-mandating, and therefore the complaint must be dismissed for lack of subject matter jurisdiction on that basis.

The Federal Circuit has held that due process claims brought under the Fifth Amendment are not within the jurisdiction of the Court of Federal Claims. Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) ("The Court of Federal Claims correctly concluded that it does not have jurisdiction to hear Crocker's due process or seizure claims under the Fifth Amendment to the United States Constitution." (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir.1995), and Florida Rock Indus., Inc. v. United States, 791 F.2d 893, 898-99 (Fed. Cir.1986))); Collins v. United States, 67 F.3d 284, 288 (Fed. Cir. 1995) ("[T]he trial court did not have jurisdiction over money claims that are based upon an alleged violation by the government of the due process clause. This is so because the due process clause does not obligate the government to pay money damages."). Thus, plaintiff's implied jurisdictional argument does not implicate a money-mandating statute, as required by Fisher, 402 F.3d at 1174.

3. Failure to state a claim

Defendant has moved, in the alternative, for dismissal pursuant to RCFC 12(b)(6) for three reasons, alleging that plaintiff fails to state a claim upon which relief may be granted by this court.

Plaintiff's Original Complaint requested that plaintiff "should be granted Additional Special Pay from July 2000 to December 2000 when Plaintiff was retired from the USAF." Compl. filed Dec. 20, 2005, at 9. Defendant asserts that no statute or regulation exists that authorizes ASP for a physician for a period that is less than 12 months.

37 U.S.C. § 302(c)(1) provides:

> An officer may not be paid additional special pay under subsection (a)(4) or incentive special pay under subsection (b) for any twelve-month period unless the officer first executes a written agreement under which the officer agrees to remain on active duty for a period of not less than one year beginning on the date the officer accepts the award of such special pay.

Id. Plaintiff has conceded that she "is not entitled to any further ASP based on the appropriately cited regulations and case law," Pl.'s Br. filed Aug. 28, 2006, at 43, and thus,

the court declines to rule upon this issue as moot. See County of Los Angeles v. Davis, 440 U.S. 625, 631, 634 (1979) (discussing mootness doctrine and applicability to issues where "events have completely and irrevocably eradicated the effects of the alleged violation").

Defendant also objects that plaintiff's remaining claims regarding the ASP determination by the Air Force are not subject to review by this court, relying upon the Federal Circuit's decision in Voge v. United States, 844 F.2d 776 (Fed. Cir. 1988). Plaintiff, a medical doctor with the United States Navy, had her clinical privileges revoked due to three adverse Officer Fitness Reports ("OFRs") regarding her competency as a physician. Id. at 777. Plaintiff's application for ASP was denied, and subsequent appeals with the Board of Correction of Naval Records recommended correction of portions of two of the adverse OFRs, but "concluded that the OFR's were otherwise not 'substantially erroneous or unfair' and that [Voge's] selection for promotion would have been 'unlikely' even with the corrections to her records." Id. at 778.

Plaintiff subsequently filed a claim with the United States Claims Court, which concluded that ASP was due to plaintiff and that it had jurisdiction to review plaintiff's service records in connection with review of the denial of ASP. Voge v. United States, 11 Cl. Ct. 510, 514 (1987) ("Therefore, it is concluded that the court can review OFR's in an action challenging the termination of ASP, which derives from a money-mandating statute."). The Federal Circuit vacated that portion of the lower court's order, holding that, although the Claims Court had jurisdiction to review plaintiff's claim for ASP under 37 U.S.C. § 302, jurisdiction extended only the procedural aspects of the decision. Voge, 844 F.2d at 781-82. "Here the 'ultimate responsibility' for making the determination whether to terminate ASP was explicitly vested by Congress in the military. Courts do not have the institutional competence to make the substantive determination that a particular medical officer is deserving of additional compensation." Id. at 780.

Similarly, in the case at bar, plaintiff has requested review of substantive aspects of the discretionary denial of ASP. Plaintiff's original and proposed amended complaints contain numerous allegations of arbitrary and capricious review by the USAF, but, as defendant has noted, plaintiff has not alleged any regulatory or statutory violations with regard to the decision to deny her request for ASP. In contrast, plaintiff's allegations are restricted to issues that would require substantive review of defendant's determinations, which lie outside of the jurisdiction of this court, per the Federal Circuit's holding in Voge, 844 F.2d 776. Defendant is correct on the law, but the objection goes to jurisdiction, not failure to state a claim for relief.

Finally, defendant has responded to an implied basis for review proffered by plaintiff. Plaintiff has mistakenly cited to the Seventh Amendment of the U.S. Constitution in briefing,

but has presented arguments relating to having been "deprived . . . of a valuable property right, the right to practice medicine without due process of law." Pl.'s Br. filed Aug. 28, 2006, at 5. Assuming plaintiff intended to cite to the Fifth Amendment rather than the Seventh Amendment, defendant has argued three reasons why plaintiff has failed to state a claim upon which relief can be granted.

The Fifth Amendment provides, in pertinent part: "nor shall private property be taken for public use, without just compensation." In addition to taking property by physical occupation or invasion, a taking may occur where the Government regulates private property. Penn. Coal Co. v. Mahon, 260 U.S. 393, 415 (1922). Although the Government certainly may regulate property without giving rise to a compensable taking, "if regulation goes 'too far' it will constitute a compensable taking." M & J Coal Co. v. United States, 47 F.3d 1148, 1153 (Fed. Cir. 1995) (quoting Penn. Coal, 260 U.S. at 415). Limits are placed on the Government's regulation of private property flowing from the recognition that, if "subject to unbridled, uncompensated qualification under the police power, 'the natural tendency of human nature [would be] to extend the qualification more and more until at last private property disappear[ed].'" Lucas v. S. Carolina Coastal Council, 505 U.S. 1003, 1014 (1992) (alterations in original) (citation omitted).

Assuming that a claim is ripe, the court must determine if the regulation goes too far by making a "'two-tiered' inquiry into the government act alleged to have constituted a taking." Chancellor Manor v. United States, 331 F.3d 891, 901 (Fed. Cir. 2003). First, the court must consider "the nature of the interest allegedly taken to determine whether a compensable property interest exists." Chancellor, 331 F.3d at 901; see M & J Coal, 47 F.3d at 1154 (analyzing whether "interest was a 'stick in the bundle of property rights' acquired by the owner"). If a plaintiff is unable to prove that he held a protected property interest, her takings claim will fail. Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001) (holding that "only persons with a valid property interest at the time of the taking are entitled to compensation"). If plaintiff succeeds in meeting the first element, the court then must determine whether the Government's action "constitutes a compensable taking of that interest for a public purpose." Chancellor, 331 F.3d at 902; see also M & J Coal, 47 F.3d at 1153-54.

First, defendant argues that no protected property right existed in plaintiff's state medical licenses. The holding in American Pelagic Fishing Co. v. United States, 379 F.3d 1363 (Fed. Cir. 2004), requires plaintiff to possess a private property interest in order to be eligible for compensation under the Fifth Amendment. As noted above, the Federal Circuit has firmly established the two-part test for takings claims in this court that requires a plaintiff to demonstrate a protected property interest.

Defendant also cites to Members of the Peanut Quota Holders Ass'n v. United States, 421 F.3d 1323 (Fed. Cir. 2005), for the proposition that property compensable under the takings clause must possess certain indicia of private property, including the ability to transfer and the ability to exclude others from use or enjoyment of that property. In Peanut Quota Holders, the Federal Circuit held that "the decisions by both the Supreme Court and this court imply that a compensable interest is indicated by the absence of express statutory language precluding the formation of a property right in combination with the presence of the right to transfer and the right to exclude." Id. at 1331. Thus, plaintiff is required to demonstrate a right to transfer and to exclude in order to present a valid compensable property interest.

According to defendant, plaintiff's medical licenses were not private property, as they did not possess the characteristics of exclusivity and right to transfer required by Peanut Quota Holders. Defendant notes that the number of medical licenses was not fixed and thus not exclusive. The Federal Circuit in Peanut Quota Holders, 421 F.3d 1323, distinguished between licenses and quotas:

> A license represents a limited suspension of the otherwise general restrictions imposed by the government-in the case of a fishing license, it is merely a representation by the government that it will not interfere with the licensee's efforts to catch fish. The number of licenses to be issued under such a scheme is not fixed. Each additional license dilutes the value of the previously issued licenses. So long as the government retains the discretion to determine the total number of licenses issued, the number of market entrants is indeterminate. Such a license is by its very nature not exclusive.

Id. at 1333-34.

The number of medical licenses issued is not subject to a fixed limit by the Government, as was the case regarding the issuance of fishing licenses described above. The issuance and regulation of medical licenses is not controlled by the Federal Government, but rather by the states. See e.g., Cal. Bus. & Prof. Code § 2052 (2003) (providing for criminal penalties if one practices medicine without state-issued license). Thus, medical licenses, like the fishing licenses described in Peanut Quota Holders, are not exclusive by their very nature. See also Conti v. United States, 291 F.3d 1334, 1342 (Fed. Cir. 2002) (holding swordfishing permit held by plaintiff did not constitute cognizable property interest).

Defendant also argues that plaintiff's medical license was not transferrable, as required by the Peanut Quota Holders inquiry. Because plaintiff does not have the right to sell, assign, or otherwise transfer her medical license, a medical license does not possess the

requisite indicia of transferability. In addition, defendant has argued that medical licenses are revokable. See, e.g., Cal. Bus & Prof. Code § 2227 (2003) (revoking state-issued medical license for disciplinary violations); Mich. Comp Laws Ann. §§ 333.16221 (2006) (providing state may "investigate activities related to the practice of a health profession by a licensee, a registrant, or an applicant for licensure or registration"); Wis. Stat. § 448.02(3) (2006) ("The board shall investigate allegations of unprofessional conduct and negligence in treatment by persons holding a license, certificate or limited permit granted by the board."); see also N.Y. Education Law §§ 6530-6532 (2006); 63 Pa. Stat. Ann. §§ 422.41, 422.42 (2006). Plaintiff fails to demonstrate that a medical license possesses the requisite traits of exclusivity and transferability, as required by Peanut Quota Holders. Thus, plaintiff fails to meet the first part of the two-tiered inquiry adopted by Chancellor, 331 F.3d 891, and does not present a valid claim for review.

Second, defendant argues that, even if the Government deprived plaintiff of a property interest, that no action of the Government constitutes a compensable taking of plaintiff's interest. Defendant cites to B & G Enterprises, Ltd. v. United States, 220 F.3d 1318 (Fed. Cir. 2000), and D. R. Smalley & Sons, Inc. v. United States, 178 Ct. Cl. 593 (1967), for the proposition that plaintiff must establish that her property interest was taken by the Federal Government. Plaintiff has alleged in her proposed amended complaint that "the AF/SG sent an unfavorable report to the NPDB which resulted in the Plaintiff having all her licenses revoked in every state in which she practiced law [sic]." Pl.'s Br. filed Aug. 28, 2006, Ex. A ¶ 14. 6/ Plaintiff therefore has alleged that the action of the Government, the submission of the unfavorable report to the NPDB, caused the compensable taking. Nevertheless, this argument does not take into account the fact that revocation of medical licenses is a discretionary action reposed in the states, not the Federal Government. In order for the Federal Government to be held liable for the actions of a state, the state must do so as an agent of the Federal Government. See Hendler v. United States, 952 F.2d 1364 (Fed. Cir. 1991); Preseault v. United States, 100 F.3d 1525, 1551 (Fed. Cir. 1996) (holding that state acting pursuant to order from federal agency "acted under the aegis of the United States, and its actions were, for purposes of takings liability, the actions of the United States"). As plaintiff has not proffered any evidence that shows that the states acted pursuant to an order by the Government, it cannot be held liable for the actions of the state medical licensing boards.

---

6/ While plaintiff's brief contained language that alleged revocation of her law licenses, the court interprets her allegation to reflect revocation of her medical licenses in accordance with the remainder of her arguments.

Third, defendant argues that plaintiff's failure to allege the validity of the Air Force's report to the NPDB is fatal to plaintiff's claim. Defendant cites to Acadia Tech, Inc. v. United States, 458 F.3d 1327 (Fed. Cir. 2006), holding that a claim that involved an assertion that the Government's actions did not comport with its own regulations did not form the basis for a legal claim under the takings clause of the Fifth Amendment. Defendant also relies upon Tabb Lakes, Ltd. v. United States, 10 F.3d 796 (Fed. Cir. 1993), where the Federal Circuit held that a "claimant must concede the validity of the government action which is the basis of the taking claim to bring suit under the Tucker Act, 28 U.S.C. § 1491." Id. at 802. Plaintiff contends repeatedly that the actions of the USAF were unauthorized, beyond its statutory authority, and made contrary to law. See, e.g., Pl.'s Br. filed Aug. 28, 2006, Ex. A ¶ 13d (alleging that "[t]he decision of the MPRB . . . is arbitrary and capricious and violative of the USAF's own regulations"). Plaintiff fails to concede the validity of the actions of the USAF, and therefore her takings claim is subject to dismissal.

## CONCLUSION

Accordingly, based upon the foregoing,

Defendant's Motion To Dismiss is granted, and plaintiff's Motion for Leave of Court To Amend Plaintiff's Complaint is denied. The Clerk of the Court shall dismiss Plaintiff's Original Complaint for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

No costs.

s/ Christine O.C. Miller

________________________________________

**Christine Odell Cook Miller**
Judge