# In the United States Court of Federal Claims

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MAJOR WILMA P. WEBSTER,** *

Plaintiff, *

v. * No. 05-1333C

**THE UNITED STATES,** * (Filed Nov. 28, 2006)

Defendant. *

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## ERRATA

**MILLER**, Judge.

The attached pages 3 and 11 should replace the originals in the Opinion filed on November 20, 2006, published as 2006 WL 3378466 (Fed.Cl. Nov. 20, 2006).

S/ Christine O.C. Miller
________________________________
**Christine Odell Cook Miller**
Judge

Plaintiff appealed the Final Privilege Decision on April 6, 1999. The Air Force Medical Practice Review Board (the "MPRB") and the Air Force Surgeon General reviewed the decision and actions taken by the Credentials Function Committee. Both reviewing entities found the actions of the Credentials Function Committee to be appropriate and informed plaintiff on January 19, 2000, of the Air Force Surgeon General's intent to report the results of the hearing to the National Practitioners' Data Bank (the "NPDB"). AR 84. Subsequent to this determination, plaintiff was referred by a Medical Evaluation Board to be evaluated by an Informal Physical Evaluation Board (the "IPEB") on July 12, 2000. AR 139. The IPEB concluded that plaintiff was unfit for continued service and recommended permanent retirement with a compensable rating of 30%. AR 139. Plaintiff accepted the findings of the IPEB on September 20, 2000, and was retired at the rank of Major on December 1, 2000. AR 139-40.

Plaintiff filed an application with the Air Force Board for Correction of Military Records (the "AFBCMR") on May 1, 2000, requesting the AMBCMR to (1) void the recommendation of the MPRB that restricted plaintiff from practicing emergency medicine; (2) void a commanding officer's decision to restrict plaintiff's practice of medicine to supervised activities in limited settings; (3) issue an order directing the Air Force Surgeon General to modify information sent to the NPDB; (4) correct plaintiff's record to reflect the determination of the AFBCMR; and (5) grant Additional Special Pay ("ASP") from July 1, 1998, to December 1, 2000. AR 15. The AFBCMR concluded, on February 4, 2003, that (1) plaintiff was due two years of ASP from July 1, 1998, through July 1, 2000, and (2) the actions taken regarding restriction of plaintiff's medical practice were taken appropriately in accordance with established directives. AR 10-11. Plaintiff requested reconsideration of the decision on August 19, 2004, but the AFBCMR denied her request on December 28, 2004. AR 1503-05.

Subsequent to the denial of her request for reconsideration, plaintiff filed her complaint with the United States Court of Federal Claims on December 20, 2005. Plaintiff alleges that the decisions of the MPRB and the AFBCMR were against the weight and preponderance of the evidence, arbitrary and capricious, and in violation of United States Air Force regulations. She requests (1) removal of the adverse determinations of the MPRB regarding restricting her from practicing Emergency Medicine; (2) removal of the restriction of plaintiff's ability to practice Family Practice/Primary Care/Aerospace Medicine without 100% supervision for six months; (3) rescission of the adverse report to the NPDB or modification to reflect a restriction to practice Emergency Medicine under physician supervision; and (4) grant of ASP for the period from July 1, 2000, through December 1, 2000. Defendant moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6) and 12(b)(1), respectively. Plaintiff responded by filing a

but has presented arguments relating to having been "deprived . . . of a valuable property right, the right to practice medicine without due process of law." Pl.'s Br. filed Aug. 28, 2006, at 5. Assuming plaintiff intended to cite to the Fifth Amendment rather than the Seventh Amendment, defendant has argued three reasons why plaintiff has failed to state a claim upon which relief can be granted.

The Fifth Amendment provides, in pertinent part: "nor shall private property be taken for public use, without just compensation." In addition to taking property by physical occupation or invasion, a taking may occur where the Government regulates private property. Penn. Coal Co. v. Mahon, 260 U.S. 393, 415 (1922). Although the Government certainly may regulate property without giving rise to a compensable taking, "if regulation goes 'too far' it will constitute a compensable taking." M & J Coal Co. v. United States, 47 F.3d 1148, 1153 (Fed. Cir. 1995) (quoting Penn. Coal, 260 U.S. at 415). Limits are placed on the Government's regulation of private property flowing from the recognition that, if "subject to unbridled, uncompensated qualification under the police power, 'the natural tendency of human nature [would be] to extend the qualification more and more until at last private property disappear[ed].'" Lucas v. S. Carolina Coastal Council, 505 U.S. 1003, 1014 (1992) (alterations in original) (citation omitted).

Assuming that a claim is ripe, the court must determine if the regulation goes too far by making a "'two-tiered' inquiry into the government act alleged to have constituted a taking." Chancellor Manor v. United States, 331 F.3d 891, 901 (Fed. Cir. 2003). First, the court must consider "the nature of the interest allegedly taken to determine whether a compensable property interest exists." Chancellor, 331 F.3d at 901; see M & J Coal, 47 F.3d at 1154 (analyzing whether "interest was a 'stick in the bundle of property rights' acquired by the owner"). If a plaintiff is unable to prove that he held a protected property interest, his takings claim will fail. Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001) (holding that "only persons with a valid property interest at the time of the taking are entitled to compensation"). If plaintiff succeeds in meeting the first element, the court then must determine whether the Government's action "constitutes a compensable taking of that interest for a public purpose." Chancellor, 331 F.3d at 902; see also M & J Coal, 47 F.3d at 1153-54.

First, defendant argues that no protected property right existed in plaintiff's state medical licenses. The holding in American Pelagic Fishing Co. v. United States, 379 F.3d 1363 (Fed. Cir. 2004), requires plaintiff to possess a private property interest in order to be eligible for compensation under the Fifth Amendment. As noted above, the Federal Circuit has firmly established the two-part test for takings claims in this court that requires a plaintiff to demonstrate a protected property interest.